UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN HEALTHCARE CENTERS,
INC.,

      Plaintiff,

v.

DANA NESSEL, in her official
capacity Attorney General of Michigan, JOHN
E. JOHNSON, JR., in his official capacity as
Executive Director of the Michigan
Department of Civil Rights, PORTIA L.
ROBERSON, ZENNA FARAJ ELHASON,
GLORIA E. LARA, REGINA GASCO-
BENTLEY, ANUPAMA KOSARAJU,
RICHARD CORRIVEAU, and DAVID
WORTHAMS, in their official capacities as
members of the Michigan Civil Rights
Commission,

      Defendants.

_____/

No. 1:22-cv-00787

HON. JANE M. BECKERING

MAG. PHILLIP J. GREEN

**DEFENDANTS' BRIEF IN
OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

Jonathan A. Scruggs
Arizona Bar No. 030505
Ryan J. Tucker
Arizona Bar No. 034382
Henry W. Frampton, IV
South Carolina Bar No. 75314
Bryan D. Neihart
Arizona Bar No. 035937
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
480.444.0020
jscruggs@ADFlegal.org
rtucker@ADFlegal.org
hframpton@ADFlegal.org
bneihart@ADFlegal.org

Tonya C. Jeter (P55352)
Kimberly K. Pendrick(P60348)
Attorneys for Defendants
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456.0067
jetert@michigan.gov
pendrickp@michigan.gov

Bryan W. Beach (P69681)
Attorney for Defendants
P.O. Box 30736
Lansing, MI 48909
517.335.7659
beachb@michigan.gov

John J. Bursch (P57679)
Attorney for Plaintiff
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
202.393.8690
jbursch@ADFlegal.org

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Tonya C. Jeter
Kimberly K. Pendrick
Assistant Attorneys General
Attorneys for Defendants
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456.0067
jetert@michigan.gov
P55352
pendrickp@michigan.gov
P60348

Bryan W. Beach
Assistant Attorney General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
beachb@michigan.gov
P69681

Dated:  November 18, 2022

# TABLE OF CONTENTS

Page

Table of Contents.......................................................................................... i

Index of Authorities...................................................................................... ii

Concise Statement of Issue Presented........................................................ vi

Introduction .................................................................................................. 7

Statement of Facts ....................................................................................... 7

     A.    The Elliott-Larsen Civil Rights Act and gender identity and sexual orientation................................................................ 8

     B.    Plaintiff's requested relief.................................................... 10

Argument .................................................................................................... 12

I.    Plaintiff's motion for preliminary injunctive relief should be denied where a balancing of the equities weighs against enjoining Michigan's civil rights laws. ............................................................................ 12

     A.    Preliminary injunction factors............................................ 12

     B.    Plaintiff fails to demonstrate that any of the factors weigh in its favor. .............................................................................. 13

          1.    Plaintiff has not demonstrated it will suffer irreparable harm absent issuance of an injunction. ...................... 13

          2.    Plaintiff has not shown a strong likelihood of success on the merits of its claims. ............................................. 16

          3.    Issuance of a preliminary injunction would harm the citizens and would be contrary to the public interest. ............... 39

Conclusion and Relief Requested .............................................................. 41

Certificate of Service.................................................................................. 41

# INDEX OF AUTHORITIES

Page

## Cases

*Abney v. Amgen, Inc.*, 443 F.3d 540 (6th Cir. 2006) ..................................................... 14

*Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563 (6th Cir. 1995) .................. 17, 26

*Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641 (6th Cir. 2004) ........... 25

*Babbitt v. United Farm Workers Union*, 442 U.S. 289  (1979) .................................. 29

*Benisek v. Lamone*, 138 S. Ct. 1942 (2018) ................................................................ 12

*Berry v. Schmitt*, 688 F.3d 290 (6th Cir. 2012) ........................................................... 24

*Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154 (6th Cir. 1992) ...................... 17

*Bigelow v. Virginia*, 421 U.S. 809 (1975) ................................................................... 25

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ...................................................... 12

*Bostock v. Clayton County*, 2019 WL 2915040 .......................................................... 20

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................... 33

*Clapper v. Amnesty Int'l.*, 568 U.S. 398 (2013) .......................................................... 26

*Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477 (6th Cir. 2002)............. 26

*Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006)........ 40

*D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324 (6th Cir. 2019)...................................... 7, 16

*Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) .................................................................................................................... 38

*Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100 (6th Cir. 1982) .......... 13

*Gault v. City of Battle Creek,* 73 F. Supp. 2d 811 (W.D. Mich. 1999) ........................ 13

*Glenn v. Holder,* 690 F.3d 417 (6th Cir. 2012)............................................................ 35

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984)......... 37

*In re Eagle-Picher Indus., Inc.* 963 F.2d 855 (6th Cir. 1992) .................................... 13

*Johnson v. Lyon*, 406 F. Supp. 3d 651 (W.D. Mich. 2018)..........................................23

*Kardules v. City of Columbus*, 95 F.3d 1335 (6th Cir. 1996) ...............................24, 33

*Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505 (6th Cir. 2006) ..........................................17

*Laird v. Tatum*, 408 U.S. 1 (1972) ..................................................................... passim

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..............................................25, 33

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) 17, 18, 20

*McLeod v. Providence Christian School*, 408 N.W.2d 146 (Mich. Ct. App. 1987) ........................................................................................................................32

*Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010) ........................................................................................................................18

*Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017).................................29, 30, 32

*Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602 (6th Cir. 2009) .........27, 35

*Muhammad v. Paruk*, 553 F. Supp 2d 893 (E.D. Mich. 2008) ...................................38

*Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521 (10th Cir. 1994) .............27

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712 (6th Cir. 2003) ..........................................................................................13

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003)......................24

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ............17, 24, 28, 31

*NEOCH v. Blackwell*, 467 F.3d 999 (6th Cir. 2006)....................................................16

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977)...............39

*Nken v. Holder*, 556 U.S. 418 (2009) ...........................................................................39

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002).................................................17, 18

*Ohio Republican Party v. Brunner*, 543 F.3d 357 (6th Cir. 2008) .............................16

*Parsons*, 801 F.3d 701 (6th Cir. 2015) ........................................................................26

*Penthouse International, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991)...................36

*Peoples Rights Org. v. City of Columbus*, 152 F3d 522 (6th Cir. 1998) .....................28

*Peoples Rights Organization v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998)...... 36

*Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d 654 (E.D. Mich., 2018) ................................................................................................................. 26, 34

*Rouch World*, ___ N.W.2d ___ (Mich. 2022) .................................................. 9

*Rouch World*, 2022 WL 3007805 ................................................. 9, 10, 19, 31

*S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844 (6th Cir. 2017) ................................................................................... 12

*Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026 (6th Cir. 1995) ........................................................................................ 13

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012) ........................................ 38

*Stenberg v. Cheker Oil Co.*, 573 F.2d 921 (6th Cir. 1978) ......................... 13

*Stoianoff v. Montana*, 695 F.2d 1214  (9th Cir. 1983) ................................ 31

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................... 29

*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020)................................... 40

*UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982) ............... 13

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375; 238 U.S. App. D.C. 229 (D.C.C., 1984) ........................................................ 25, 26, 28

*United States v. Hays*, 515 U.S. 737 (1995) .............................................. 25

*United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189 (6th Cir. 1988) .......................................................................................................... 17

*Walters v. Dep't of Treasury*, 385 N.W.2d 695 (1986)................................. 23

*White v. Lee*, 227 F.3d 1214, 1226 (9th Cir. 2000)..................................... 27

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................... 14

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................... 18

## Statutes

28 U. S. C. § 2201............................................................................................ 38

28 U.S.C. § 2022............................................................................................ 28

28 U.S.C. § 2201 ............................................................................................ 28, 37

Mich. Comp. Laws § 37.2101 ......................................................................... 8, 40

Mich. Comp. Laws § 37.2102(1) ......................................................................... 8

Mich. Comp. Laws § 37.2208 ......................................................... 8, 21, 23, 32

Mich. Comp. Laws § 37.2302(a) ................................................................. 10, 31

Mich. Comp. Laws § 37.2602(c) ....................................................................... 19

Mich. Comp. Laws § 37.2705(1) .................................................................. 22, 40

Mich. Comp. Laws § 750.146 ........................................................... 8, 31, 33, 40

Mich. Comp. Laws § 750.147 ........................................................................... 19

**Constitutional Provisions**

Mich. Const. 1963, Art. 5, § 29 ....................................................................... 39

## CONCISE STATEMENT OF ISSUE PRESENTED

1.    Should Plaintiff's request for the extraordinary relief of a preliminary injunction be denied where Plaintiff has not demonstrated any imminent irreparable harm, is not likely to succeed on the merits of its constitutional challenges, and where the remaining factors weigh in favor of Defendants?

## INTRODUCTION

Plaintiff, Christian Healthcare Centers, Inc., asks this Court to enjoin the Michigan Attorney General and members of the Michigan Civil Rights Commission (Commission) from enforcing the State's Elliott-Larsen Civil Rights Act (ELCRA), which prohibits discrimination based upon gender identity and sexual orientation, and the Michigan Equal Accommodations Act.  To merit a preliminary injunction, Plaintiff must establish the existence of irreparable injury that is both certain and immediate, and not speculative or theoretical.  *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019).  But here, there are no pending complaints or open investigations of Plaintiff's operations based upon an alleged violation of either act. And Plaintiff's concerns regarding a prosecution or enforcement action are based upon an interpretive statement issued by the Commission four years ago.

Simply put, there is no immediate danger of harm, and Plaintiff's concerns are based solely on conjecture.  In addition, Plaintiff has no likelihood of success on the merits of its claims where the Court lacks jurisdiction to hear those claims, and the citizens of the State have an interest in not having enacted legislation enjoined. For these reasons, Defendants ask this Court to deny Plaintiff's motion for preliminary injunctive relief.

## STATEMENT OF FACTS

Plaintiff, a 501(c)(3) non-profit corporation with clinics in Plainfield Charter Township and Newaygo, Michigan, provides medical care to its selected membership and employs individuals at its clinics in different medical and non-

medical positions.  (ECF No. 1, Compl. ¶¶ 5, 34, 43, 114, 127, 135, 147, 155, 160,

165; PageID.4, 8-9, 10, 19, 21, 23-25.)  Plaintiff maintains that the ELCRA, Mich.

Comp. Laws § 37.2101 *et seq.*, and Michigan's Equal Accommodations Act, Mich.

Comp. Laws § 750.146 *et seq.*, do not contain a religious exemption that would

permit Plaintiff to only employ individuals who share Plaintiff's religious beliefs; to

refuse to provide patients with gender-affirming medical services[1]; and to refuse to

refer to patients by their preferred pronouns.  (ECF No. 1, Compl. ¶¶ 39-40, 55, 60-

61, 94, 106; PageID.9-12, 16, 18.)  Plaintiff's complaint can best be summarized as

having one overarching claim:  namely, that Michigan's civil rights protections

violate its First and Fourteenth Amendment rights by discouraging it from

engaging in what it alleges are religious practices as part of its business model.

### A.   The Elliott-Larsen Civil Rights Act and gender identity and sexual orientation

The ELCRA prohibits discrimination by employers, places of public

accommodation, and public service providers because of religion, race, color,

national origin, age, sex, height, weight, familial status, or marital status.  Mich.

Comp. Laws § 37.2102(1).  Relative to employment, the ELCRA allows a person to

apply for a religious exemption where religion is a "bona fide occupational

qualification reasonably necessary to the normal operation of the business or

enterprise."  Mich. Comp. Laws § 37.2208.

---

[1] Plaintiff's complaint uses the term "gender transition services" to refer to such
care.  Where relevant, Defendants use the term "gender-affirming" services or
care.

On May 21, 2018, the Commission issued an interpretive statement in which it clarified that discrimination "because of sex" included sexual orientation and gender identity.[2]

Subsequently, in the case of *Rouch World, LLC v. Dep't of Civil Rights*, Michigan Courts held that the term "because of sex" includes gender identity and sexual orientation. *Rouch World* was brought by Rouch World, LLC, a wedding venue that denied services for a same sex wedding (sexual orientation discrimination), and Uprooted Electrolysis, which denied hair removal services to a transgender woman (gender identity discrimination) and sought declaratory and injunctive relief.[3] *Rouch World,* ___ N.W.2d ___ (Mich. 2022); 2022 WL 3007805 at * 4-6. Both entities asserted that the provision of services would violate their religious beliefs. In December 2020, following the filing of a motion for summary judgment by the Department of Civil Rights, the Michigan Court of Claims held that discrimination because of sex under the ELCRA includes discrimination because of an individual's "gender identity," and granted relief in favor of the Department with regard to Uprooted Electrolysis's claim. *Id.* at *5. However, on

---

[2] *See*, Interpretative Statement 2018–1 which is available at: https://www.michigan.gov/mdcr/-/media/Project/Websites/mdcr/mcrc/statements/2018/interpretive-statement-elcra.pdf?rev=664cb6984009423eaa0b7a2af0143b25&hash=9B82965CE2D28290CFA86E8D677C0AF2, (last accessed November 17th, 2022.)

[3] Rouch World and Uprooted Electrolysis were both the subject of complaints with the Michigan Department of Civil Rights due to their failure to provide public accommodations. These administrative complaints were stayed after the lawsuit was filed.

the basis of stare decisis, the court denied summary disposition as to the sexual orientation claim. *Id.* Regarding, Rouch World's and Uprooted Electrolysis' First Amendment free exercise of religion claim, the Court of Claims concluded that the issue had not "been sufficiently briefed to resolve at this juncture." *See Rouch World, LLC v. Dep't of Civ. Rights*, unpublished order of the Court of Claims, entered December 7, 2020 (Case No. 20-000145-MZ), p. 7, attached as Ex. A. The plaintiffs did not seek to appeal the gender identity ruling.

The Michigan Supreme Court granted Defendants' bypass application challenging the Court of Claims' opinion that "because of sex" under the ELCRA did not prohibit discrimination because of an individual's sexual orientation. *Rouch World, LLC*, 2022 WL 3007805 at * 6. *See also* 961 N.W.2d 153 (Mich. 2021). Two years later, on July 28, 2022, the Michigan Supreme Court held that discrimination on the basis of sexual orientation is discrimination because of sex, and that the denial of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" at a "place of public accommodation or public service" on the basis of sexual orientation is discrimination "because of . . . sex" in violation of § 302a of the ELCRA, Mich. Comp. Laws § 37.2302(a). *Rouch World, LLC*, 2022 WL 3007805 at *15. The Michigan Supreme Court remanded the case to the Court of Claims for further proceedings consistent with its opinion. *Id.*

**B.    Plaintiff's requested relief.**

Plaintiff is requesting a preliminary injunction to enjoin Defendants from doing the following (ECF No. 5, Plaintiff's Motion, PageID.170-172):

- Enforcing the ELCRA to "prevent Christian Healthcare from adopting and following a policy, pattern, or practice of referring to patients or members of the public using only those pronouns consistent with its religious belief that sex is immutable";

- Enforcing the ELCRA to "prevent Christian Healthcare from adopting and following a policy, pattern, or practice of only offering and providing medical services consistent with its religious belief that sex is immutable";

- Enforcing the ELCRA to "prevent Christian Healthcare from explaining the religious nature of its medical care, its views about the immutability of sex, and how that view affects its services on their website";

- Enforcing the ELCRA to "prevent Christian Healthcare from adopting or following a policy, pattern, or practice of only offering positions for, only hiring, and only retaining employees who actually adhere to and agree to abide by the beliefs contained in Christian Healthcare's Religious Statements";

- Enforcing the ELCRA to "prevent Christian Healthcare from adopting or following a policy, pattern, or practice of only offering positions for, only hiring, and only retaining employees who actually adhere to and agree to abide by the beliefs contained in Christian Healthcare's Religious Statements for the following positions that qualify for the ministerial exception: Managers, the Medical Director, the Advance Practice Medical Providers, and Biblical Counselors as described in paragraphs 114-54 of the Verified Complaint";

- Enforcing the ELCRA to "prevent Christian Healthcare from posting its desired employment application, biblical counselor position, and general solicitation for employment applications or materially similar statements on its website";

- Enforcing the ELCRA to "prevent Christian Healthcare from asking prospective employees questions sufficient to learn their views about Christian Healthcare's Religious Statements";

- Enforcing the ELCRA to" prevent Christian Healthcare from asking existing employees to annually affirm the Religious Statements."

Plaintiff asks that this Court grant this injunction even though there are no ongoing civil rights complaints or investigations concerning Plaintiff's policies, patterns, or practices.  This Court should deny the request for such extraordinary relief.

## ARGUMENT

I.  **Plaintiff's motion for preliminary injunctive relief should be denied where a balancing of the equities weighs against enjoining Michigan's civil rights laws.**

   A.  **Preliminary injunction factors.**

Preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001).  A preliminary injunction is an extraordinary remedy that should be granted only "upon a clear showing that the plaintiff is entitled to such relief and proof that the circumstances clearly demand it.  *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted).  Moreover, the purpose of a preliminary injunction is simply to preserve the status quo until a trial on the merits can be held.  *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018).

The Court considers the following four factors in determining whether to issue a temporary restraining order or preliminary injunction: (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant has shown that it would suffer irreparable harm if the preliminary relief is not issued; (3) whether the issuance of a preliminary

12

injunction will not cause substantial harm to third parties; and (4) whether the public interest would be served by the issuance of a preliminary injunction. *Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982). The standard for injunctive relief is not a rigid and comprehensive test, as the four factors are not prerequisites that must be satisfied, but instead, must be balanced and are intended to "guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Gault v. City of Battle Creek,* 73 F. Supp. 2d 811, 814 (W.D. Mich. 1999) (quoting *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992)).  However, "a district court is not required to make specific findings concerning each of the four factors ... if fewer factors are determinative of the issue." *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003).  The burden of persuasion is on the party seeking the injunctive relief.  *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

**B.   Plaintiff fails to demonstrate that any of the factors weigh in its favor.**

**1.   Plaintiff has not demonstrated it will suffer irreparable harm absent issuance of an injunction.**

Plaintiff's request for a preliminary injunction should be denied because there is no immediate threat of irreparable injury.  Even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." *D.T. v. Sumner Cnty Schools,* 942 F.3d 324, 326-27 (6th Cir. 2019) (citing *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).  The

existence of irreparable harm is indispensable: If the plaintiff is not facing imminent and irreparable injury, there is no need to grant relief now as opposed to at the end of the lawsuit.  *Id.* at 327.  Therefore, a preliminary injunction is not appropriate where the threat of irreparable harm does not exist.

A plaintiff cannot simply show that irreparable harm is possible; a plaintiff must show that irreparable harm is likely without a preliminary injunction.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  To demonstrate irreparable harm, the plaintiffs must show "that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated."  *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).  Plaintiff thus must demonstrate certain and immediate irreparable harm for the grant of a preliminary injunction to be appropriate.

Here, Plaintiff argues that, absent a preliminary injunction, it will suffer irreparable harm due to an alleged continued violation of its First Amendment rights.  (ECF No. 5, Plaintiff's Motion, PageID.172-173.)  But here, there is no imminent harm for multiple reasons.

First and foremost, there are currently no open civil rights complaints or investigations involving Plaintiff.  Nor is there any evidence that Plaintiff's imagined harm—a prosecution or enforcement action by Defendants—is being contemplated at this time.  Neither the Attorney General nor the Department of Civil Rights have initiated any investigation or action against any religious entity based upon sexual orientation or gender identity since those categories garnered

protection in the 2018 Interpretative Statement and in the subsequent *Rouch World* decisions.  Rather, Plaintiff's request to enjoin Defendants is primarily based on what it fears *may* happen—it is purely speculative.

Second, the Commission's Interpretive Statement that Plaintiff fears may be enforced against it has been in place since 2018 and the Michigan Court of Claims decision protecting gender identity has been in place since 2020.  Since that time, there have been no investigations, prosecutions or enforcement actions involving Plaintiff's practices or, as noted above, against other religious entities.  Therefore, Plaintiff cannot demonstrate the existence of any *immediate* risk.

Third, Plaintiff's only alleged "injury" was performed voluntarily and was not done at Defendants' request.  Plaintiff alleges that it has changed practices by removing information from its website, including the posting of its membership agreement and career opportunities.  (ECF No. 1, Compl. ¶¶ 355-361, PageID.55.)  But Defendants did not request that Plaintiff remove information, nor are there any open complaints or investigations concerning information posted by Plaintiff online.

Finally, Plaintiff can seek injunctive relief at any time should it acquire evidence showing that prosecution or enforcement is imminent.  Should a complaint be filed or if an investigation is initiated regarding compliance with the ELCRA or Michigan's Equal Accommodations Act, Plaintiff can certainly bring a renewed motion for a preliminary injunction.  But, as of this time, no such action has occurred, and Plaintiff is simply not facing a risk of imminent and irreparable

injury.  For this reason alone, Plaintiff's motion must be denied.  *D.T.,* 942 F.3d at 327.

> **2.      Plaintiff has not shown a strong likelihood of success on the merits of its claims.**

The Sixth Circuit has long held that in determining whether to grant an injunction, the movant must show a "strong likelihood of success on the merits." *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008); *NEOCH v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  Here, Plaintiff brings four separate claims in its complaint:  Count I) Violation of the First Amendment's Free Exercise and Establishment Clauses: Religious Autonomy, Ministerial Exception, Co-Religionists, and Compelled Participation; Count II) Violation of the First Amendment's Free Exercise Clause: Lack of General Applicability, Individualized Exemptions, and Compelled Participation; Count III) Violation of the First Amendment's Free Speech and Assembly Clauses: Freedom of Speech, Expressive Association, Press, and Assembly; and, Count IV) Violation of the Fourteenth Amendment's Due Process Clause: Vagueness.  None of these claims are likely to succeed because this Court's lacks jurisdiction or should otherwise abstain from exercising jurisdiction.  Plaintiff's complaint is unlikely to succeed on the merits due to the claim being premature and thus not ripe, a lack of standing, and failing to meet the requirements for declaratory relief.

> **a.      Christian Healthcare's claims are premature and thus not ripe for pre-enforcement review.**

The ripeness doctrine originates from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and

controversies. *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992). The doctrine is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'" *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (citation omitted). Questions of ripeness arise in those cases "'anchored in future events that may not occur as anticipated, or at all.'" *Id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997)). Indeed, "a claim does not become ripe at the first whiff of governmental insensitivity or whenever a government official takes an adverse legal position against someone, even if one potential response is to curtail protected activities." *Ky. Press Ass'n*, Inc., 454 F.3d at 540.

Generally, ripeness is evaluated according to three factors:

(1) the "likelihood that the harm alleged by [the] plaintiffs will ever come to pass," *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988);

(2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims," *Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995); and,

(3) the "hardship to the parties if judicial relief is denied at [this] stage" in the proceedings, *Cyclops Corp.*, 860 F.2d at 195.

And "[a]lthough the ripeness requirement is somewhat relaxed in the First Amendment context, there nonetheless must be a credible fear of enforcement." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2d Cir. 1999)).

Even in the First Amendment context, a chilling effect "has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger*

17

*v. Harris*, 401 U.S. 37, 51 (1971); see also *Marchi*, 173 F.3d at 479 (holding that anti-abortion activists' as-applied challenge to Freedom of Access to Clinic Entrances Act was not ripe for review because they did not show that the alleged "pattern of activity" would ever come to pass).  Instead, courts "look at each case to determine the consequences of staying . . . [its] hand." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).  In a First Amendment pre-enforcement challenge, the inquiry usually focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute.  *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Nat'l Rifle Ass'n,* 132 F.3d at 285.)

Here, although Christian Healthcare requires its employees to "affirm its Statement of Faith and other religious documents" (ECF No. 1, Compl. ¶ 58, PageID.12), and has asserted that its healthcare providers "will not provide services that conflict with its religious beliefs," (*id.*, ¶ 60, PageID.12), it has not demonstrated an imminent threat of investigation and prosecution.

Christian Healthcare does not meet any of the factors required to demonstrate ripeness.

### i.       There is insufficient likelihood that the alleged harm will come to pass.

There is no indication that Christian Healthcare will be targeted for disfavored treatment or that its speech or association will be chilled.  At this juncture, the complaint contains only abstract allegations anchored in future events

that might not occur at all—or might occur differently than Christian Healthcare anticipates.

The Department of Civil Rights is charged with receiving, initiating, conciliating, adjusting, disposing of, issuing charges, and holding hearings on complaints alleging a violation of the ELCRA.  Mich. Comp. Laws § 37.2602(c).  But here, no complaint has been filed with the Department against Plaintiff.  Nor does the instant complaint allege that anyone has threatened to file such a complaint. Additionally, despite the complaint's many paragraphs outlining the burdens of the Department's investigatory process, (ECF No. 1, Compl. ¶¶ 265-275, PageID.42-43), the Department has not sua sponte or responsively initiated or threatened to initiate an investigation of Christian Healthcare or any other religious ministry or provider based on or in the wake of the Michigan Supreme Court's recent decision in *Rouch World*, *LLC*, 2022 WL 3007805 at *15 (holding that the language "because of sex" in the ELCRA includes discrimination on the basis of sexual orientation), or the Michigan Court of Claims' holding that "sex" includes gender identity.  (*See* ECF No. 1, Compl., ¶ 180, 184, PageID.27.)

Likewise, despite her authority to criminally prosecute public accommodations violations under the Equal Accommodations Act, Mich. Comp. Laws § 750.147, Attorney General Nessel has not prosecuted nor threatened prosecutions against Christian Healthcare or any other entity under that provision. Indeed, there is no case law demonstrating any previous Attorney General has filed an action to criminally enforce the Equal Accommodations Act; and Plaintiff has not

set forth any information regarding a previously filed or pending criminal case pursued under this provision.  Nor has Attorney General Nessel made public pronouncements—even during her oral argument to the Michigan Supreme Court on behalf of the Commission in *Rouch World*—about how an interpretation of "because of sex" under Michigan's ELCRA would interface with religious rights or whether the ELCRA was amenable to any religious exemptions.[4]  Her personal statements that pronouns are important, (ECF No. 1, Compl. ¶ 336, PageID.52), and the department's internal employment policy, (*id.* ¶ 233, PageID.36), are a far cry from evidencing any imminent threat of prosecution.  So too is her support for a multi-state amicus filed in *Bostock v. Clayton County*, 2019 WL 2915040, which, although it expressed the position that discrimination "because of sex" likewise prohibits discrimination based on sexual orientation and gender identity (a position that was ultimately embraced by the U.S. Supreme Court)—did not discuss the issue of religious exemptions.  (ECF No. 1, Compl. ¶ 185, PageID.27.)

### ii.    The record is not sufficiently developed.

There are insufficient facts to allow for adjudication.  *See Marchi*, 173 F.3d at 478 (finding claim unripe when it "would be forced to guess at how [the defendant] might apply the . . . directive).  In the employment context, Christian Healthcare's

---

[4] Plaintiff's reference to the Attorney General's participation in a Southern District of New York case is inapplicable as that case involved federal law, not state law, including an issue of whether the challenged law preempted state law.  And it contained no representation by the Attorney General regarding how the ELCRA interfaces with religious liberties.  See *New York, et al., v. U.S. Dept. of Health and Human Services,* U.S. District Court – New York Southern District, Case Nos. 1:19-cv-04676-PAE, 1:19-cv-05433-PAE, and 1:19-cv-05435-PAE.

request for relief forces this Court to speculate on things such as whether Christian Healthcare would be granted a bona fide occupational qualification (BFOQ) exemption under the ELCRA if it exercised its option to apply for one—which it has thus far not done.  *See* Mich. Comp. Laws § 37.2208.  The complaint acknowledges that "the Department may make individualized exemptions for employers who make a 'sufficient showing' that religion…is a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise."  (ECF No. 1, Compl., ¶ 215, PageID.33.)  Yet, tellingly, Christian Healthcare appears to justify why it has not attempted to avail itself of such an exemption on the thin basis that *other* BFOQ exemptions, such as in Title VII, have been interpreted narrowly and states that it is "not aware of any jurisdiction granting a BFOQ exemption based on religious beliefs about sexual orientation, marital status, or gender identity."  (*Id.*, ¶¶ 298, 299, PageID.47.)  Its prediction that it would not receive a BFOQ exemption based on religious beliefs is highly speculative.

Similarly, in the accommodation context, Christian Healthcare forces this Court to speculate on whether any of its members would even seek gender-affirming services or care or complain about the use of pronouns.  And it forces this Court to speculate as to how the Commission, if it *did* launch an investigation based on complaints or reports of discrimination "because of sex," would choose to address religious rights in relation to the ELCRA based on the Act's specific caution that it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp.

Laws § 37.2705(1).  Again, the Commission has not put out an interpretive statement or otherwise opined on that issue.  Neither has Attorney General Nessel.

> ### iii.    Christian Healthcare has not shown sufficient hardship absent judicial review at this time.

At this time, there is no evidence that Christian Healthcare will suffer a hardship if judicial review is denied.  Given that no action has been taken against it, no investigation launched or threatened, no complaint filed against it with the Department, and there is no indication that the Attorney General is poised to proactively criminally prosecute it, its alleged hardships are too speculative to support judicial review.

Contrary to the complaint, Michigan law has not been definitively interpreted to prohibit the kinds of activities Christian Healthcare alleges to be at risk.  In the employment arena, for example, Christian Healthcare cites no Michigan cases interpreting Michigan law as prohibiting a religious employer who meets the BFOQ criteria from asking prospective employees about whether they can follow and effectively communicate certain beliefs, seeking, recruiting, and hiring employees who agree with certain religious beliefs, or posting employment opportunities that indicate a desire to hire employees who share certain beliefs. (ECF No. 1, Compl. ¶ 205, PageID.30; ¶ 209, PageID.31-32.)  And in the accommodations arena, Christian Healthcare cites to no Michigan cases interpreting the ELCRA or Equal Accommodations Act as requiring all healthcare providers to provide gender-affirming care if they would provide similar treatments for other purposes.  (*Id.*, ¶238, PageID.37 fn 7, relying only on other jurisdictions.)

The absence of state caselaw precedent addressing religious exemptions under the ELCRA post-*Rouch World* further lessens the possibility of an *impending* investigation and prosecution and underscores that this lawsuit is premature.

Christian Healthcare can continue to engage in its mission of delivering faith-based healthcare without losing its opportunity to file a future lawsuit if specific action is taken against it.  In the meantime, it can await a future case where Michigan courts grapple with the question the Michigan Supreme Court left unanswered in *Rouch World* (due to the plaintiff's failure to preserve the issue of religious rights for appellate review).  And if it is unsure of how the Commission would apply the Michigan Supreme Court's interpretation of "because of sex," it can request an interpretive statement.[5]  Finally, nothing is preventing Christian Healthcare from filing an application for a BFOQ exemption under Mich. Comp. Laws § 37.2208, other than its mere prediction that the process would be unsuccessful. (*Id.*, ¶¶ 298, 299, PagID.47.)

The ripeness doctrine serves to "avoid[ ] ... premature adjudication" of legal questions and to prevent courts from "entangling themselves in abstract debates" that may turn out differently in different settings.  *Johnson v. Lyon*, 406 F. Supp. 3d 651, 662-63 (W.D. Mich. 2018) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of*

---

[5] Defendants recognize that the jurisdiction of the Department of Civil Rights and the circuit court is concurrent, and that "an individual may proceed simultaneously in both forums when asserting an employer's violation of the act." *Walters v. Dep't of Treasury*, 385 N.W.2d 695, 698 (1986) (internal citations omitted).  But that contemplates a ripe claim—an assertion of a violation of the ELCRA—and does not convert unripe claims into ripe ones.

*Interior*, 538 U.S. 803, 808 (2003)).  In its broadest formulation, the ripeness
doctrine poses "a question of timing" and counsels against resolving a case that is
"anchored in future events that may not occur as anticipated, or at all."  *Id.* (quoting
*National Rifle Ass'n v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997).

Generally, courts look to three factors to "guide the ripeness inquiry: (1) the
likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether
the factual record is sufficiently developed to produce a fair adjudication of the
merits of the parties' respective claims; and (3) the hardship to the parties if judicial
relief is denied at this stage in the proceedings."  *Berry v. Schmitt*, 688 F.3d 290,
298 (6th Cir. 2012).  "In declaratory judgment actions, it is often difficult to draw a
line between actual controversies and attempts to obtain advisory opinions on the
basis of hypothetical controversies."  *Kardules v. City of Columbus*, 95 F.3d 1335,
1343 (6th Cir. 1996).  As the *Magaw* Court later clarified, "A case is ripe for pre-
enforcement review under the Declaratory Judgment Act only if the probability of
the future event occurring is substantial and of 'sufficient immediacy and reality to
warrant the issuance of a declaratory judgment.'"  *Magaw*, 132 F.3d at 284.

Again, Plaintiff is not currently facing any ongoing enforcement actions. Nor
is it certain that it ever will.  Therefore, Plaintiff's alleged harm is not of a sufficient
immediacy necessitating adjudication at this time, and the ripeness doctrine bars
their claims.

          **b.**      **Plaintiff lacks standing because the alleged injury-in-fact is entirely hypothetical.**

To establish standing, "a plaintiff must demonstrate (1) he or she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's challenged action; and (3) it is likely, not speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (quoting *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004)). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes — that the injury is 'certainly impending'." *Lujan,* 504 U.S. at 564, n.2. The elements of Article III standing are not simply pleading requirements. *Id*. at 561. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id*.

It is well-established that, in establishing an injury in fact, "[a] generalized grievance against governmental conduct is insufficient to confer standing upon a party." *Id.* (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)). For this reason, plaintiffs bringing First Amendment claims "must present more than 'allegations of a subjective chill.'" *Bigelow v. Virginia,* 421 U.S. 809, 816-17 (1975) (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). *See United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378; 238 U.S. App. D.C. 229 (D.C.C., 1984) ("All of the

Supreme Court cases employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself.")  "Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm[.]"  *Laird*, 408 U.S. at 13-14.

Standing requires "a 'claim of specific present objective harm or a threat of specific future harm'."  *Id.*; *see also Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d 654, 662 (E.D. Mich., 2018).  And "[t]o satisfy the injury in fact requirement on an allegation of chilled speech, the repercussions responsible for the chilling effect must be imminent."  *Plunderbund Media*, 312 F. Supp. 3d at 662; *Parsons*, 801 F.3d 701, 710 (6th Cir. 2015) (noting that "imminent" means "'certainly impending,' in contradistinction to 'allegations of possible future injury'") (quoting *Clapper v. Amnesty Int'l.*, 568 U.S. 398, 409 (2013)).  Further, the "chill" on First Amendment expression normally stands as the "*reason* why the governmental imposition is invalid rather than as the harm which entitles [a party] to challenge it."  *Adult Video Ass'n*, 71 F.3d at 566 (citing *United Presbyterian Church in the U.S.A. v. Reagan,* 738 F.2d 1375, 1378 (D.C. Cir. 1984)).

Caselaw is instructive in understanding that where a subjective allegation of chill is alleged, "something more" is needed, such as the issuance of a temporary restraining order, *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 482-83 (6th Cir. 2002)*,* an eight-month investigation into the activities and beliefs of the plaintiffs by government officials, *White v. Lee*, 227 F.3d 1214, 1226, 1228 (9th Cir.

2000), or "numerous alleged seizures of membership lists and other property" belonging to plaintiffs, *Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1530 (10th Cir. 1994).

In *Morrison v. Board of Educ. of Boyd County* the Sixth Circuit held that subjective chill alone is insufficient to establish standing. 521 F.3d 602, 608 (6th Cir. 2009). Morrison was a high school student and Christian who believed that his religion required him to tell gay students that their sexual orientation was a sin. *Id*. at 605. His high school had a written policy prohibiting students from making potentially harassing and derogatory statements to students based on sexual orientation. Morrison alleged that the written policy chilled his speech because he feared being punished. *Id*. After the filing of the lawsuit, the school board modified its policy to permit anti-gay speech unless it was "sufficiently severe or pervasive that it adversely affects a student's education or creates a climate of hostility or intimidation for that student, both from the perspective of an objective educator and from the perspective of the student at whom the harassment is directed." *Id*. at 607. The Court held that Morrison did not have standing. *Id*. at 608. The Court reasoned that "the record [was] silent as to whether the school district threated to punish or would have punished Morrison for protected speech in violation of its policy." *Id*. The Court declined to find standing where Morrison's claim was based solely on apprehension without any specific action by the school board that supported that punishment would result.

27

Likewise in *Laird v. Tatum*, the Court found that a plaintiff's knowledge of government surveillance and the fear that the government might take some future action using that information, by itself, does not create an actual or imminent injury-in-fact for standing purposes.  408 U.S. at 13-14; *United Presbyterian Church*, 738 F.2d at 1379-80.  The Court concluded that the harm alleged resulted from the plaintiffs' confluence of subjective perceptions, beliefs, and apprehensions that the government might, at some *future date*, misuse the information gained in a way that would cause direct harm.  *Id.* at 13.  Without more, such as an "exercise of governmental power [that] [is] regulatory, proscriptive, or compulsory in nature," this was insufficient to establish standing.  *Id.* at 13-14.

In this case, there are two aspects of the standing doctrine in dispute: (1) Plaintiff has not suffered an injury in fact as required by Article III and (2) Plaintiff cannot allege an injury that is fairly traceable to the Defendants' actions.

### i.   Defendants have not taken — and will not imminently take — action that will harm Plaintiff.

Plaintiff seeks pre-enforcement relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  (ECF No. 1, Compl. ¶ 3, PageID.4.)  A declaratory judgment action brought prior to the completion of an injury in fact is proper if the plaintiff can "demonstrate actual present harm or a significant possibility of future harm . . .." *Peoples Rights Org. v. City of Columbus*, 152 F3d 522, 527 (6th Cir. 1998) (citing *National Rifle Ass'n*, 132 F.3d at 279).  In other words, an individual need not "await the consummation of threatened injury to obtain preventive relief." *Peoples Rights Organization*, 152 F.3d at 527.  The injury must only be "certainly

impending." *Id.* (citing *Babbitt v. United Farm Workers Union*, 442 U.S. 289, 298 (1979)).

Here Christian Healthcare alleges that "Michigan's Employment, Notice, Accommodation, and Publication Clauses" in ELCRA and the "Publication Clause[]" in Michigan's Equal Accommodations Act "chill" it from exercising its constitutional rights. (ECF No. 1, Compl. ¶¶ 372–73, PageID.57.) Plaintiff asserts that those provisions (1) deter it from engaging in religious exercise in violation of the First Amendment, (2) deter its right to freedom of speech, expressive association, press and assembly in violation of the First Amendment, and that (3) the "Publication Clauses" in both statutes violate the Fourteenth Amendment's Due Process Clause because they are "vague." (*Id.*, ¶¶ 378, 40-03, 413, 416, 422, 424-26, 436-40, 452, PageID.58, 61-62, 63-66, 67-68, 70.) But Plaintiff cannot establish an injury-in-fact for any of its claims. Nor can Plaintiff establish that any alleged injury is traceable to the actions of Defendants.

### ii.   Plaintiff has not suffered an injury that is concrete, actual, and imminent.

Where a plaintiff seeks prospective relief, such as declaratory relief or an injunction, the Supreme Court has strictly construed the nature of the injury-in-fact — looking for the plaintiff to articulate a concrete harm that would not occur but for the defendant's action. In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), the Supreme Court held that the injury must be "concrete and particularized," "actual and imminent," and not "conjectural or "hypothetical." Then, in *Miller v. City of Wickliffe*, 852 F.3d 497, 505-07 (6th Cir. 2017), the Sixth

Circuit affirmed the district court's ruling that plaintiffs lacked standing to bring a pre-enforcement facial challenge to an ordinance because the threat of enforcement of the law was not sufficiently imminent.

The standing question comes down to whether Plaintiff can show a credible threat of investigation or prosecution. As with the case in *Wickliffe*, the threat of enforcement of Michigan's civil rights laws are not "sufficiently imminent" against Plaintiff. Plaintiff has not been investigated, charged, or prosecuted with violating Michigan's civil rights law. And there is nothing alleged in the complaint to indicate that Plaintiff is likely to be investigated or prosecuted by the Defendants under either Act anytime in the foreseeable future. Further supporting the unlikeness of Plaintiff sustaining an injury in fact, Plaintiff does not allege a history of past enforcement of these Acts against it. Plaintiff has not received any enforcement warning actions from the Defendants; and Plaintiff has *never* been requested to respond to any complaint, naming it as a respondent or a defendant.

Similar to *Laird*, Plaintiff's allegations are based on fears that are not grounded in actual reality. To date, there have been no complaints lodged against it. And, even if a complaint is filed with the Department, that does not guarantee the Department will authorize the complaint, let alone conduct a full-blown investigation. *See* Mich. Admin. Code, Rule 37.6.

Here, Plaintiff cannot establish an injury-in-fact. And, following the rationale in *Laird*, Plaintiff's reliance on the *Rouch World* case to establish foreseeable harm is misplaced – and speculative. *Rouch World* has been remanded

to the Michigan Court of Claims. *Rouch World,* 2022 WL 3007805 at *15. Simply put, this case is not fit for adjudication. As of the filing of this Complaint, Plaintiff cannot even show a threatened, much less an actual, investigation or enforcement against it by any of the Defendants under the ELCRA or Michigan's criminal public accommodations law. Notably, Plaintiff does not plead that it has been asked to provide medical services or engage in business practices in conflict with its religious beliefs despite it "serv[ing] and continu[ing] to serve members who [are] transgender." (ECF No. Compl., ¶ 40, PageID.9.)

In addition, both Michigan's civil rights public accommodations laws allow for a respondent or a defendant to show that it did not discriminate, or that it provided an alternative that constituted "full and equal" access, meaning a respondent or defendant may prevail under Michigan's civil rights laws. *See* Mich. Comp. Laws § 37.2302(a); Mich. Comp. Laws § 750.146. These provisions do not appear to require "an immediate and significant change in the plaintiff's conduct" of its affairs if it is to avoid liability for noncompliance. This is a situation involving "'the mere existence of a statute . . . which may or may not ever be applied to plaintiffs . . . .'" *National Rifle Ass'n of America*, 132 F.3d at 293 (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)).

Further, as noted above, Plaintiff had the option of applying for a BFOQ under the ELCRA. (ECF No. 1, Compl. ¶ 292, PageID.46.) The ELCRA allows an employer to seek an exemption "on the basis that religion . . . is a bona fide

occupational qualification reasonably necessary to the normal operation of the business or enterprise."  Mich. Comp. Laws § 37.2208.  Further,

> an employer may have a bona fide occupation qualification on the basis of religion . . . *without* obtaining a prior exemption from the commission, provided that an employer who does not obtain an exemption shall have the burden of establishing that the qualification is reasonably necessary to the normal operation of the business."

(*Id.*) (Emphasis added.)  Yet, Plaintiff has chosen not to apply for exemption.

Michigan caselaw is instructive on how this Court should dispose of this matter.  In *McLeod v. Providence Christian School,* the defendant sought to have provisions of the ELCRA struck down as unconstitutional under the First Amendment's Free Exercise Clause, as it applied to the defendant.  408 N.W.2d 146 (Mich. Ct. App. 1987).  The court held that the defendant should first avail itself of the safeguards in the ELCRA—the BFOQ—before attempting to have its provisions declared unconstitutional.  (*Id.* at 151-52.)

As in *McLeod*, redress is clearly available under the ELCRA to satisfy Plaintiff's concerns about its hiring practices.  But, because Plaintiff has chosen not to do so, all that it can assert, like in *Wickliffe*, 852 F.3d at 507, is that Defendants "*might* have taken some action against them." (*Id.*) (emphasis added).  And, as the Sixth Circuit in *Wickliffe* wrote, "[t]his is the exact sort of hypothetical and speculative dispute that Article III proscribes from federal court dockets." (*Id.*)

### iii.  Plaintiff cannot demonstrate an injury in fact that is fairly traceable to any action of Defendants.

In order to have standing to bring suit, an individual must demonstrate that he or she "'has sustained or is immediately in danger of sustaining some direct

injury' as the result of the challenged official conduct . . . ." *Kardules v. City of Columbus*, 95 F.3d 1335, 1347 (6th Cir. 1996) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983)).  The injury must "affect the Plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Plaintiff's 73-page complaint has many allegations against the Defendants—all of them speculative.  Despite Plaintiff alleging different types of investigations conducted by the Department from 2011 through 2021, at the time of the filing of its Complaint — and to date — no action had been taken, or threatened, against the Plaintiff.  Yet, Plaintiff has been operating in Michigan since 2015.  (ECF No. 1, Compl. ¶¶ 16, 318, PageID.6, 50.)  Further, the Department has not initiated any sua sponte investigation of a religious entity on the basis of sexual orientation or gender identity discrimination since the issuance of the 2018 Interpretative Statement.  Plaintiff, thus, has failed to allege a sufficient nexus between an injury and the government action it attacks to justify asking this Court for judicial intervention.

As to the Attorney General, Plaintiff claims a June 2021 internal departmental transgender policy somehow "chills" its First Amendment rights and evidences that it will be subjected to prosecution under Michigan's Equal Accommodations Act, Mich. Comp. Laws § 750.146, *et seq*.  (*Id*., ¶ 233, PageID.36.)  Such a contention belies the requirements for criminal jurisprudence.  Also, the internal policy does not demonstrate that Plaintiff has been harmed or faces imminent harm because of its religious beliefs based on any action taken by the

33

Attorney General.  *See Plunderbund Media*, 312 F. Supp. 3d at 663.  For example, Plaintiff cannot show that it is being targeted for its religious viewpoint by the Attorney General or that the Attorney General, acting in concert with the Commission and the Department, or *vice versa*, is investigating its medical, or employment and business practices as a result of the 2021 Department of Attorney General internal policy.  And, contrary to the intimation in Plaintiff's complaint, Executive Director Johnson and the Commission do not have criminal enforcement or prosecutorial authority under state law.  (ECF No. 1, Compl., ¶¶ 11, 301, PageID.5, 47-48.)

Moreover, neither the Attorney General nor the other Defendants have criticized or interfered with Plaintiff's internal or external publications and postings because of its religious beliefs or for any other reason.  Defendants have not civilly or criminally initiated a legal challenge to Plaintiff's Religious Provider Disclosure, Philosophy of Wellness and Healthcare, Statement of Faith, Statement of Values, Affirmation on Marriage and Human Sexuality, or the Code of Conduct.  Nor have Defendant's interfered with Plaintiff's fundraising efforts and donations that have amounted to "one million dollars in cash donations and more than one-and-a-half million dollars in noncash donations."  (*Id.*, ¶ 50, PageID.11.)  Plaintiff is not, and has never been, prohibited from engaging in any speech, expressive association, or *any* lawful conduct by the Attorney General Nessel, Commission members or Executive Director Johnson because of its religious beliefs.  A plaintiff's "choice to chill his own speech based on his perception that he would be disciplined for

34

speaking" does not constitute a sufficient injury in fact.  *Laird*, 408 U.S. at 13.

Since 2015, Plaintiff has been unobstructed to operate its business and provide

medical services as it sees fit.

Defendants' actions or lack thereof do not demonstrate that they have

"chilled" Plaintiff's speech or its expressive associations.  As with the plaintiffs in

*Laird*, Plaintiff relies only on its own subjective apprehensions, perceptions, and

beliefs that it will be specially targeted for investigation and possible enforcement.

408 U.S. at 11 (holding that a chilling effect cannot "arise merely from the

individual's knowledge that a governmental agency was engaged in certain

activities or from the individual's concomitant fear that, armed with the fruits of

those activities, the agency might in the future take some other and additional

action detrimental to that individual"); *see also Morrison*, 521 F.3d at 608-09

(holding that the plaintiff's own subjective apprehension and self-imposed

unwillingness to communicate did not constitute an injury in fact).  But, like the

plaintiff in *Laird*, Plaintiff must demonstrate that its fears are objectively

reasonable.  It cannot do so.

The decision in *Glenn v. Holder* is also instructive on this point.  690 F.3d

417, 423 (6th Cir. 2012).  There, the plaintiffs appealed the district court's

determination that they did not have standing to challenge the constitutionality of

the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act.  *Id*. at 418.

The plaintiffs argued "that the expression and practice of their anti-homosexual

religious beliefs [would] lead to federal investigation and prosecution under the Act,

35

in violation of their First Amendment rights." *Id.*  In addition to finding that the plaintiffs' "fear [of] wrongful prosecution and conviction" was "misplaced" and "inadequate to generate a case or controversy," the Court also noted that the plaintiffs' "lawsuit [was] really a political statement against the Hate Crimes Act." *Id.* at 418, 422.  The same is true here.

There is no First Amendment violation "in the absence of some actual or threatened imposition of governmental power or sanction." *Penthouse International, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991).  Given that **no** investigation or prosecution under any of the challenged provisions of Michigan's civil rights Acts has been executed against Plaintiff, and there has not been a threat of such actions, there is nothing for this Court to review to determine if Plaintiff will suffer a harm in some still unknown circumstance in this case; thus, there is no injury-in-fact traceable to any action of the Defendants.

However, an action for a declaratory judgment, like here, is generally brought before a completed injury-in-fact has occurred.  The plaintiff bringing the action has standing if he is able to demonstrate "actual present harm or a significant possibility of future harm to justify pre-enforcement relief." *Peoples Rights Organization v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998).  "[I]t is clear that an individual does not have to await the consummation of threatened injury to obtain preventive relief.  Rather, if the injury is certainly impending, that is sufficient." *Id.*

As discussed above, there is absolutely no evidence that Plaintiff faces an imminent threat of prosecution.  And even though the policies it points to have been in place for years, Plaintiff does not allege contact of any kind from any Defendant regarding a lack of compliance.  Plaintiff's claims are purely premised on speculation and what they fear Defendants may do.  Therefore, not only has there been no 'injury in fact,' but there is no evidence that one is certainly impending.

> ### c.   Plaintiff cannot establish a claim for declaratory relief where there is no actual controversy, it would not clarify the legal relationship of the parties, and it is not the most effective remedy.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy[,]" a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  It is well established the authority to grant such relief "rests in the 'sound discretion' of the court" and, thus, a court may refuse to hear such a claim.  *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984).  Accordingly, courts are not "required to decide legal issues and give advisory relief unnecessarily."  *Id.* at 326.

Five factors should be considered in determining whether a court should render declaratory relief:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and,

(5) whether there is an alternative remedy which is better or more effective.

*Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012).  At least three of these factors weigh heavily against Plaintiff's requested declaratory relief.  *Muhammad v. Paruk*, 553 F. Supp 2d 893 (E.D. Mich. 2008) (dismissing an action after weighing these factors).  First and foremost, there is no "actual controversy" under Article III warranting relief under the Declaratory Judgment Act, 28 U. S. C. § 2201.  At this juncture, neither the Attorney General, the Department, nor the Commission have taken any adverse action against Plaintiff under the ELCRA or Michigan's Equal Accommodations Act.  Instead, Plaintiff relies on threats of investigation or prosecution that can best be characterized as "legal conclusions masquerading as factual allegations."  *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  This Court cannot "settle the controversy" when no controversy exists at this stage, as discussed above.

Second, declaratory relief would not serve a useful purpose in this case or "clarify[] the legal relations in issue."  Plaintiff's complaint does not allege any confusion related to the legal relationships of the parties involved in this matter, only that they are concerned with Defendants' enforcement of the state statutes at issue.  There has been a long-standing religious exemption in the ELCRA as it applies to employment, and there has been no formal policy issued by any of the Defendants regarding how any religious exemption will apply to public accommodations related to sexual orientation and gender identity discrimination.

38

As noted above, this issue is still under consideration in *Rouch World*, which was remanded for further proceedings.

Third, given that the *Rouch World* decision was just issued in July 2022 and the Commission has yet to issue a formal policy following the decision, the better and more effective remedy to this premature lawsuit would be to wait for the Court or Commission to address this matter pursuant to the remand entered by the Michigan Supreme Court in *Rouch World*.  Only then can Plaintiff determine whether its subjective apprehensions have ripened into actual, concrete constitutional injuries.

### 3.    Issuance of a preliminary injunction would harm the citizens and would be contrary to the public interest.

Factors three and four in the preliminary-injunction analysis—harm to third parties and to the public—coincide in this case.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (the harm to the opposing party and the public interest "merge when the Government is the opposing party").

The State's interests here are paramount.  The U.S. Supreme Court has recognized that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (C.J. Roberts in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)).  The Michigan Civil Rights Commission was created by the Michigan Constitution to investigate civil rights issues.  Mich. Const. 1963, Art. 5, § 29.  The ELCRA and the Michigan Equal Accommodations Act, sought to be enjoined by the Court, Mich.

Comp. Laws § 37.2101, *et seq.,* and § 750.146, respectively, were duly enacted by the Michigan Legislature.  Defendants should continue to have the opportunity to apply these statutes relative to any claims of religious exemptions prior to this Court determining whether the State's actions may violate any federal constitutional provisions—especially in light of the fact that the ELCRA provides it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1).

The people of Michigan have a right and interest in seeing its civil rights laws maintained and enforced.  "[G]iving effect to the will of the people by enforcing the laws they and their representatives enact serves the public interest." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020) (citing *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006).

In sum, Plaintiff has not met the factors that justify the extraordinary relief it seeks, which is to enjoin Defendants from enforcement of the ELCRA and the Equal Accommodations Act and the protections they provide against discrimination based upon gender identity and sexual orientation.

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above, Defendants request that this Court deny

Plaintiff's motion for a preliminary injunction.

Respectfully submitted,

*/s/Bryan W. Beach*
Bryan W. Beach (P69681)
Tonya C. Jeter (P55352)
Kimberly K. Pendrick (P60348)
Assistant Attorneys General
Attorneys for Defendants
Civil Rights and Elections Division
3030 W. Grand Blvd., 10th Floor
(313) 456-0067
P69681

Dated:  November 18, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2022, I electronically filed the foregoing

document(s) with the Clerk of the Court using the ECF System, which will provide

electronic notice to the parties.

*/s/Bryan W. Beach*
Bryan W. Beach (P69681)