UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN HEALTHCARE CENTERS, INC.,

       Plaintiff,

v.

DANA NESSEL, in her official capacity Attorney General of Michigan, JOHN E. JOHNSON, JR., in his official capacity as Executive Director of the Michigan Department of Civil Rights, PORTIA L. ROBERSON, ZENNA FARAJ ELHASON, GLORIA E. LARA, REGINA GASCO-BENTLEY, ANUPAMA KOSARAJU, RICHARD CORRIVEAU, and DAVID WORTHAMS, in their official capacities as members of the Michigan Civil Rights Commission,

       Defendants.

_____/

No. 1:22-cv-00787

HON. JANE M. BECKERING

MAG. PHILLIP J. GREEN

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Jonathan A. Scruggs
Arizona Bar No. 030505
Ryan J. Tucker
Arizona Bar No. 034382
Henry W. Frampton, IV
South Carolina Bar No. 75314
Bryan D. Neihart
Arizona Bar No. 035937
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
480.444.0020
jscruggs@ADFlegal.org
rtucker@ADFlegal.org
hframpton@ADFlegal.org
bneihart@ADFlegal.org

Tonya C. Jeter
Kimberly K. Pendrick
Attorneys for Defendants
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456.0067
jetert@michigan.gov
P55352
pendrickp@michigan.gov
P60348

Bryan W. Beach (P69681)
Attorney for Defendants
P.O. Box 30736
Lansing, MI 48909
517.335.7659
beachb@michigan.gov

John J. Bursch (P57679)
Attorney for Plaintiff
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
202.393.8690
jbursh@ADFlegal.org

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

Tonya C. Jeter
Kimberly K. Pendrick
Assistant Attorneys General
Attorneys for Defendants
Civil Rights and Election Division
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456-0067
jetert@michigan.gov
P55352
pendrickk@michigan.gov
P60348

Bryan Beach
Assistant Attorney General
Attorney for Defendants
Civil Rights and Election Division
P.O. Box 30736
Lansing, MI 48909
517.335.7659
beachb@michigan.gov
P69681

Dated:  November 18, 2022

# TABLE OF CONTENTS

Page

Table of Contents.................................................................................i

Index of Authorities.............................................................................iii

Concise Statement of Issues Presented ...................................................vii

Controlling or Most Appropriate Authority..............................................ix

Introduction ........................................................................................ 1

Statement of Facts ............................................................................... 2

      A.    Current Michigan authority regarding gender identity and
           sexual orientation....................................................................... 2

           1.    The Commission's Interpretive Statement.................................. 2

           2.    *Rouch World, LLC v. Dep't of Civil Rights* ................................. 3

      B.    Christian Healthcare Center's claims ............................................ 5

Standard of Review.............................................................................. 6

Argument ........................................................................................... 7

I.    Christian Healthcare's claims are premature and thus not ripe for pre-
    enforcement review. ...................................................................... 7

      A.    In the pre-enforcement context, claims are not ripe where there
           is not a credible fear of enforcement and, even though ripeness is
           somewhat relaxed in the First Amendment context, allegations
           of a "chilling" effect are not a sufficient standalone basis to
           sustain claims of injury............................................................... 7

           1.    There is insufficient likelihood that the alleged harm will
                come to pass. ..................................................................... 9

           2.    The record is not sufficiently developed. ................................. 11

           3.    Christian Healthcare has not shown sufficient hardship
                absent judicial review at this time............................................. 13

II.    Christian Healthcare cannot establish standing based on conjectural or
       hypothetical allegations of harm. ...................................................................... 14

       A.    Standing requires concrete harm that is actual or imminent –
             not a mere subjective allegation of chill or a generalized
             grievance against government conduct. ................................................. 15

       B.    Defendants have not taken — and will not imminently take —
             action that will harm Plaintiff. ............................................................ 19

             1.    Plaintiff has not suffered an injury that is concrete,
                   actual, and imminent. ................................................................ 20

             2.    Plaintiff cannot demonstrate an injury in fact that is
                   fairly traceable to any action of Defendants............................. 24

III.   This Court should abstain from deciding Plaintiff's Due Process Clause
       challenge. ............................................................................................................ 27

IV.    This Court should decline to issue declaratory relief. ...................................... 29

V.     This Court should decline to issue permanent injunctive relief. ..................... 31

Conclusion and Relief Requested ................................................................................. 33

Certificate of Service ..................................................................................................... 33

# INDEX OF AUTHORITIES

Page

## Cases

*Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc.*, 720 F.2d 897 (6th Cir. 1983) ........................................................................................... 28

*Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563 (6th Cir. 1995) .................. 8, 17

*Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641 (6th Cir. 2004) ........... 16

*Babbitt v. United Farm Workers Union*, 442 U.S. 289 (1979) .................................. 20

*Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154 (6th Cir. 1992) ........................ 7

*Bigelow v. Virginia,* 421 U.S. 809 (1975) .................................................................... 16

*Binno v. Am. Bar Ass'n.*, 826 F.3d 338 (6th Cir. 2016) ............................................. 15

*Bostock v. Clayton County*, 2019 WL 2915040 .......................................................... 11

*Burford v. Sun Oil Corp*, 315 U.S. 315 (1943) ..................................................... 27, 28

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................. 24, 32

*Clapper v. Amnesty Int'l. USA*, 568 U.S. 398 (2013) ........................................... 15, 17

Cnty. Sec. Agency v. Ohio Dep't of Commerce, 296 F.3d 477 (6th Cir. 2002) ........... 18

*Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) ........................................................................................................... 30

*Glenn v. Holder,* 690 F.3d 417 (6th Cir. 2012) ........................................................... 26

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) ......... 29

*Kardules v. City of Columbus*, 95 F.3d 1335 (6th Cir. 1996) .................................... 24

*Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505 (6th Cir. 2006) ...................................... 7, 8

*Laird v. Tatum*, 408 U.S. 1 (1972) .................................................................... passim

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................ 16, 24

*Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) ........ 8, 11

*McLeod v. Providence Christian School*, 408 N.W.2d 146 (Mich. Ct. App. 1987) ............................................................................................ 23

*Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533 (6th Cir. 2010) .............................................................................................. 9

*Miller v. City of Wickliffe*, 852 F.3d 497 (6th Cir. 2017) ...................... 21, 23

*Morrison v. Board of Educ. of Boyd County*, 521 F.3d 602 (6th Cir. 2009) ......... 18, 26

*Muhammad v. Paruk*, 553 F. Supp 2d 893 (E.D. Mich. 2008) .................................. 30

Nat'l Commodity & Barter Ass'n v. Archer, 31 F.3d 1521 (10th Cir. 1994)............. 18

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ............... 8, 9, 20, 22

*New Orleans Public Service, Inc. (NOPSI) v. Council of the City of New Orleans*, 491 U.S. 350 (1989) ................................................ 28

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002)....................................................... 8, 9

*Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990) ...................... 6

*Parsons v. United States Dep't of Justice*, 801 F.3d 701 (6th Cir. 2015) ............. 15, 17

*Penthouse International, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991)................... 27

*Peoples Rights Org. v. City of Columbus*, 152 F3d 522 (6th Cir. 1998) .................... 20

*Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d 654 (E.D. Mich., 2018) ................................................................................ 17, 25

*RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125 (6th Cir. 1996) .......... 6

*Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918 (6th Cir. 2002).................. 16

*Rouch World,* ___ N.W.2d ___ (Mich. 2022) ........................................................... 4, 5

*Rouch World,* 2022 WL 3007805 ......................................................................... 4, 5, 22

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012) ........................................................... 30

*Steffel v. Thompson*, 415 U.S. 452 (1974) ................................................................... 32

*Stoianoff v. Montana*, 695 F.2d 1214 (9th Cir. 1983) ................................................. 22

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)........................................... 21

*United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375; 238 U.S. App. D.C. 229 (D.C. Cir., 1984)...............................................................17, 19

*United States v. Hays*, 515 U.S. 737 (1995) ................................................. 16

*United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189 (6th Cir. 1988) ........................................................................................................... 8

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489 (1982) ........... 29

*Walters v. Dep't of Treasury*, 385 N.W.2d 695 (1986) ................................. 14

*Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624 (6th Cir. 2001).......... 15

*Warren v. City of Athen*, 411 F.3d 697 (6th Cir. 2005) ................................ 31

*White v. Lee*, 227 F.3d 1214, 1226 (9th Cir. 2000) ...................................... 18

*Younger v. Harris*, 401 U.S. 37 (1971) ........................................................ 8

## Statutes

28 U. S. C. § 2201 ........................................................................................ 30

28 U.S.C. § 2201 ................................................................................... 19, 29

28 U.S.C. § 2202 ......................................................................................... 19

Mich. Comp. Laws § 37.2101 ........................................................................ 1

Mich. Comp. Laws § 37.2102(1) .................................................................... 3

Mich. Comp. Laws § 37.2103(i) ..................................................................... 3

Mich. Comp. Laws § 37.2208 .......................................................... 11, 14, 23

Mich. Comp. Laws § 37.2301 ....................................................................... 14

Mich. Comp. Laws § 37.2302(a) ................................................................. 5, 22

Mich. Comp. Laws § 37.2601 ......................................................................... 3

Mich. Comp. Laws § 37.2602 ......................................................................... 4

Mich. Comp. Laws § 37.2602(c) ..................................................................... 9

Mich. Comp. Laws § 37.2705(1) ................................................................... 12

Mich. Comp. Laws § 750.146 ................................................................... passim

Mich. Comp. Laws § 750.147 ........................................................................ 10

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................... 6, 33

Fed. R. Civ. Proc. 10(c) ............................................................................. 32

**Constitutional Provisions**

U.S. Const., Art. III, § 2 ............................................................................ 15

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.    The ripeness doctrine is designed to ensure that the jurisdiction of the federal courts is limited to actual cases and controversies, not premature, abstract disagreements that may not occur, and while ripeness is somewhat relaxed in the First Amendment context, there nevertheless must be a credible fear that the anticipated action will occur.  Here neither Attorney General Nessel, Executive Director Johnson, nor any of the Commission members have interfered with Plaintiff's business, let alone threatened to investigate or prosecute Plaintiff, because of its religious beliefs.  Are Plaintiff's First, Second, and Third causes of action ripe for judicial resolution?

2.    To establish standing, a party must show injury in fact, not just a generalized grievance against governmental conduct, and as for a First Amendment claim, a party must show a chilling effect that is actual and imminent, not just a subjective allegation of chilled speech.  Here, Plaintiff relies on mere conjecture that someday in the future it may be investigated or prosecuted based on its religious beliefs under the Elliott-Larsen Civil Rights Act and Michigan's public accommodations law.  Has Plaintiff met the standing requirements to bring its First and Fourteenth Amendment claims?

3.    *Burford* abstention is appropriate where timely and adequate state-court review is available and a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  Should the Court abstain where the appropriate state entities have yet to determine, through the results of investigation or an interpretive statement, how Michigan's civil rights laws interface with constitutional rights involving religion?

4.    The issuance of declaratory relief rests within the sound discretion of the Court, where such relief would settle the controversy, serve a useful purpose, or provide for a better or more effective remedy.  Here, declaratory relief would not settle the present controversy, and the state has an interest in the continued enforcement of its civil rights laws.  Should this Court deny Plaintiff's request for declaratory relief?

5.    Permanent injunctions require both a continuing irreparable injury if the court fails to issue the injunction and the lack of an adequate remedy at law.  Here, Plaintiff has only conjectured that it will be wronged, with no demonstration of real, imminent likelihood of future injury.  Should this Court deny the Plaintiff's request for a permanent injunction?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:

*United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189 (6th Cir. 1988)

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

*Laird v. Tatum*, 408 U.S. 1 (1972)

*Peoples Rights Org. v. City of Columbus*, 152 F3d 522 (6th Cir. 1998)

*Burford v. Sun Oil Corp*, 315 U.S. 315 (1943)

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012)

## INTRODUCTION

Plaintiff, Christian Healthcare Centers (Plaintiff or Christian Healthcare), filed this lawsuit seeking declaratory and injunctive relief following the Michigan Supreme Court's recent decision in *Rouch World, LLC v. Dep't of Civ. Rights*, which held that sexual orientation discrimination is a violation of the State's Elliott-Larsen Civil Rights Act (ECLRA), Mich. Comp. Laws § 37.2101 *et seq*.  That decision came two years after the Michigan Court of Claims held in the same case that gender identity discrimination violated the ELCRA.  Both *Rouch World* decisions followed a 2018 Interpretive Statement issued by the Michigan Civil Rights Commission (Commission) determining that the ELCRA's "because of sex" provision prohibits discrimination based on sexual orientation and gender identity.

Plaintiff maintains that the ELCRA and Michigan's Equal Accommodations Act, Mich. Comp. Laws § 750.146 *et seq*., do not contain a religious exemption that permits Plaintiff to employ only individuals who share the same religious beliefs as it, to refuse to provide patients with gender-affirming services or care,[1] and to refuse to refer to patients by their preferred pronouns.  (ECF No. 1, Compl. ¶¶ 39-40, 55, 60-61, 94, 106, PageID.9-12, 16, 18.)  Plaintiff's complaint can best be summarized as having one overarching claim:  namely, that Michigan's civil rights protections violate its First and Fourteenth Amendment rights by discouraging it

---

[1] Plaintiff's complaint uses the term "gender transition services" to refer to such care.  Where relevant, Defendants use the term "gender-affirming" services or care.

from engaging in what it alleges are religious practices as part of its business model.

Plaintiff acknowledges it has not been the subject of any civil rights or criminal complaint, let alone a target of an investigation or prosecution by any of the named Defendants because of its religious beliefs—despite the fact that the ELCRA has been interpreted to protect against discrimination based on gender identity and sexual orientation since 2018.  (ECF No. 1, Compl. ¶¶ 173, 195-96, PageID.26, 29.)  And none of the Defendants have pronounced that Michigan law prohibits the exercise of all religious rights or taken action accordingly.  These facts underscore that the possibility of any future action or investigation against Plaintiff is speculative, and thus not ripe, and that there is no injury-in-fact to support standing on any claim.  Further, the lack of controversy and harm support a denial of declaratory and injunctive relief.

## STATEMENT OF FACTS

### A.    Current Michigan authority regarding gender identity and sexual orientation

This case was spurred by recent decisions in Michigan that have made clear that the ELCRA provides protections against discrimination based upon gender identity and sexual orientation.  In order to provide the Court with the necessary context, these decisions are briefly summarized below.

### 1.    The Commission's Interpretive Statement

The ELCRA has long provided protection from discrimination based upon "sex," but it does not specify whether the "because of . . . sex" language includes

protection for individuals based upon sexual orientation or gender identity.  *See*

Mich. Comp. Laws §§ 37.2102(1), 37.2103(i).

On May 21, 2018, the Commission[2] adopted Interpretive Statement 2018-1,

in which it concluded that "sexual orientation" and "gender identity" fall within the

meaning of "sex" as used in the ELCRA.  (ECF No. 1, Compl. ¶ 173, PageID.26; ECF

No. 5, Pl's Prelim. Injunction Mot. App'x, PageID.338-340.)  Noting analogous

federal precedent, the Commission explained in its statement that:

> [T]he U.S. 6th Circuit Court of Appeals . . . ruled in the case of *EEOC v*
> *R.G. & G.R. Harris Funeral Homes, Inc.* that the same language
> "discrimination because of . . . sex" when used in federal civil rights
> law protected a transgender Michigan woman who was gender
> stereotyped and discriminated against for not behaving like a
> male. . . .

(ECF No. 5, Pl's Prelim. Injunction Mot. App'x, PageID.338.)  Accordingly, the

Commission found "that continuing to interpret the protections afforded by the

phrase 'discrimination because of . . . sex' more restrictively by continuing to

exclude individuals for reasons of their gender identity or sexual orientation would

itself be discriminatory." (*Id.*)

### 2. *Rouch World, LLC v. Dep't of Civil Rights*

Subsequently, in the *Rouch World* cases, Michigan Courts concluded that the

"because of sex" language includes gender identity and sexual orientation.  *Rouch*

---

[2] The Commission was established by the Michigan Constitution of 1963 to carry
out the guarantees against discrimination articulated in Article 1, § 2.  *See* Mich.
Const. 1963, Art. 1, § 2, Art. 5, § 29.  The Commission's duties are established by
law.  *See* Mich. Comp. Laws § 37.2601, *et seq.*

*World* was brought by Rouch World, LLC, a wedding venue that denied services for a same sex wedding (sexual orientation discrimination), and Uprooted Electrolysis, which denied hair removal services to a transgender woman (gender identity discrimination) and sought declaratory and injunctive relief.[3]  *Rouch World,* ___ N.W.2d ___ (Mich. 2022); 2022 WL 3007805 at * 4–6.  Both entities asserted that the provision of services would violate their religious beliefs.  In December 2020, following the filing of a motion for summary judgment by the Department of Civil Rights, the Michigan Court of Claims held that discrimination because of sex under the ELCRA includes discrimination because of an individual's "gender identity," and granted relief in favor of the Department with regard to Uprooted Electrolysis's claim.  2022 WL 3007805 at *5.  However, on the basis of stare decisis, the court denied summary disposition as to the sexual orientation claim.  *Id.*  Regarding, Rouch World's and Uprooted Electrolysis' First Amendment free exercise of religion claim, the Court of Claims concluded that the issue had not "been sufficiently briefed to resolve at this juncture."  *See Rouch World, LLC v. Dep't of Civ. Rights*, unpublished order of the Court of Claims, entered December 7, 2020 (Case No. 20-000145-MZ) p. 7, attached as Ex. A.  The plaintiffs did not seek to appeal the gender identity ruling.

---

[3] Rouch World and Uprooted Electrolysis were both the subject of complaints with the Michigan Department of Civil Rights due to their failure to provide public accommodations.  *See* Mich. Comp. Laws § 37.2602.  These administrative complaints were stayed after the lawsuit was filed.

The Michigan Supreme Court granted Defendants' bypass application challenging the Court of Claims' opinion that "because of sex" under the ELCRA did not prohibit discrimination because of an individual's sexual orientation.  *Rouch World, LLC*, 2022 WL 3007805 at * 6.  *See also* 961 N.W.2d 153 (Mich. 2021).  Two years later, on July 28, 2022, the Michigan Supreme Court held that discrimination on the basis of sexual orientation is discrimination because of sex, and that the denial of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" at a "place of public accommodation or public service" on the basis of sexual orientation is discrimination "because of . . . sex" in violation of § 302a of the ELCRA, Mich. Comp. Laws § 37.2302(a).  *Rouch World, LLC*, 2022 WL 3007805 at *15.  The Michigan Supreme Court remanded the case to the Court of Claims for further proceedings consistent with its opinion.  *Id.*

### B.    Christian Healthcare Center's claims

Plaintiff, a 501(c)(3) non-profit corporation with clinics in Plainfield Charter Township and Newaygo, Michigan, provides medical care to its selected membership and employs individuals at its clinics in different medical and non-medical positions.  (ECF No. 1, Compl. ¶¶ 5, 34, 43, 114, 127, 135, 147, 155, 160, 165; PageID.4, 8-9, 10, 19, 21, 23-25.)

Plaintiff sued Attorney General Dana Nessel, John E. Johnson, the Executive Director of the Department of Civil Rights, and Commission members Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau, and David Worthams, in their official capacities. Plaintiff brings four causes of action alleging that the enforcement of the

5

accommodations, employment, notice and publication provisions in the ECLRA and the publications clause in Michigan's Equal Accommodations Act, violate the First and Fourteenth Amendments to the U.S. Constitution by infringing on Plaintiff's religious beliefs.  (ECF No. 1, Compl. ¶¶ 1, 5-7, 8, 10, 12, 17, 408, 425, 445-46, 453; PageID.4-6, 63, 66, 69-70.)

Plaintiff is requesting the same relief in all four counts: declaratory and injunctive relief as to the disputed ELCRA and Michigan Equal Accommodations Act provisions.  (ECF No. 1, Compl. Page ID.70-71.)  In addition, Plaintiff requests costs and expenses, including attorneys' fees.  (*Id.*)

## STANDARD OF REVIEW

This Court must dismiss a complaint if it lacks jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When reviewing a motion to dismiss under Rule 12(b)(1) that attacks the factual basis of the Court's jurisdiction, rather than the facial deficiency of the complaint, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  Further, because the Court's "very power to hear the case" is at issue, the trial court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996).  No presumptive truthfulness attaches to a plaintiff's allegations, and disputed material facts will not preclude a court from evaluating the merits of jurisdictional claims.  *Id.*  Under Fed. R. Civ. P. 12(b)(1), a plaintiff has the burden of proof.  *Id.*

6

# ARGUMENT

## I.    Christian Healthcare's claims are premature and thus not ripe for pre-enforcement review.

Christian Healthcare alleges that it "faces a credible threat and substantial risk that it will be investigated and prosecuted" under the ELCRA and what it terms Michigan's Equal Accommodations Act—Mich. Comp. Laws §§ 750.146-47. (ECF No. 1, Compl. ¶¶ 196, 197, PageID.29.)  It further alleges that that these laws pose threats to its religious mission in terms of employment decisions and in how it serves the public.  (*Id.*, ¶ 196, PageID.29.)  It brings claims under the First Amendment and the Due Process Clause.  (*Id.*, ¶¶ 377-453, PageID.58-70.)  But, because Christian Healthcare has not demonstrated a credible threat or substantial risk that it will be investigated and prosecuted under either law, its claims are not ripe for review.

### A.    In the pre-enforcement context, claims are not ripe where there is not a credible fear of enforcement and, even though ripeness is somewhat relaxed in the First Amendment context, allegations of a "chilling" effect are not a sufficient standalone basis to sustain claims of injury.

The ripeness doctrine, like the standing doctrine discussed below, originates from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies.  *Bigelow v. Mich. Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992).  The doctrine is "designed 'to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.'"  *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (citation omitted).  Questions of ripeness arise in those cases "'anchored in

7

future events that may not occur as anticipated, or at all.'" *Id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997)).  Indeed, "a claim does not become ripe at the first whiff of governmental insensitivity or whenever a government official takes an adverse legal position against someone, even if one potential response is to curtail protected activities." *Ky. Press Ass'n*, Inc., 454 F.3d at 540.

Generally, ripeness is evaluated according to three factors:

(1) the "likelihood that the harm alleged by [the] plaintiffs will ever come to pass," *United Steelworkers, Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988);

(2) "whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims," *Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995); and,

(3) the "hardship to the parties if judicial relief is denied at [this] stage" in the proceedings, *Cyclops Corp.*, 860 F.2d at 195.

And "[a]lthough the ripeness requirement is somewhat relaxed in the First Amendment context, there nonetheless must be a credible fear of enforcement." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 479 (2d Cir. 1999)).

Even in the First Amendment context, a chilling effect "has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Younger v. Harris*, 401 U.S. 37, 51 (1971); see also *Marchi*, 173 F.3d at 479 (holding that anti-abortion activists' as-applied challenge to Freedom of Access to Clinic Entrances Act was not ripe for review because they did not show that the alleged "pattern of activity" would ever come to pass).  Instead, courts "look at each case to determine

the consequences of staying . . . [its] hand." *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010).  In a First Amendment pre-enforcement challenge, the inquiry usually focuses on how imminent the threat of prosecution is and whether the plaintiff has sufficiently alleged an intention to refuse to comply with the statute.  *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citing *Nat'l Rifle Ass'n,* 132 F.3d at 285.)

Here, although Christian Healthcare requires its employees to "affirm its Statement of Faith and other religious documents" (ECF No. 1, Compl. ¶ 58, PageID.12), and has asserted that its healthcare providers "will not provide services that conflict with its religious beliefs," (*id*., ¶ 60, PageID.12), it has not demonstrated an imminent threat of investigation and prosecution.

Christian Healthcare does not meet any of the factors required to demonstrate ripeness.

### 1.    There is insufficient likelihood that the alleged harm will come to pass.

There is no indication that Christian Healthcare will be targeted for disfavored treatment or that its speech or association will be chilled.  At this juncture, the complaint contains only abstract allegations anchored in future events that might not occur at all—or might occur differently than Christian Healthcare anticipates.

The Department of Civil Rights is charged with receiving, initiating, conciliating, adjusting, disposing of, issuing charges, and holding hearings on complaints alleging a violation of the ELCRA.  Mich. Comp. Laws § 37.2602(c).  But

9

here, no complaint has been filed with the Department against Plaintiff. Nor does the instant complaint allege that anyone has threatened to file such a complaint. Additionally, despite the complaint's many paragraphs outlining the burdens of the Department's investigatory process, (ECF No. 1, Compl. ¶¶ 265-275, PageID.42-43), the Department has not sua sponte or responsively initiated or threatened to initiate an investigation of Christian Healthcare or any other religious ministry or provider based on or in the wake of the Michigan Supreme Court's recent decision in *Rouch World*, *LLC*, 2022 WL 3007805 at \*15 (holding that the language "because of sex" in the ELCRA includes discrimination on the basis of sexual orientation), or the Michigan Court of Claims' holding that "sex" includes gender identity. (*See* ECF No. 1, Compl., ¶ 180, 184, PageID.27.)

Likewise, despite her authority to criminally prosecute public accommodations violations under the Equal Accommodations Act, Mich. Comp. Laws § 750.147, Attorney General Nessel has not prosecuted or threatened prosecutions against Christian Healthcare or any other entity under that provision. Indeed, there is no case law demonstrating any previous Attorney General has filed an action to criminally enforce the Equal Accommodations Act; and Plaintiff has not set forth any information regarding a previously filed or pending criminal case pursued under this provision. Nor has Attorney General Nessel made public pronouncements—even during her oral argument to the Michigan Supreme Court on behalf of the Commission in *Rouch World*—about how an interpretation of "because of sex" under Michigan's ELCRA would interface with religious rights or

whether the ELCRA was amenable to any religious exemptions.[4]  Her personal statements that pronouns are important, (ECF No. 1, Compl. ¶ 336, PageID.52), and the department's internal employment policy, (*id.* ¶ 233, PageID.36), are a far cry from evidencing any imminent threat of prosecution.  So too is her support for a multi-state amicus filed in *Bostock v. Clayton County*, 2019 WL 2915040, which, although it expressed the position that discrimination "because of sex" likewise prohibits discrimination based on sexual orientation and gender identity (a position that was ultimately embraced by the U.S. Supreme Court)—did not discuss the issue of religious exemptions.  (ECF No. 1, Compl. ¶ 185, PageID.27.)

## 2.    The record is not sufficiently developed.

There are insufficient facts to allow for adjudication.  *See Marchi*, 173 F.3d at 478 (finding claim unripe when it "would be forced to guess at how [the defendant] might apply the . . . directive).  In the employment context, Christian Healthcare's request for relief forces this Court to speculate on things such as whether Christian Healthcare would be granted a bona fide occupational qualification (BFOQ) exemption under the ELCRA if it exercised its option to apply for one—which it has thus far not done.  *See* Mich. Comp. Laws § 37.2208.  The complaint acknowledges that "the Department may make individualized exemptions for employers who

---

[4] Plaintiff's reference to the Attorney General's participation in a Southern District of New York case is inapplicable as that case involved federal law, not state law, including an issue of whether the challenged law preempted state law.  And it contained no representation by the Attorney General regarding how the ELCRA interfaces with religious liberties.  See *New York, et al., v. U.S. Dept. of Health and Human Services,* U.S. District Court – New York Southern District, Case Nos. 1:19-cv-04676-PAE, 1:19-cv-05433-PAE, and 1:19-cv-05435-PAE.

make a 'sufficient showing' that religion…is a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise." (ECF No. 1, Compl., ¶ 215, PageID.33.)  Yet, tellingly, Christian Healthcare appears to justify why it has not attempted to avail itself of such an exemption on the thin basis that *other* BFOQ exemptions, such as in Title VII, have been interpreted narrowly and states that it is "not aware of any jurisdiction granting a BFOQ exemption based on religious beliefs about sexual orientation, marital status, or gender identity."  (*Id.*, ¶¶ 298, 299, PageID.47.)  Its prediction that it would not receive a BFOQ exemption based on religious beliefs is highly speculative.

Similarly, in the accommodations context, Christian Healthcare forces this Court to speculate on whether any of its members would even seek gender-affirming services or care or complain about the use of pronouns.  And it forces this Court to speculate as to how the Commission, if it *did* launch an investigation based on complaints or reports of discrimination "because of sex" would choose to address religious rights in relation to the ELCRA based on the Act's specific caution that it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1).  Again, the Commission has not put out an interpretive statement or otherwise opined on that issue.  Neither has Attorney General Nessel.

### 3.    Christian Healthcare has not shown sufficient hardship absent judicial review at this time.

At this time, there is no evidence that Christian Healthcare will suffer a hardship if judicial review is denied.  Given that no action has been taken against it, no investigation launched or threatened, no complaint filed against it with the Department, and there is no indication that the Attorney General is poised to proactively criminally prosecute it, Plaintiff's alleged hardships are too speculative to support judicial review.

Contrary to the complaint, Michigan law has not been definitively interpreted to prohibit the kinds of activities Christian Healthcare alleges to be at risk.  In the employment arena, for example, Christian Healthcare cites no Michigan cases interpreting Michigan law as prohibiting a religious employer who meets the BFOQ criteria from asking prospective employees about whether they can follow and effectively communicate certain beliefs, seeking, recruiting, and hiring employees who agree with certain religious beliefs, or posting employment opportunities that indicate a desire to hire employees who share certain beliefs. (ECF No. 1, Compl. ¶ 205, PageID.30; ¶ 209, PageID.31-32.)  And in the accommodations arena, Christian Healthcare cites to no Michigan cases interpreting the ELCRA or Equal Accommodations Act as requiring all healthcare providers to provide gender-affirming care if they would provide similar treatments for other purposes.  (*Id.*, ¶238, PageID.37 fn 7, relying only on other jurisdictions). The absence of state precedent addressing religious exemptions under the ELCRA

post-*Rouch World* further lessens the possibility of an *impending* investigation and prosecution and underscores that this lawsuit is premature.

      Christian Healthcare can continue to engage in its mission of delivering faith-based healthcare without losing its opportunity to file a future lawsuit if specific action is taken against it.  In the meantime, it can await a future case where Michigan courts grapple with the question the Michigan Supreme Court left unanswered in *Rouch World* (due to the plaintiff's failure to preserve the issue of religious rights for appellate review).  And if it is unsure of how the Commission would apply the Michigan Supreme Court's interpretation of "because of sex," it can request an interpretive statement.[5]  Finally, nothing is preventing Christian Healthcare from filing an application for a BFOQ exemption under Mich. Comp. Laws § 37.2208, other than its mere prediction that the process would be unsuccessful. (*Id.*, ¶¶ 298, 299, PagID.47.)

## II.    Christian Healthcare cannot establish standing based on conjectural or hypothetical allegations of harm.

      Christian Healthcare alleges that provisions in the ELCRA, Mich. Comp. Laws § 37.2301 *et seq.*, and Michigan's Equal Accommodations Act, Mich. Comp. Laws § 750.146 *et seq.*, violate its First Amendment rights, both facially and as applied, by chilling or compelling its speech, and by violating its freedom of

---

[5] Defendants recognize that the jurisdiction of the Department of Civil Rights and the circuit court is concurrent, and that "an individual may proceed simultaneously in both forums when asserting an employer's violation of the act." *Walters v. Dep't of Treasury*, 385 N.W.2d 695, 698 (1986) (internal citations omitted).  But that contemplates a ripe claim—an assertion of a violation of the ELCRA—and does not convert unripe claims into ripe ones.

expressive association, press, assembly, free exercise of religion, and the Establishment Clause.  Christian Healthcare also alleges violations of its Fourteenth Amendment Due Process rights.  And it alleges these violations could result in harm to be incurred in the future and seeks declaratory and injunctive relief.

Before reaching the merits of these claims, Christian Healthcare must first demonstrate Article III standing.  But Christian Healthcare lacks standing to bring its First and Fourteenth Amendment claims because these claims are not certainly impending and are unsubstantiated.

### A.    Standing requires concrete harm that is actual or imminent – not a mere subjective allegation of chill or a generalized grievance against government conduct.

This Court has an independent duty to make sure that the plaintiff has standing to bring an action before addressing the merits of the case.  *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001) ("Standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction.") (citations omitted).  "If a party does not have standing to bring an action, then this Court has no authority to hear the matter and must dismiss the case." *Binno v. Am. Bar Ass'n.*, 826 F.3d 338, 344 (6th Cir. 2016) (internal citation omitted).

Article III gives federal courts the authority to resolve cases and controversies.  U.S. Const., Art. III, § 2.  The party bringing the case or controversy must establish standing to sue.  *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 408 (2013); *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015).

15

"The burden of establishing standing is on the party seeking federal court action."

*Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citing

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

> To establish Article III, constitutional standing, a plaintiff must show:
>
> (1)  it has suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical;
>
> (2)  the injury is fairly traceable to the challenged action of the defendant; and,
>
> (3)  it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (quoting *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th

Cir. 2004)).  "Although 'imminence' is concededly a somewhat elastic concept, it

cannot be stretched beyond its purpose, which is to ensure that the alleged injury is

not too speculative for Article III purposes — that the injury is 'certainly

impending'." *Lujan,* 504 U.S. at 564, n.2.  The elements of Article III standing are

not simply pleading requirements.  *Id.* at 561.  "[E]ach element must be supported

in the same way as any other matter on which the plaintiff bears the burden of

proof, i.e., with the manner and degree of evidence required at the successive stages

of the litigation." *Id.*

It is well-established that, in establishing an injury in fact, "[a] generalized

grievance against governmental conduct is insufficient to confer standing upon a

party." *Id.* (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)).  For this reason,

plaintiffs bringing First Amendment claims "must present more than 'allegations of

a subjective chill.'" *Bigelow v. Virginia,* 421 U.S. 809, 816-17 (1975) (quoting *Laird*

*v. Tatum*, 408 U.S. 1, 13–14 (1972)).  *See United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1378; 238 U.S. App. D.C. 229 (D.C. Cir., 1984) ("All of the Supreme Court cases employing the concept of 'chilling effect' involve situations in which the plaintiff has unquestionably suffered some concrete harm (past or immediately threatened) apart from the 'chill' itself.").  "Allegations of a subjective 'chill' are not an adequate substitute for a claim of a specific present objective harm or a threat of specific future harm[.]" *Laird*, 408 U.S. at 13–14.

Standing requires "a 'claim of specific present objective harm or a threat of specific future harm'."  *Id.*; *see also Plunderbund Media LLC v. DeWindek*, 312 F. Supp. 3d 654, 662 (E.D. Mich., 2018).  And "[t]o satisfy the injury in fact requirement on an allegation of chilled speech, the repercussions responsible for the chilling effect must be imminent."  *Plunderbund Media*, 312 F. Supp. 3d at 662; *Parsons*, 801 F.3d at 710 (noting that "imminent" means "'certainly impending,' in contradistinction to 'allegations of possible future injury'") (quoting *Clapper v. Amnesty Int'l.*, 568 U.S. 398, 409 (2013)).  Further, the "chill" on First Amendment expression normally stands as the "*reason* why the governmental imposition is invalid rather than as the harm which entitles [a party] to challenge it." *Adult Video Ass'n*, 71 F.3d at 566 (citing *United Presbyterian Church in the U.S.A.,* 738 F.2d at 1378).

Caselaw is instructive in understanding that where a subjective allegation of chill is alleged, "something more" is needed, such as the issuance of a temporary restraining order, *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 482–

17

83 (6th Cir. 2002), an eight-month investigation into the activities and beliefs of the plaintiffs by government officials, *White v. Lee*, 227 F.3d 1214, 1226, 1228 (9th Cir. 2000)*,* or "numerous alleged seizures of membership lists and other property" belonging to plaintiffs, *Nat'l Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1530 (10th Cir. 1994).

In *Morrison v. Board of Educ. of Boyd County*, the Sixth Circuit held that subjective chill alone is insufficient to establish standing.  521 F.3d 602, 608 (6th Cir. 2009).  Morrison was a high school student and Christian who believed that his religion required him to tell gay students that their sexual orientation was a sin. *Id*. at 605.  His high school had a written policy prohibiting students from making potentially harassing and derogatory statements to students based on sexual orientation.  Morrison alleged that the written policy chilled his speech because he feared of being punished.  *Id*.  After the filing of the lawsuit, the school board modified its policy to permit anti-gay speech unless it was "sufficiently severe or pervasive that it adversely affects a student's education or creates a climate of hostility or intimidation for that student, both from the perspective of an objective educator and from the perspective of the student at whom the harassment is directed."  *Id*. at 607.  The Court held that Morrison did not have standing.  *Id*. at 608.  The Court reasoned that "the record [was] silent as to whether the school district threated to punish or would have punished Morrison for protected speech in violation of its policy."  *Id*.  The Court declined to find standing where Morrison's

claim was based solely on apprehension without any specific action by the school board that supported that punishment would result.

Likewise in *Laird v. Tatum*, the Court found that a plaintiff's knowledge of government surveillance and the fear that the government might take some future action using that information, by itself, does not create an actual or imminent injury-in-fact for standing purposes.  408 U.S. at 13-14; *United Presbyterian Church*, 738 F.2d at 1379-80.  The Court concluded that the harm alleged resulted from the plaintiffs' confluence of subjective perceptions, beliefs, and apprehensions that the government might, at some *future date*, misuse the information gained in a way that would cause direct harm.  *Id.* at 13.  Without more, such as an "exercise of governmental power [that] [is] regulatory, proscriptive, or compulsory in nature," this was insufficient to establish standing.  *Id.* at 13-14.

## B.    Defendants have not taken — and will not imminently take — action that will harm Plaintiff.

In this case, there are two aspects of the standing doctrine in dispute: (1) Plaintiff has not suffered an injury in fact as required by Article III and (2) Plaintiff cannot allege an injury that is fairly traceable to the Defendants' actions.

Plaintiff seeks pre-enforcement relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 28 U.S.C. § 2202.  (ECF No. 1, Compl. ¶ 3, PageID.4.)  A declaratory judgment action brought prior to the completion of an injury in fact is proper if the plaintiff can "demonstrate actual present harm or a significant possibility of future harm . . .." *Peoples Rights Org. v. City of Columbus*, 152 F3d

522, 527 (6th Cir. 1998) (citing *National Rifle Ass'n*, 132 F.3d at 279).  In other words, an individual need not "await the consummation of threatened injury to obtain preventive relief."  *Peoples Rights Organization*, 152 F.3d at 527.  The injury must only be "certainly impending."  *Id.* (citing *Babbitt v. United Farm Workers Union*, 442 U.S. 289, 298 (1979)).

Here Christian Healthcare alleges that "Michigan's Employment, Notice, Accommodation, and Publication Clauses" in ELCRA and the "Publication Clause[]" in Michigan's Equal Accommodations Act "chill" it from exercising its constitutional rights.  (ECF No. 1, Compl. ¶¶ 372-73, PageID.57.)  Plaintiff asserts that those provisions (1) deter it from engaging in religious exercise in violation of the First Amendment, (2) deter its right to freedom of speech, expressive association, press and assembly in violation of the First Amendment, and that (3) the "Publication Clauses" in both statutes violate the Fourteenth Amendment's Due Process Clause because they are "vague."  (*Id.*, ¶¶ 378, 402-03, 413, 416, 422, 424-26, 436-40, 452, PageID.58, 61-62, 63-66, 67-68, 70.)  But Plaintiff cannot establish an injury-in-fact for any of its claims.  Nor can Plaintiff establish that any alleged injury is traceable to the actions of Defendants.

### 1. Plaintiff has not suffered an injury that is concrete, actual, and imminent.

Where a plaintiff seeks prospective relief, such as declaratory relief or an injunction, the Supreme Court has strictly construed the nature of the injury-in-fact — looking for the plaintiff to articulate a concrete harm that would not occur but for the defendant's action.  In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157

(2014), the Supreme Court held that the injury must be "concrete and particularized," "actual and imminent," and not "conjectural or hypothetical." Then, in *Miller v. City of Wickliffe*, 852 F.3d 497, 505–07 (6th Cir. 2017), the Sixth Circuit affirmed the district court's ruling that plaintiffs lacked standing to bring a pre-enforcement facial challenge to an ordinance because the threat of enforcement of the law was not sufficiently imminent.

The standing question comes down to whether Plaintiff can show a credible threat of investigation or prosecution. As with the case in *Wickliffe*, the threat of enforcement of Michigan's civil rights laws are not "sufficiently imminent" against Plaintiff. Plaintiff has not been investigated, charged, or prosecuted with violating Michigan's civil rights law. And there is nothing alleged in the complaint to indicate that Plaintiff is likely to be investigated or prosecuted by the Defendants under either Act anytime in the foreseeable future. Further supporting the unlikeness of Plaintiff sustaining an injury in fact, Plaintiff does not allege a history of past enforcement of these Acts against it. Plaintiff has not received any enforcement warning actions from the Defendants; and Plaintiff has *never* been requested to respond to any complaint, naming it as a respondent or a defendant.

Similar to *Laird*, Plaintiff's allegations are based on fears that are not grounded in actual reality. To date, there have been no complaints lodged against it. And, even if a complaint is filed with the Department, that does not guarantee the Department will authorize the complaint, let alone conduct a full-blown investigation. *See* Mich. Admin. Code, Rule 37.6.

21

Here, Plaintiff cannot establish an injury-in-fact.  And, following the rationale in *Laird*, Plaintiff's reliance on the *Rouch World* case to establish foreseeable harm is misplaced – and speculative.  *Rouch World* has been remanded to the Michigan Court of Claims.  *Rouch World,* 2022 WL 3007805 at *15.  Simply put, this case is not fit for adjudication.  As of the filing of this complaint, Plaintiff cannot even show a threatened, much less an actual, investigation or enforcement against it by any of the Defendants under the ELCRA or Michigan's criminal public accommodations law.  Notably, Plaintiff does not plead that it has been asked to provide medical services or engage in business practices in conflict with its religious beliefs despite it "serv[ing] and continu[ing] to serve members who [are] transgender." (ECF No. Compl., ¶ 40, PageID.9.)

In addition, both Michigan's civil rights public accommodations laws allow for a respondent or a defendant to show that it did not discriminate, or that it provided an alternative that constituted "full and equal" access, meaning a respondent or defendant may prevail under Michigan's civil rights laws.  *See* Mich. Comp. Laws § 37.2302(a); Mich. Comp. Laws § 750.146.  These provisions do not appear to require "an immediate and significant change in the plaintiff's conduct" of its affairs if it is to avoid liability for noncompliance.  This is a situation involving "'the mere existence of a statute . . . which may or may not ever be applied to plaintiffs . . . .'"  *National Rifle Ass'n of America*, 132 F.3d at 293 (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983)).

Further, as noted above, Plaintiff had the option of applying for a BFOQ under the ELCRA.  (ECF No. 1, Compl. ¶ 292, PageID.46.)  The ELCRA allows an employer to seek an exemption "on the basis that religion . . . is a bona fide occupational qualification reasonably necessary to the normal operation of the business or enterprise."  Mich. Comp. Laws § 37.2208.  Further,

> an employer may have a bona fide occupation qualification on the basis of religion . . . *without* obtaining a prior exemption from the commission, provided that an employer who does not obtain an exemption shall have the burden of establishing that the qualification is reasonably necessary to the normal operation of the business."

(*Id*.) (Emphasis added.)  Yet, Plaintiff has chosen not to apply for exemption.

Michigan caselaw is instructive on how this Court should dispose of this matter.  In *McLeod v. Providence Christian School*, the defendant sought to have provisions of the ELCRA struck down as unconstitutional under the First Amendment's Free Exercise Clause, as it applied to the defendant. 408 N.W.2d 146 (Mich. Ct. App. 1987).  The court held that the defendant should first avail itself of the safeguards in the ELCRA—the BFOQ—before attempting to have its provisions declared unconstitutional.  (*Id*. at 151–52.)

As in *McLeod*, redress is clearly available under the ELCRA to satisfy Plaintiff's concerns about its hiring practices.  But, because Plaintiff has chosen not to do so, all that it can assert, like in *Wickliffe*, 852 F.3d at 507, is that Defendants "*might* have taken some action against them." (*Id*.) (emphasis added).  And, as the Sixth Circuit in *Wickliffe* wrote, "[t]his is the exact sort of hypothetical and speculative dispute that Article III proscribes from federal court dockets." (*Id*.)

### 2.    Plaintiff cannot demonstrate an injury in fact that is fairly traceable to any action of Defendants.

In order to have standing to bring suit, an individual must demonstrate that he or she "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct . . .." *Kardules v. City of Columbus*, 95 F.3d 1335, 1347 (6th Cir. 1996) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983)).  The injury must "affect the Plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Plaintiff's 73-page complaint has many allegations against the Defendants—all of them speculative.  Despite Plaintiff alleging different types of investigations conducted by the Department from 2011 through 2021, at the time of the filing of its complaint — and to date — no action had been taken, or threatened, against the Plaintiff.  Yet, Plaintiff has been operating in Michigan since 2015. (ECF No. 1, Compl. ¶¶ 16, 318, PageID.6, 50.)  Further, the Department has not initiated any sua sponte investigation of a religious entity on the basis of sexual orientation or gender identity discrimination since the issuance of the 2018 Interpretative Statement.  Plaintiff, thus, has failed to allege a sufficient nexus between an injury and the government action it attacks to justify asking this Court for judicial intervention.

As to the Attorney General, Plaintiff claims a June 2021 internal departmental transgender policy somehow "chills" its First Amendment rights and evidences that it will be subjected to prosecution under Michigan's Equal Accommodations Act, Mich. Comp. Laws § 750.146, *et seq*.  (*Id*., ¶ 233, PageID.36.)

Such a contention belies the requirements for criminal jurisprudence.  Also, the internal policy does not demonstrate that Plaintiff has been harmed or faces imminent harm because of its religious beliefs based on any action taken by the Attorney General.  *See Plunderbund Media*, 312 F. Supp. 3d at 663.  For example, Plaintiff cannot show that it is being targeted for its religious viewpoint by the Attorney General or that the Attorney General, acting in concert with the Commission and the Department, or *vice versa*, is investigating its medical, or employment and business practices as a result of the 2021 Department of Attorney General internal policy.  And, contrary to the intimation in Plaintiff's complaint, Executive Director Johnson and the Commission do not have criminal enforcement or prosecutorial authority under state law.  (ECF No. 1, Compl., ¶¶ 11, 301, PageID.5, 47-48.)

Moreover, neither the Attorney General nor the other Defendants have criticized or interfered with Plaintiff's internal or external publications and postings because of its religious beliefs or for any other reason.  Defendants have not civilly or criminally initiated a legal challenge to Plaintiff's Religious Provider Disclosure, Philosophy of Wellness and Healthcare, Statement of Faith, Statement of Values, Affirmation on Marriage and Human Sexuality, or the Code of Conduct.  Nor have Defendants interfered with Plaintiff's fundraising efforts and donations that have amounted to "one million dollars in cash donations and more than one-and-a-half million dollars in noncash donations."  (*Id.*, ¶ 50, PageID.11.)  Plaintiff is not, and has never been, prohibited from engaging in any speech, expressive association, or

*any* lawful conduct by Attorney General Nessel, Commission members or Executive Director Johnson because of its religious beliefs.  A plaintiff's "choice to chill his own speech based on his perception that he would be disciplined for speaking" does not constitute a sufficient injury in fact.  *Laird*, 408 U.S. at 13.  Since 2015, Plaintiff has been unobstructed to operate its business and provide medical services as it sees fit.

Defendants' actions or lack thereof do not demonstrate that they have "chilled" Plaintiff's speech or its expressive associations.  As with the plaintiffs in *Laird*, Plaintiff relies only on its own subjective apprehensions, perceptions, and beliefs that it will be specially targeted for investigation and possible enforcement. 408 U.S. at 11 (holding that a chilling effect cannot "arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual"); *see also Morrison*, 521 F.3d at 608-09 (holding that the plaintiff's own subjective apprehension and self-imposed unwillingness to communicate did not constitute an injury in fact).  But, like the plaintiff in *Laird*, Plaintiff must demonstrate that its fears are objectively reasonable.  It cannot do so.

The decision in *Glenn v. Holder* is also instructive on this point.  690 F.3d 417, 423 (6th Cir. 2012).  There, the plaintiffs appealed the district court's determination that they did not have standing to challenge the constitutionality of

the Matthew Shepard and James Byrd, Jr., Hate Crimes Prevention Act.  *Id*. at 418.
The plaintiffs argued "that the expression and practice of their anti-homosexual
religious beliefs [would] lead to federal investigation and prosecution under the Act,
in violation of their First Amendment rights."  *Id*.  In addition to finding that the
plaintiffs' "fear [of] wrongful prosecution and conviction" was "misplaced" and
"inadequate to generate a case or controversy," the Court also noted that the
plaintiffs' "lawsuit [was] really a political statement against the Hate Crimes Act."
*Id*. at 418, 422.  The same is true here.

There is no First Amendment violation "in the absence of some actual or
threatened imposition of governmental power or sanction."  *Penthouse
International, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991).  Given that **no**
investigation or prosecution under any of the challenged provisions of Michigan's
civil rights Acts has been executed against Plaintiff, and there has not been a threat
of such actions, there is nothing for this Court to review to determine if Plaintiff will
suffer a harm in some still unknown circumstance in this case; thus, there is no
injury-in-fact traceable to any action of the Defendants.  Accordingly, Plaintiff's
complaint should be dismissed for lack of standing.

## III.    This Court should abstain from deciding Plaintiff's Due Process Clause challenge.

Plaintiff claims that certain ELCRA provisions are unconstitutionally vague
in violation of the Due Process Clause.  (ECF 1, Compl., PageID.69-70.)  This Court
should abstain from adjudicating that claim based on *Burford v. Sun Oil Corp*, 315
U.S. 315 (1943).

The U.S. Supreme Court has explained that *Burford* abstention is appropriate where timely and adequate state-court review is available and (1) a case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or (2) the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *New Orleans Public Service, Inc. (NOPSI) v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) (citation omitted).  Under *Burford*, federal courts dismiss the action in favor of state administrative and judicial review of the issues, with "ultimate review of the federal questions . . . fully preserved" in the Supreme Court.  *Id.* at 333-34.

The Sixth Circuit has enunciated two factors that justify abstention under *Burford*:  the presence of a complex state regulatory scheme that would be disrupted by federal review, or the existence of a state-created forum with specialized competence in the particular area.  *Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc.*, 720 F.2d 897, 903 (6th Cir. 1983).  Here, the second exception applies.

This Court should abstain from adjudicating the Due Process claim, in deference to the Civil Rights Commission and the Department of Civil Rights, which have special competence and experience in the area of civil rights—especially here, where the Commission has yet to determine, through the results of investigation or an interpretive statement, how Michigan's civil rights laws

interface with constitutional rights involving religion.  If this Court declares portions of the ELCRA to be facially vague, they would be void ab initio and unenforceable prospectively.  That should not be done without the Commission and Department first weighing in on whether Michigan law conditions certain actions on the requirement that individuals abandon their religious beliefs, particularly since the standard for finding a statute vague is very high—the challenge can be upheld only if the enactment is impermissibly vague in *all* of its applications.  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 495 (1982).  It would be prudent for this Court to abstain here, where Plaintiff has not sought a BFOQ exception to the ELCRA and where the Commission and Department have yet to determine the effect of *Rouch World* on religious liberties.

## IV.    This Court should decline to issue declaratory relief.

Plaintiff seeks declaratory relief for the alleged constitutional violations it asserts.  But a review of the factors considered in assessing whether such relief is appropriate demonstrates that Plaintiff's request should be denied.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy[,]" a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  It is well established the authority to grant such relief "rests in the 'sound discretion' of the court" and, thus, a court may refuse to hear such a claim.  *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984).  Accordingly, courts are not "required to decide legal issues and give advisory relief unnecessarily."  *Id.* at 326.

Five factors should be considered in determining whether a court should render declaratory relief:

    (1) whether the declaratory action would settle the controversy;

    (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

    (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

    (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and,

    (5) whether there is an alternative remedy which is better or more effective.

*Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012).  At least three of these factors weigh heavily against Plaintiff's requested declaratory relief.  *Muhammad v. Paruk*, 553 F. Supp 2d 893 (E.D. Mich. 2008) (dismissing an action after weighing these factors).

First and foremost, there is no "actual controversy" under Article III warranting relief under the Declaratory Judgment Act, 28 U. S. C. § 2201.  At this juncture, neither the Attorney General, the Department, nor the Commission have taken any adverse action against Plaintiff under the ELCRA or Michigan's Equal Accommodations Act.  Instead, Plaintiff relies on threats of investigation or prosecution that can best be characterized as "legal conclusions masquerading as factual allegations."  *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).  This Court cannot "settle the controversy" when no controversy exists at this stage, as discussed above.

Second, declaratory relief would not serve a useful purpose in this case or "clarify[] the legal relations in issue." Plaintiff's complaint does not allege any confusion related to the legal relationships of the parties involved in this matter, only that they are concerned with Defendants' enforcement of the state statutes at issue. There has been a long-standing religious exemption in the ELCRA as it applies to employment, and there has been no formal policy issued by any of the Defendants regarding how any religious exemption will apply to public accommodations related to sexual orientation and gender identity discrimination. As noted above, this issue is still under consideration in *Rouch World*, which was remanded for further proceedings.

Third, given that the *Rouch World* decision was just issued in July 2022 and the Commission has yet to issue a formal policy following the decision, the better and more effective remedy to this premature lawsuit would be to wait for the Commission to address this matter pursuant to the remand entered by the Michigan Supreme Court in *Rouch World*. Only then can Plaintiff determine whether its subjective apprehensions have ripened into actual, concrete constitutional injuries.

## V.    This Court should decline to issue permanent injunctive relief.

Plaintiff also requests permanent injunctive relief. (ECF 1, Compl., Prayer for Relief, PageID.70.) This requires a plaintiff to show: (1) a continuing irreparable injury if the court fails to issue the injunction, and (2) the lack of an adequate remedy at law. *Warren v. City of Athen*, 411 F.3d 697, 711 (6th Cir. 2005). Both elements must be met to justify issuance of the injunction, and Plaintiff can show

neither.  The equitable remedy of a permanent injunction is unavailable where there is no showing of any real or immediate threat that plaintiff will be wronged, *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983), and, as set forth above, Plaintiff has made no such showing.

Here, Plaintiff has only conjectured that it will be wronged, with no demonstration of a real, imminent likelihood of future injury.  Thus, its request for permanent injunctive relief is premature and should be denied for the reasons set forth above and in Defendants' response in opposition to Plaintiff's motion for a preliminary injunction, which was filed contemporaneously with the instant motion to dismiss.  (ECF No. 18, Defs Resp in Opp to Mtn, PageID.14-40.)[6]

But regardless, even if the necessary elements were met, to the extent declaratory judgment might be entered in this case, a permanent injunction against these state officials would not be necessary.  *See Steffel v. Thompson*, 415 U.S. 452, 467 (1974) ("The Federal Declaratory Judgment Act was intended to provide an alternative to injunctions against state officials, except where there was a federal policy against federal adjudication of the class of litigation altogether . . . .").  A declaration of unconstitutionality would put state officials on notice that the challenged statute is unconstitutional, and its future enforcement could result in personal liability and the payment of damages.

---

[6] Pursuant to Fed. R. Civ. Proc. 10(c), Defendants adopt and incorporate by reference their arguments in their response to the motion for preliminary injunction.

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above and in the Defendants' motion to dismiss, Defendants Michigan Attorney General Dana Nessel, John E. Johnson, the Executive Director of the Michigan Department of Civil Rights, and Michigan Civil Rights Commission members Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau, and David Worthams, respectfully ask this Court to dismiss all claims against them under Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

*/s/ Tonya C. Jeter*
Tonya C. Jeter
Kimberly K. Pendrick (P55352)
Bryan W. Beach (P69681)
Assistant Attorneys General
Attorneys for Defendants
Civil Rights and Elections Division
3030 W. Grand Blvd., 10th Floor
313.456.0067
jetert@michigan.gov
P55352

Dated:  November 18, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2022, I electronically filed the foregoing document(s) with the Clerk of the Court using the ECF System, which will provide electronic notice to the parties.

*/s/ Tonya C. Jeter*
Tonya C. Jeter (P55352)
Assistant Attorney General