UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN HEALTHCARE CENTERS,
INC.,

       Plaintiff,

v

DANA NESSEL, in her official
capacity Attorney General of Michigan, JOHN
E. JOHNSON, JR., in his official capacity as
Executive Director of the Michigan
Department of Civil Rights, PORTIA L.
ROBERSON, ZENNA FARAJ ELHASON,
GLORIA E. LARA, REGINA GASCO-
BENTLEY, ANUPAMA KOSARAJU,
RICHARD CORRIVEAU, and DAVID
WORTHAMS, in their official capacities as
members of the Michigan Civil Rights
Commission,

       Defendants.

_____/

Case No. 1:22-cv-00787

HON. JANE M. BECKERING

MAG. PHILLIP J. GREEN

**REPLY BRIEF IN SUPPORT
OF MOTION TO DISMISS**

Jonathan A. Scruggs
Arizona Bar No. 030505
Ryan J. Tucker
Arizona Bar No. 034382
Henry W. Frampton, IV
South Carolina Bar No. 75314
Bryan D. Neihart
Arizona Bar No. 035937
Attorneys for Plaintiff
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, Arizona 85260
480.444.0020
jscruggs@ADFlegal.org
rtucker@ADFlegal.org
hframpton@ADFlegal.org
bneihart@ADFlegal.org

Tonya C. Jeter
Kimberly K. Pendrick
Attorneys for Defendants
3030 W. Grand Blvd., 10th Floor
Detroit, MI  48202
313.456.0067
jetert@michigan.gov
P55352
pendrickp@michigan.gov
P60348

John J. Bursch
Attorney for Plaintiff
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
202.393.8690
jbursh@ADFlegal.org
P57679

_____/


**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**


Tonya C. Jeter
Kimberly K. Pendrick
Assistant Attorneys General
Attorneys for Defendants
Civil Rights and Election Division
3030 W. Grand Blvd., 10th Floor
Detroit, Michigan 48202
313.456.0067
jetert@michigan.gov
P55352
pendrickk@michigan.gov
P60348

Dated:  January 13, 2023

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents............................................................................................i

Index of Authorities.......................................................................................ii

Argument .......................................................................................................1

I.     Plaintiff does not have standing to sue, nor are its claims ripe.......................2

     A.    The Elliott-Larsen Civil Rights Act and Equal Accommodations Act do not expressly proscribe religious organizations from engaging in activity that constitutes a constitutionally protected religious freedom. ..................................................................................2

     B.    Plaintiff has not shown a credible threat of enforcement......................5

     C.    Plaintiff is not entitled to a presumption of a credible risk of enforcement. ..........................................................................................12

     D.    A bona fide occupational qualification is available under the ELCRA. ............................................................................................14

II.    Abstention is appropriate for the majority of Plaintiff's claims....................15

III.   Plaintiff is not entitled to jurisdictional discovery .........................................15

Conclusion and Relief Requested ...............................................................17

Certificate of Service....................................................................................18

i

# INDEX OF AUTHORITIES

Page

**Cases**

*303 Creative, LLC,* No. 21-476 (U.S. Aug. 19, 2022) ..................................... 7

*Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233 (Mich. Ct. App. 1988)..... 4, 5, 13

*Auto-Owners Ins. Co. of Am. v. Hallmark Mktg. Co., LLC*, No. 1:11-cv-1157, 2016 U.S. Dist. LEXIS 194821, 2016 WL 105148226 (W.D. Mich. Dec. 9, 2016) ................................................................................................ 16

*Babbitt v. U.F.W. Nat'l. Union*, 442 U.S. 289 (1979) ................................... 6

*Beech Grove Investment Co. v. Civil Rights Comm'n*, 157 N.W.2d 213 (Mich. 1968) ....................................................................................................... 6

*Buck v. Gordon*, 429 F. Supp. 3d 447 (W.D. Mich. 2019) ............................. 11

*Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229 (6th Cir. 1981)................... 17

*Doe v. Bolton,* 410 U.S. 179 (1973) ........................................................... 13

*Doe v. Yost,* ___F. Supp. 3d___; 2021 U.S. Dist. LEXIS 60649 (S.D. Ohio, Mar. 30, 2021) ............................................................................................... 9

*Doster v. Kendall,* __ F. App'x. __; 2022 U.S. App. LEXIS 32847 (6th Cir., Nov. 29, 2022) ........................................................................................... 3

*Dream Def. v. DeSantis,* 553 F. Supp. 3d 1052 (N.D. Fla. 2021) ................. 11

*Emilee Carpenter, LLC v. James,* 575 F. Supp. 3d 353 (W.D.N.Y. 2021)................. 11

*Fireman's Fund Ins. Co. v. Quackenbush*, ___F.3d___; 1996 U.S. App. LEXIS 19493 (CA 9, June 18, 1996) .................................................................. 15

*Gilbert v. Ferry*, 401 F.3d 411 (6th Cir.) .................................................. 17

*Glenn v. Holder*, 738 F. Supp. 2d 718 (E.D. Mich. 2010) ...................... 11, 12

*Green Party of Tenn v. Hargett*, 791 F.3d 684 (6th Cir. 2015) ..................... 7

*Kentucky v. Yellen,* 54 F.4th 325 (6th Cir., 2022)........................................ 3

*Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505 (6th Cir. 2006) .......................... 17

*McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016) .................................. 6, 9

ii

*McLeod v. Providence Christian Sch.*, 408 N.W.2d 146 (Mich. Ct. App. 1987) ........... 4

*Moon v. Mich. Reprod. & IVF Ctr., P.C.*, 810 N.W.2d 919 (Mich. Ct. App. 2011) .......................................................................................................... 6

*Online Merchs. Guild v. Cameron,* 995 F.3d 540 (6th Cir. 2021) ............................ 11

*Porth v. Roman Catholic Diocese*, 532 N.W.2d 195 (1995) .................................... 4, 13

*Rouch World*, ___ N.W.2d ___ (Mich. 2022); 2022 WL 3007805 at * 4-6 ................... 8

*Steffel v. Thompson*, 415 U.S. 452 (1974) ..................................................... 7

*Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 2007 WL 107953 (6th Cir. 2007) ......................................................................................................... 16

*Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383 (1988) ................................... 13

*Weishuhn v. Catholic Diocese*, 756 N.W.2d 483 (Mich. Ct. App. 2008) ................ 4, 13

*Whole Woman's Health v. Jackson,* 142 S. Ct. 552 (2021) ........................................ 13

**Statutes**

Mich. Comp. Laws § 37.2208 ................................................................................... 2, 14

Mich. Comp. Laws § 37.2302 ................................................................................... 2, 15

Mich. Comp. Laws § 37.2705(1) ................................................................................. 2

Mich. Comp. Laws § 750.146 ..................................................................................... 2

**ARGUMENT**

Plaintiff's response to Defendant's motion to dismiss focuses mainly on standing, arguing it has shown a credible threat of enforcement sufficient to pursue a pre-enforcement challenge.  Plaintiff offers a "sky is falling" argument by claiming that if the court does not find in its favor on standing, officials could "defeat any pre-enforcement effort to protect any constitutional or statutory right. . . ." (ECF No. 22, PageID.610.)  But caselaw prevents this disastrous prediction by allowing pre-enforcement actions *where there is a credible threat of enforcement*.  Plaintiff has not shown a credible threat of enforcement, just speculation.  Plaintiff relies on cases where pre-enforcement standing was granted and oversimplifies the analysis. Defendants can similarly provide a litany of cases where pre-enforcement standing was denied.  While Plaintiff argues Defendants' position would result in a pre-enforcement case being impossible, Plaintiff's oversimplification would make pre-enforcement ripeness and standing inevitable.  Based on the statutes at issue providing for compliance with existing laws and the lack of any threat of enforcement, the motion to dismiss should be granted.

**I.**     **Plaintiff does not have standing to sue, nor are its claims ripe.**

    **A.**     **The Elliott-Larsen Civil Rights Act and Equal Accommodations Act do not expressly proscribe religious organizations from engaging in activity that constitutes a constitutionally protected religious freedom.**

To be clear, Plaintiff's statement that Defendants are taking a position that Michigan has not yet evaluated whether a religious exemption will be included in its law is incorrect.[1]  Facially, the Elliott-Larsen Civil Rights Act (ELCRA) and Equal Accommodations Act (collectively referred to as the "Michigan statutes") do not infringe on a qualified religious organization's ability to exercise its religious rights.  The ELCRA prohibits discrimination by a place of public accommodation "[e]xcept where permitted by law."  Mich. Comp. Laws § 37.2302.  The construction provision of the ELCRA also specifically provides that it "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act."  Mich. Comp. Laws § 37.2705(1).  Too, the ELCRA also contains a bona fide occupational qualification (BFOQ) for religious exemptions related to employment where "reasonably necessary to the normal operation of the business or enterprise."  Mich. Comp. Laws § 37.2208.  Similarly, the Equal Accommodations Act provides that the nondiscrimination provision for public accommodations is subject to "the conditions and limitations established by law[.]"  Mich. Comp. Laws § 750.146.  As a result, while Michigan undertakes all appropriate efforts to ensure that its citizens are not subjected to discrimination, its

---

[1] Of note, when Defendants raise procedural arguments supporting dismissal, it is not conceding the facts Plaintiff alleges.

laws recognize that there may be existing limitations or exceptions to these provisions.

Given that Michigan's anti-discrimination laws provide that they will be interpreted in accordance with other applicable laws, Plaintiff's allegation of a credible threat is wholly dependent upon speculation as to how the statutory language will be applied, or if it will ever be applied against them; and frankly presumes without any evidence that the Defendants will not appropriately consider any religious exemption laws.  Plaintiff's concerns regarding how "similar prosecutions [are] happening all across the country," do not establish that Michigan's statutes are violative of the federal constitution.  Further, while the court in *Doster v. Kendall,* __ F. App'x. __; 2022 U.S. App. LEXIS 32847, at *30-31, 33 (6th Cir., Nov. 29, 2022), found that possible exemptions did not eliminate standing where service members refused to get a COVID-19 vaccination, the plaintiffs there demonstrated that the U.S. Air Force had denied all religious exemption applications to date; had reached final decisions for most of the plaintiffs; had issued a warning memorandum regarding sanctions for noncompliance; and had a history of enforcing the mandate against others.  None of that is present here. Similarly, in *Kentucky v. Yellen,* 54 F.4th 325 (6th Cir., 2022), the court was confronted with a statute that arguably proscribed the post-acceptance enactment of a revenue-reducing tax cut if a state accepted federal COVID-19 funding.  The Michigan statutes do not "arguably" provide that religious freedoms will not be considered.

3

Plaintiff cites to a string of cases claiming that the fact that religious organizations have been sued under the employment provision of the ELCRA demonstrates that the clause applies to them.  (ECF No. 22, PageID.619.)  But the dispute here is not whether the employment discrimination provision of the ELCRA applies to all employers in the state of Michigan; rather it is whether a religious employer will qualify for an exemption.  Further, these cases evidence that Michigan courts *have* interpreted the ELCRA in conjunction with applicable religious freedoms.[2]

In *McLeod v. Providence Christian Sch.*, 408 N.W.2d 146 (Mich. Ct. App. 1987), plaintiff challenged a religious school's refusal to hire female teachers with preschool aged children unless there were extenuating circumstances under the ELCRA.  The court recognized the Free Exercise Clause prohibiting governmental regulation of religious beliefs and weighed that with the government's ability to impose an incidental burden on protected religious conduct.  *Id.* at 343.  In *Assemany v. Archdiocese of Detroit*, 434 N.W.2d 233 (Mich. Ct. App. 1988), a white organist challenged his replacement by a black organist alleging race discrimination.  The court held the discrimination claim was barred by the Free Exercise Clause of the First Amendment.  *Id.* at 238.  In *Porth v. Roman Catholic Diocese*, 532 N.W.2d 195, 200 (1995), the court held that the Religious Freedom Reformation Act barred the application of the ELCRA to the school.  And in

---

[2] Of note, none of these cases involve a case brought by the Attorney General under the Equal Accommodations Act or any Defendants under either applicable Michigan law.  They were brought by private individuals.

*Weishuhn v. Catholic Diocese*, 756 N.W.2d 483, 500 (Mich. Ct. App. 2008), the court noted the ministerial exception may apply to a challenge involving an alleged retaliatory termination of a math teacher and remanded the case for consideration of the ministerial exception factors.

Plaintiff appears to argue that any lawsuit against it, in and of itself, violates its religious freedoms, despite that courts have considered religious freedoms in conjunction with Michigan's antidiscrimination provisions.  There is no authority for the provision that a religious entity's religious rights provide it with immunity from suit, as religious freedoms must be weighed against governmental interests based on the particular facts of each case.  *Assemany,* 434 N.W.2d at 236–237.

Given that the Michigan statutes here provide they are to be construed with other laws, it is speculative they will proscribe Plaintiff's alleged conduct.

### B.    Plaintiff has not shown a credible threat of enforcement.

Even assuming arguendo that not all the conduct at issue would fall within the Michigan statutes' consideration of protected religious rights, Plaintiff still has not shown a credible threat of enforcement.  The Sixth Circuit utilizes the *McKay* factors to determine whether a threat of prosecution is credible, which are:

1.  A history of past enforcement against the plaintiffs or others;

2.  Enforcement warning letters sent to the plaintiffs regarding their specific conduct;

3.  An attribute of the challenged statute that makes enforcement easier or more likely, such as a provision allowing any member of the public to initiate enforcement action; and,

4. The Defendants refusal to disavow enforcement of the challenged statute
   against a particular plaintiff.

*McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016).  Some combination of these

factors is required.  *Id.*

Plaintiff has not described any past enforcement of the Michigan statutes

against it or others to demonstrate a credible threat of prosecution.  Plaintiff cites to

a string of cases to demonstrate that Michigan does protect against discrimination

in public accommodations generally, which Defendants do not refute.  (ECF No. 22,

PageID.616-617.)  But they have not cited to any Michigan authority where a place

of public accommodation was inappropriately denied a religious exemption.  In

*Beech Grove Investment Co. v. Civil Rights Comm'n*, 157 N.W.2d 213, 218-219

(Mich. 1968), the issue was whether the Michigan Civil Rights Commission (MCRC)

had jurisdiction over complaints of discrimination in housing where a residential

house builder refused to sell a subdivision lot to a black family.   In *Moon v. Mich.*

*Reprod. & IVF Ctr., P.C.*, 810 N.W.2d 919, 927 (Mich. Ct. App. 2011), a physician

refused to artificially inseminate a single woman based on a liability issue, not due

to any asserted religious right.

Plaintiff also relies on cases where past enforcement was not required, but

those cases involve statutory provisions that clearly proscribe the conduct at issue—

unlike the Michigan statutes, which explicitly provide for consideration of other

laws in their application.  In *Babbitt v. U.F.W. Nat'l. Union*, 442 U.S. 289 (1979),

the Supreme Court reviewed a farm labor statute challenge.  It noted that fear of

prosecution was enough regarding a criminal penalty portion of the statute that "on

its face proscribes dishonest, untruthful, and deceptive publicity." *Id.* at 302.  But
the Court also found that the employer's property access provision of the statute did
not constitute a case or controversy where it accepted the union would inevitably
seek access, but that it was "conjectural to anticipate that access would be denied."
*Id.* at 304.  Similarly, here, Plaintiff has no evidence that its religious freedoms will
be denied where the Michigan statutes expressly provide they are to be construed
with other laws and it is speculative to anticipate that Defendants will pursue a
claim or charge against Plaintiff.  *Green Party of Tenn v. Hargett*, 791 F.3d 684, 692
(6th Cir. 2015), is also distinguishable where the statutes "by their own terms. . .
appl[ied] only to recognized minor parties."  In *Steffel v. Thompson*, 415 U.S. 452
(1974), the Court found a credible threat related to a criminal trespass statute
where plaintiff was twice warned to stop distributing handbills, was advised he
would likely be prosecuted, and his companion was in fact arrested and prosecuted.
*Id.* at 458.  Michigan's statutes do not facially fail to recognize religious freedoms.

Plaintiff has not provided anything akin to a warning letter that was sent to
it regarding the conduct outlined in its Complaint.  Plaintiff attempts to rely upon
amicus Attorney General Nessel joined in *303 Creative, LLC,* No. 21-476 (U.S. Aug.
19, 2022) pending before the Supreme Court as evidence of a clear threat of
prosecution.  But *303 Creative* involves a website designer claiming provision of
wedding website design services to same-sex couples constitutes a violation of her
individually held beliefs in relation to Colorado's public accommodations statute.
The amicus argues whether the First Amendment provides for discrimination by

businesses that offer their services to the public.  Resolution of a Colorado statute is
not indicative of the interpretation in Michigan.  Also, because this case is not ripe,
there is no indication that the public service argument confronted in *303 Creative*
involving individualized beliefs would be applicable to an entity such as Plaintiff
which alleges that its entire business model is centered around religious ministry.

Similarly, *Rouch World*, involved a wedding venue business and a hair
removal service.  *Rouch World*, ___ N.W.2d ___ (Mich. 2022); 2022 WL 3007805 at *
4-6.  However, the only issue addressed in the *Rouch World* appeal was whether
gender identity and sexual orientation are encompassed within the "because of sex"
language of the ELCRA—not whether religious freedoms were implicated.[3]
MDCR argued the religious freedom issue was not ripe for adjudication and
provided an assessment regarding when a government may have a compelling
interest that would supersede a religious right in that case.  (ECF No. 22,
PageID.695–697).[4]  Maintaining the issue is not ripe is not an indication of a "lack
of will" to recognize religious freedoms.

Relative to disavowal, this case does not involve a clear criminal statute with
the possibility of prosecution; it involves to what extent the Defendants would

---

[3] Plaintiff claims Defendants admit they are "prosecuting organizations who share
the ministry's beliefs on marriage and sexuality."  Defendants have made no such
admission.  The MDCR received administrative complaints regarding Rouch
World and Uprooted Electrolysis, but this is not a prosecution and does not
involve any criminal statute.

[4] Plaintiff's citations to cases in other states have no bearing on this court's review
of Michigan statutes.  Even with similar language, it is pure speculation to
assume Defendants would not appropriately review and consider any existing
religious freedoms when applying the Michigan statutes.

pursue a civil rights' claim against a religious entity where the statutes specifically provide for consideration of other applicable laws.  It would be impossible for Michigan to disavow application of a Michigan statute as broad as the ELCRA and Equal Accommodations Act as to any religious entity where the religious freedom inquiry would be so fact-dependent.  In *Doe v. Yost,* ___F. Supp. 3d___; 2021 U.S. Dist. LEXIS 60649, at *1 (*S.D. Ohio, Mar. 30, 2021*)*,* the plaintiff challenged Ohio's Menacing by Stalking Statute and Telecommunications Harassment Statute alleging infringement upon her free speech.  The court found that the prosecutor denied the Ohio statute at issue reached political speech, and that Plaintiff did not demonstrate a credible threat of prosecution.  Similarly, here, the Michigan statutes do not deny religious freedoms, but those freedoms must be weighed on a case-by-case basis.  Disavowal would not be applicable.  As a result, Plaintiff can only meet one of the four *McKay* factors, that being that the statutes provide for public enforcement.  Again, however, a combination of the *McKay* factors is required. *McKay,* 823 F.3d at 869.

While Plaintiff notes that Michigan actively enforces its civil rights laws[5], that inquiry is too broad.  (ECF No. 22, PageID.616-617, 622-623.)  The issue in this case is whether the Defendants have failed to consider religious exemption laws when applying Michigan's civil rights laws.  Defendants do not deny that they have interpreted (and the Court of Claims and Supreme Court agreed) the ELCRA's

---

[5] Of note, Plaintiff has not provided any information of any cases brought under the public accommodations portion of the Equal Accommodations Act by the Attorney General.

"because of sex" provision to include protection for gender identity and sexual orientation.  Again, the issue is whether, in the application of this provision, Defendants have refused to consider religious exemption laws—which they have not.

Further, Plaintiff's concerns regarding any Defendant's position or representations regarding possible limitations to religious freedoms are too broad. Plaintiff erroneously claims that "Michigan is currently prosecuting" two entities who declined to provide services due to their religious beliefs.  (ECF No. 22, PageID.623.)  First, the Attorney General has not brought any criminal charges against Rouch World or Uprooted Electrolysis.  To the extent that the Michigan Department of Civil Rights (MDCR) received discrimination complaints from citizens against Rouch World and Uprooted Electrolysis, the administrative complaints (not "prosecutions") were stayed pending the lawsuit regarding the breadth of the ELCRA's "because of sex" provision.[6]  There is no evidence before this court that the MDCR will not consider the religious freedom arguments during the administrative proceedings.

Plaintiff also claims various statements made by the Attorney General or cases she has been involved in evidence a general animus against religious organizations.  (ECF No. 22, PageID.634-635.)  However, the fact that Attorney General Nessel is a member and supporter of the LGBTQ+ community does not

---

[6] The parties are working on a stipulation for dismissal of the Court of Claims case so these two matters can be remanded back to the MDCR.

evidence that she would disregard any constitutional rights afforded to religious organizations.  These are two separate and distinct concepts, and Plaintiff's concern based on the Attorney General's efforts on behalf of the LGBTQ+ community that she would not abide by constitutional and statutory religious exemptions is speculative.  Similarly, in *Glenn v. Holder*, 738 F. Supp. 2d 718, 733 (E.D. Mich. 2010), the Court found that a U.S. Attorney's statements of her "administration's intent to vigorously enforce the Hate Crimes Act does not amount to a credible threat of prosecution of the Plaintiffs for their opinions under the factual circumstances alleged."  Attorney General Nessel's statements discussed in *Buck v. Gordon*, 429 F. Supp. 3d 447, 467 (W.D. Mich. 2019) were specific to an unrelated Michigan statute regarding the adoption of children.  Plaintiff's citation to several cases regarding a state's public positions supporting a likelihood of enforcement all involve a public official commenting on the specific statute in question.  *Online Merchs. Guild v. Cameron,* 995 F.3d 540, 551 (6th Cir. 2021)(concerning U.S. Attorney General's pursuit of a subpoena against the plaintiff and commenting on the statute at issue); *Emilee Carpenter, LLC v. James,* 575 F. Supp. 3d 353, 368 (W.D.N.Y. 2021) (concerning public official comments indicating conduct like the plaintiff's violates the public accommodation laws and was not protected by the constitution); *Dream Def. v. DeSantis,* 553 F. Supp. 3d 1052,1077 (N.D. Fla. 2021) (public comments were regarding the anti-riot legislation at issue.)  Further, Plaintiff has not provided evidence of any comments by the MCRC Commissioners

or MDCR staff named as Defendants to establish that they have provided any credible threat of enforcement.

While Plaintiff relies heavily upon its alleged chill, any decision it has made to curtail activities is not based on a "specific present or objective harm or threat of specific future harm" caused by Defendants. *Laird v. Tatum,* 408 U.S. 1, 13-14.  In *Laird*, the plaintiffs alleged that they were subjected to Army surveillance, which chilled their First Amendment rights.  The court found that even with surveillance, the chill was "subjective" and did not qualify as a "specific present objective harm or threat of specific future harm." *Id.*  In *Glenn v. Holder*, the court denied a pre-First Amendment enforcement challenge to the Hate Crimes Prevention Act by two pastors and a public interest group officer.  The court found plaintiffs lacked standing and the claims where not ripe where plaintiffs could not demonstrate they intended to take action proscribed by the statute and it was speculative that their conducted would be prosecuted.  738 F. Supp. 2d at 721.

### C.     Plaintiff is not entitled to a presumption of a credible risk of enforcement.

As stated above, the court must weigh whether there is a credible risk of enforcement, which is a multi-factor test.  Plaintiff requests this court grant a presumption of credible risk where Plaintiff is an object of Michigan law, the law proscribes its desired conduct, and Michigan enforces the law.  However, as asserted in Argument I.A., Michigan's statutes expressly provide that the anti-discrimination laws must take into consideration other applicable laws.  The state

and federal constitutions are such laws.  Therefore, Plaintiff's claim that the statutes proscribe its conduct is incorrect.

Plaintiff's cited cases resulted in standing due to the clarity of the challenged law and its application to the plaintiffs.  *Whole Woman's Health v. Jackson,* 142 S. Ct. 552 (2021) and *Doe v. Bolton,* 410 U.S. 179 (1973), involve unrelated abortion statutes, and *Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383 (1988), involves an unrelated statute prohibiting the display of obscene books even if not sold to juveniles.  The Michigan statutes provide for consideration of other laws, like religious freedoms, and Michigan courts have historically considered any religious freedoms when the issue was raised.  See *McLeod*, 408 N.W.2d at 343*.; Assemany*, 434 N.W.2d at 238*., Porth*, 532 N.W.2d at 200*;* and *Weishuhn,* 756 N.W.2d at 500 (analyzed in Argument I.A.).

Plaintiff claims its pre-enforcement jurisdiction should not be impacted by the lack of any state guidance or decisions on the scope of religious freedoms under the Michigan statutes.  (ECF No. 22, PageID.625.)  This confuses the arguments in Defendants' motion.  Defendants argue this court should abstain from evaluating the due process challenge where the statute provides for consideration of religious freedoms and, without any action to the contrary by the Defendants, Plaintiff's claims that it will be enforced against it are wholly speculative.  (ECF No. 20, Motion to Dismiss, PageID.580-581.)  The state should be left to interpret its laws, with the statutory provision for consideration of federal provisions on religious freedoms, before this court weighs in.

13

**D.     A bona fide occupational qualification is available under the ELCRA.**

Despite expending likely considerable effort and funds to pursue this lawsuit, Plaintiff argues that the BFOQ process available to employers in Michigan is too onerous.  (Brief, PageID.639).  First, Plaintiff argues it would need to hire an attorney to draft the brief in support of the BFOQ; nothing in the statute requires that an attorney be retained for the BFOQ application process.  The ELCRA provides that "a *person* subject to this article may apply for [a BFOQ]."  Mich. Comp. Laws § 37.2208 (emphasis added).  The administrative rule similarly provides that a "person" subject to the employment provision may apply for a BFOQ.  Mich. Admin. R. 37.25(1).

Second, it is unclear why Plaintiff claims it would have to prepare multiple BFOQ where it claims all of its employees similarly contribute to the religious mission.  (ECF No. 22, PageID.639).  The application allows for submission of a request covering more than one employee.  (*Id.,* PageID.704.)  It is also based on position, not necessarily specific individuals, so duplicative requests with every hire would not be required.  (Affidavit of Marcelina Trevino, Ex. A.)  The BFOQ exemptions last for five years.  (*Id.*)

Third, relative to futility, Plaintiff misinterprets the MDCR's FOIA response.  The MDCR indicated that it did not have any record of the information requested—not that a BFOQ was never applied for or granted.  (ECF No., PageID.705.)  BFOQ's have been considered and granted by the MDCR.  (Affidavit, Ex. A.)

14

## II.     Abstention is appropriate for the majority of Plaintiff's claims

Plaintiff's only challenge to *Burford* abstention involves its claim that the "unwelcome clause" in the publication provision of the ELCRA is a facial challenge. Mich. Comp. Laws § 37.2302(b).  (ECF No. 22, PageID.653-654.)  However, the remainder of Plaintiff's allegations that are not facial challenges are appropriate for *Burford* abstention.  See *Fireman's Fund Ins. Co. v. Quackenbush*, ___F.3d___; 1996 U.S. App. LEXIS 19493, at *17 (CA 9, June 18, 1996), where the court denied *Burford* abstention related to a claim involving a facial challenge and granted *Burford* abstention to the remaining non-facial claims.  Plaintiff did not rebut the appropriateness of abstention as to its remaining non-facial claims—and indeed, abstention is appropriate.

## III.     Plaintiff is not entitled to jurisdictional discovery

Plaintiff seemingly acknowledges it has plead inadequate factual bases to support a finding of injury-in-fact or a credible threat enforcement by now asserting that this court "should order limited discovery" if "there is any question about Christian Healthcare's standing or the ripeness of its claims[.]"  (ECF No. 22, PageID.651.)

But discovery would be nothing more than a fishing expedition. See *Auto-Owners Ins. Co. of Am. v. Hallmark Mktg. Co., LLC*, No. 1:11-cv-1157, 2016 U.S. Dist. LEXIS 194821, 2016 WL 10514822, at *6 (W.D. Mich. Dec. 9, 2016).  The Sixth Circuit has held, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly

burdensome to produce." *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305, 2007 WL 107953 (6th Cir. 2007).  While a plaintiff should have access to information necessary to establish a claim, "a plaintiff may not be permitted to 'go fishing'." *Id.*

Plaintiff's failure to demonstrate an imminent threat of investigation and prosecution or any interference with its business operations based on its sincerely-held religious beliefs since the MCRC adopted its Interpretive Statement and Defendant Nessel was elected Attorney General in 2018—despite its claim that Defendants "zealous[ly]" and/or "aggressively" enforce Michigan's civil rights laws—creates a situation where there are no competing disputes of fact or allegations for this Court to evaluate for credibility.  (ECF No. 1, Compl., PageID.41.; ECF No. 22, PageID.623-624.)  Plaintiff seeks discovery to prove its suspicions regarding the existence of facts that would support jurisdiction.  But Plaintiff continues to merely speculate that, if it is allowed to take jurisdictional discovery, it can fill in the gaps of its complaint with facts.  But "[d]iscovery is not required based on speculation or hope." *Auto-Owners Ins. Co. of America v Hallmark Mktg. Co., LLC*, ___F. Supp. 3d___; 2016 U.S. Dist. LEXIS 194821, at \*15 (W.D. Mich., Dec. 9, 2016).  "It is well within the Court's discretion to deny a plaintiff's request for jurisdictional discovery where, as here, the plaintiff makes only conclusory allegations and fails to offer any factual basis for its allegations." *Id.* (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

At this juncture, the complaint contains only abstract allegations anchored in future events that might not occur at all—or might occur differently than Plaintiff

16

anticipates.  Moreover, Plaintiff's complaint is a panoply of speculation on why it has chosen to self-impose restrictions on its sincerely held religious beliefs untethered to any actual actions taken on the part of the Defendants.  In other words, Plaintiff's complaint is an answer in search of a problem.  And, in choosing to self-regulate, it seeks to entangle this court "'in abstract disagreements.'"  *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (citation omitted).  This court should reject such an invitation.  While it is true that a plaintiff "must be given an opportunity to secure and present relevant evidence to the existence of jurisdiction" when "a defendant challenges a court's actual subject matter jurisdiction," plaintiffs must do more than "merely assert" the need for discovery; they must "explain what evidence relevant to subject matter jurisdiction they [would be] denied from obtaining."  *Gilbert v. Ferry*, 401 F.3d 411, 415 (6th Cir.), on reh'g in part, 413 F.3d 578 (6th Cir. 2005).

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above and in Defendants' motion to dismiss, Defendants respectfully ask this Court to dismiss all claims against them under Fed. R. Civ. P. 12(b)(1).

Respectfully submitted,

*/s/ Tonya C. Jeter*
Tonya C. Jeter
Kimberly K. Pendrick
Assistant Attorneys General
Attorneys for Defendants
Civil Rights and Election Division
3030 W. Grand Blvd., 10th Floor
Detroit, Michigan 48202
313.456.0067
jetert@michigan.gov
P55352
pendrickk@michigan.gov
P60348

Dated: January 13, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023, I electronically filed the foregoing document(s) with the Clerk of the Court using the ECF System, which will provide electronic notice to the parties.

*/s/ Tonya C. Jeter*
Tonya C. Jeter (P55352)
Assistant Attorney General

18