IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Christian Healthcare Centers, Inc.** <br><br> Plaintiff, <br><br> v. <br><br> **Dana Nessel,** in her official capacity as Attorney General of Michigan; **John E. Johnson, Jr.,** in his official capacity as Executive Director of the Michigan Department of Civil Rights; **Portia L. Roberson, Zenna Faraj Elhason, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau, and David Worthams,** in their official capacities as members of the Michigan Civil Rights Commission. <br><br> Defendants. | Case No. 1:22-cv-000787-JMB-PTG <br><br> **Notice of Supplemental Authority in Support of Plaintiff's Motion for Preliminary Injunction and Opposition to Defendants' Motion to Dismiss** |

Plaintiff Christian Healthcare Centers, Inc. submits this notice of supplemental authority about (1) a new amicus brief joined by Attorney General Nessel about how Michigan interprets antidiscrimination laws, Br. for Cal. et al as Amici Curiae in Support of Neither Party ("Br."), *Tennessee v. Dep't of Educ.*, 2022 WL 18027407 (No. 22-5807) (Dec. 22, 2022); (2) Attorney General Nessel's press release and the Michigan Civil Rights Commission's ("Commission") resolution supporting an amendment to the Elliott-Larsen Civil Rights Act's text to include sexual-orientation and gender-identity discrimination (Exhibits A and B); and (3) amendments to the Commissions' regulations and an accompanying regulatory impact statement (Exhibits C and D). All these authorities further support Christian Healthcare's standing and the ripeness of its claims.

*1. Amicus Brief*. Michigan joined a multi-state amicus brief supporting federal regulations that, like the Michigan Supreme Court's decision in *Rouch World, LLC v. Dep't of C.R.*, No. 162482, 2022 WL 3007805 (Mich. July 28, 2022) re-interpreted the phrase "discrimination on the basis of sex" to include sexual orientation and gender identity. Br., 2022 WL 18027407, at *1. In that brief, Michigan argued that using the "wrong name and pronouns" is gender-identity discrimination, reaffirmed that distinctions based on sexual orientation or gender identity are discriminatory, reiterated that sexual-orientation and gender-identity discrimination "cause[s] serious harms," and emphasized the need to end all employment discrimination. *Id.* at *2, *8–14, *18–20, *26–26. To justify this broad reading, the brief invoked the experience of states' public accommodations' and employment laws—i.e., how the states had already adopted the policies Michigan urged the Sixth Circuit to uphold. *Id.* at *20 n.5.

This brief supports the ministry's standing in three ways. First, it confirms that the ministry's current pronoun and employment policies and practices at least arguably violate Michigan's law. Pl.'s Opp. to Defs.' Mot. to Dismiss ("MTD Resp.")

1

PageID.614–20. If Michigan interprets discrimination in federal law broadly to cover the ministry's desired activities, then surely Michigan's *similar laws* at least arguably cover these activities too. Second, the amicus brief confirms that Michigan will interpret its laws as broadly as possible to counter what the state perceives to be "serious harms," and therefore the ministry faces a credible threat of state enforcement. *Id.* Again, if Michigan interprets discrimination in federal law broadly to cover the ministry's desired activities, then surely Michigan will interpret its *similar state law* to cover these activities too. Third, the brief undermines Michigan's assertion to this Court that it will grant atextual or heretofore unrecognized exemptions to the medical ministry. Because Michigan's Sixth Circuit amicus brief emphasizes that Michigan considers any "discrimination" (such as refusing to use someone's preferred pronouns) to cause serious harms, Michigan's post-litigation assertions that it *might* someday provide future exemptions is not believable and does not negate the credible threat created by Michigan law now. *See id.* at PageID.630–38.

     2. *Press Release and Resolution*. In January, Michigan's Senate proposed a bill adding sexual orientation and gender identity to the Elliott-Larsen Civil Rights Act's text. S.B. 4, 2023 Leg., 102nd Sess. (Mich. 2023), *available at* https://bit.ly/3xjqsdT. Unlike similar laws adopted in other states and localities (*e.g.*, PageID.335–37), the amendment did *not* include corresponding religious exemptions. *Id.* Michigan's proposed law treats churches and religious organizations like Christian Healthcare as social pariahs who must be punished. Yet, consistent with her past public statements, Attorney General Nessel issued a press release supporting the bill. Ex. A. She claimed that this codification "enhanced dignity for thousands of Michiganders," was necessary so "that these rights are enshrined in Michigan [enacted] law [in addition to Michigan judicial opinions] to help them withstand future legal attacks," and applied "to all

2

Michiganders." *Id*. The Commission likewise praised the bill in a resolution. Ex. B. The Commission said that "sexual orientation and gender identity should *never* be the basis for affording or denying basic civil rights and public accommodations and services." *Id*. (emphasis added). And it urged passage "without any amendments that would seek to reduce their scope or impact"—i.e., explicit religious accommodations. *Id*.

These statements also bolster the ministry's standing in three ways. First, they indicate Michigan intends to continue actively and aggressively enforcing its law. MTD Resp., PageID.622–24. Other courts have found similar statements demonstrate likely enforcement. *Id*. at PageID.623n.8. Second, courts presume new laws or laws with renewed interest will be enforced. *Id*. at PageID.629–30. Third, the statements demonstrate the futility of the ministry hoping Michigan one day recognizes a religious exemption, rather than seeking relief now. *Id*. at PageID.630–38.

  3.  *Regulations and Impact Statement*. Also in approximately January, the Commission amended its regulations. Ex. C ("MDCR"). Those amendments help facilitate complaints. Complainants may now sign a complaint (without a notary) and file it via email (instead of in person or by mail). MDCR 37.4, 37.29. The amendments also add burdens on employers who seek to invoke the BFOQ process. Now, employers must re-apply for BFOQs every five years, and the Commission can revoke previously granted BFOQs. MDCR 37.25. The impact statement explains the reasons for these changes. The Commission eliminated the notary requirement to remove "an unnecessary barrier for many claimants who must find, and often pay, a notary." Ex. D. The Commission added email service "to streamline and expedite the MDCR complaint process." *Id.*; *id*. ("Proposed changes in rules will expedite processing complaints"). The Commission justified this expedited process due to the number of complaints it investigates—1,125 just since

3

September 2021 and 10,525 since January 2018. *Id.* And the Commission revised the BFOQ process because "[w]hether [job] changes are societal, legal, or even technological, the department believes a decision to let an employer do *what otherwise would be illegal discrimination* should be reviewed periodically, or even withdrawn if it is being abused." *Id.* (emphasis added).

The regulations and the impact statement support Christian Healthcare's standing for four reasons. First, Michigan tacitly admits that Christian Healthcare's current employment policy and practice violate the law *without* a BFOQ by admitting that BFOQs authorize what would "otherwise … be illegal discrimination." MTD Resp., PageID.614–20. Second, the amendments to complainants' signatures and email service make Michigan's law even "eas[ier] to enforce" by third-party complaints. *Id.* at PageID.628. Third, the impact statements attest to Michigan's active enforcement—10,525 investigations since 2018. *Id.* at PageID.620–622. Fourth, the heightened BFOQ requirements add yet more burdens to Christian Healthcare and entangle Michigan with the ministry's religious autonomy for the indefinite future by requiring re-ups every five years. *Id.* at PageID.638–642. The ministry need not subject itself to those intrusions before filing suit.

In sum, all these materials are consistent with Michigan's previous statements and actions and support the ministry's standing arguments.

4

Respectfully submitted this 10th day of February, 2023.

Jonathan A. Scruggs
Arizona Bar No. 030505
Ryan J. Tucker
Arizona Bar No. 034382
Henry W. Frampton, IV
South Carolina Bar No. 75314
Bryan D. Neihart
Arizona Bar No. 035937
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org
rtucker@ADFlegal.org
hframpton@ADFlegal.org
bneihart@ADFlegal.org

By: s/ John J. Bursch
John J. Bursch
Michigan Bar No. P57679
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
(202) 347-3622 Fax
jbursch@ADFlegal.org

*Attorneys for Plaintiff*

5

## Certificate of Service

I hereby certify that on February 10th, 2023, I electronically filed the foregoing document with the Clerk of Court and that the foregoing document will be served via the CM/ECF system on all counsel of record.

By: <u>s/ John J. Bursch</u>

John J. Bursch
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001

*Attorney for Plaintiff*