# EXHIBIT D

## Michigan Office of Administrative Hearings and Rules
## Administrative Rules Division (ARD)
MOAHR-Rules@michigan.gov
# REGULATORY IMPACT STATEMENT
# and COST-BENEFT ANALYSIS (RIS)

**Agency Information:**
**Department name:**
  Civil Rights
**Bureau name:**
  Civil Rights Commission
**Name of person filling out RIS:**
  Lamont Satchel
**Phone number of person filling out RIS:**
  313-456-3700
**E-mail of person filling out RIS:**
  satchell1@michigan.gov

**Rule Set Information:**
**ARD assigned rule set number:**
  2021-89 CR
**Title of proposed rule set:**
  Organization, Practice, And Procedure

## Comparison of Rule(s) to Federal/State/Association Standard

**1. Compare the proposed rules to parallel federal rules or standards set by a state or national licensing agency or accreditation association, if any exist.**
  There are no parallel federal rule counterpart.
**A. Are these rules required by state law or federal mandate?**
  No. The MCRC's authority to promulgate rules is permissive pursuant to Mich. Comp. Laws § 37.2101, MCL 37.2101 to 37.2804. 1976, Act 453, Eff. Mar. 31, 1977; --Am. 1977, Act 162, Imd. Eff. Nov. 8, 1977
**B. If these rules exceed a federal standard, please identify the federal standard or citation, describe why it is necessary that the proposed rules exceed the federal standard or law, and specify the costs and benefits arising out of the deviation.**
  Because there are no federal rules counterpart, these proposed rules do not exceed a federal standard.
**2. Compare the proposed rules to standards in similarly situated states, based on geographic location, topography, natural resources, commonalities, or economic similarities.**
  State Rules/Procedures Comparison:

  Four of the Great Lake States define "complaint". Minnesota: Defines "verified charge" which is equivalent to our complaint; Pennsylvania: Defines "complaint"; Ohio: Defines complaint. Complaint must be sworned or affirmed to a notary; Illinois: Defines "complaint" and it must be notarized or "verified by certification".

  Four of the Great Lakes States allow some form of electronic filing. Wisconsin: Allows electronic filings if expressly granted by ALJ or "equal rights officer"; Minnesota: Generally, no; except for notice of a complaint by commission upon agreement of respondent; Ohio: Allow online filing; Illinois: Allows electronic service.

  Six of the Great Lake States define "day". Wisconsin: Defines "day" as a "calendar day" and if last day of period is weekend or 'legal holiday" then use next "business day"; Indiana: defines "day" as a "calendar day" and if last day of period is weekend or 'legal holiday" then use next "business day; Minnesota: Relies on comprehensive Minn. Rule of

MCL 24.245(3)

RIS-Page 2

Civil Procedure, which uses calendar days and if last day is weekend or holiday then use end of next day that is not a Saturday, Sunday or holiday; Pennsylvania: Rules don't address this issue; Ohio: Last day counted unless it's a weekend or legal holiday observed by Ohio, in which case runs to next day that is not a weekend or holiday; Illinois: Addresses how days are counted and if last day is weekend or legal state holiday then runs to next day that is not weekend or holiday; days are calendar days.

Six of the Great Lake States address the consequences of a failed conciliation. New York: Has process to handle failed conciliations, including imposition of conciliation offer if certain criteria are met; Wisconsin: Has process that allows for conciliation throughout process and failed conciliation does can result in the action outlined in our revised rules, depending on when it happens in the process; Indiana: Has process that allows for conciliation throughout process and failed conciliation can result in the actions outlined in our revised rules, depending on when it happens in the process; Minnesota: Has a process that allows for conciliation throughout the complaint process and failed conciliation can result in the actions outlined in our revised rules, including additional actions, depending on when it happens in the process; Pennsylvania: Has a process that allows for conciliation throughout process and failed conciliation can result in in the actions outlined in our revised rules depending on when it happens; Ohio: Has a process that allows for conciliation and a failed conciliation can result in the actions set forth in our revised rules, depending on when it happens in the in the process.

All seven of the Great Lake States address reconsideration of the refusal to issue a charge: New York: Has no internal reconsideration process. Claimant must go to State Court; Wisconsin: Has an internal process for reconsideration of pre and post investigation dismissals but does not set forth what the factors for review are. The request for reconsideration goes to an ALJ; Indiana: Has a detailed process for appealing of dismissed or closed cases. Requires appeal within 15 day of dismissal notice; Minnesota: Reconsideration must be filed within 10 days of notice of termination for no probable cause and 60 days for summary termination (pre-investigation) of complaint and sets forth considerations reviewing entity must make; Pennsylvania: Reconsideration request must be made within 10 days of receipt of notice of dismissal. There are no pre-determined considerations that must be made; Ohio: Allows for reconsideration with not time for filing or set of consideration to use in determination on the issue of reconsideration; Illinois: Allows for reconsideration if filed within 30 days after receipt of dismissal; contains no pre-determined consideration that have to be made.

All seven of the Great Lake States address the time for filing an answer and/or sending the answer to claimant or their representative: New York: Answer must be filed at least two business days prior to the hearing. Respondent and not department (as in Michigan) sends answer to claimant's attorney or claimant if unrepresented. Amendments are allowed subject to discretion of ALJ. There is no timeline; Wisconsin: Answer must be filed within 10 days after the date of a notice of hearing on the merits; Indiana: Answer must be filed within 20 days of receipt of complaint and served on complainant by respondent; Minnesota: Answer must be filed within 20 days of receipt of the charge. Answer must be served by commission on respondent within 10 days after it is filed with department; Pennsylvania: Answer must be filed on commission and served on respondent within 30 days of service of complaint on respondent by commission; Ohio: Answer must be filed with 28 days from date of service of complaint and notice of hearing on all parties. Can file it electronically with commission; Illinois: Answer is only filed upon request, within 30 or 60 days after request; or if no request within 30 or 60 days after service of charge.

All seven Great Lakes States Address the timeline for sending hearing notices and only one addresses the ability to hold pre-hearing conference by electronic means: New York: Hearing notice sent within 270 days of filing of complaint; Wisconsin: Notice sent not less than 30 days before the date of the hearing; Indiana: Notice must be delivered no less than 15 days before the hearing date; Minnesota: Hearings are controlled by Minnesota statute and not the rules; and notice must be sent not less than 10 days prior to hearing; Pennsylvania: Rules do not provide a hearing notice deadline; Ohio: No time frame addressed. Notice can be sent without hearing date and can indicate that it will be set at a later date; prehearing conference can be by phone; Illinois: Complainant has right to request review hearing by commission of department's decision. No timelines addressed in rules.

MCL 24.245(3)

Three of the Great Lakes States address BFOQs in their rules. New York: Allows BFOQs but does not have an expiration period; Pennsylvania: BFOQ are allowed, but none of the proposed changes are addressed; Ohio: Allows BFOQs. They must be in writing (no online form); effective for 2 years with right to request extension.

All seven of the Great Lake States address in some manner the method for the calculation of day. New York: Has no separate section for how calculation of days is to be made. They do make a distinction between "days" and "business days", using them both; Wisconsin: Defines "day" as a "calendar day" and if last day of period is weekend or 'legal holiday" then use next "business day"; Indiana: Days are "calendar days" and if last day falls on weekend, national or state holiday or when office closed, then use next "business day"; Minnesota: Relies on comprehensive Minn. Rule of Civil Procedure, which uses calendar days and if last day is weekend or holiday, then use end of next day that is not a Saturday, Sunday or holiday; Pennsylvania: Rules don't address this issue, except that for complaint purposes the 180 days don't include "a period of time that is excludable as a result of waiver, estoppel or equitable tolling; Ohio: The last day of period is counted unless it falls on a weekend or legal holiday observed by Ohio, in which case period runs to next day that is not a weekend or holiday; Illinois: Addresses how days are counted and if last day is weekend or legal state holiday then runs to next day that is not weekend or holiday.

Three Great Lake States allow for some form of electronic service in specific circumstances. Wisconsin: Allow for fax of complaint and other documents if expressly granted by ALJ or "equal rights officer"; Minnesota: Generally, no; except for notice of a complaint by commission upon agreement of respondent; Ohio: Allows electronic filing of complaint and answer.

All seven of the Great Lake States have a signature requirement. However, none of them expressly state the import of signing the complaint: New York: Requires signature but does not specifically discuss the import of a complainant signing the complaint; Wisconsin: Requires signature but does not specifically discuss the import of a complainant signing the complaint; Indiana: Signature required but does not specifically discuss the import of a complainant signing the complaint; Minnesota: Signature under oath or affirmation required but does not specifically discuss the import of a complainant's signature; Pennsylvania: Complaint must be verified, but does not address the import of a complainant's signature; Ohio: Complaint must be signed and sworn to or affirmed by the complainant before a notary or person authorized to administer oaths, but has no language on the import of the signature; Illinois: Complaint must be signed, but no language regarding import of signature.

None of the Great Lakes States, with the exception of Indiana, in limited circumstances, allows for remote hearings: Indiana: Commission may hold telephonic hearing on whether its order should be set aside because the party did not receive "sufficient notice of a finding, notice, order, or other document".

**A. If the rules exceed standards in those states, please explain why and specify the costs and benefits arising out of the deviation.**

RIS-Page 4

Remote Hearing: Compared to other Great Lakes States, the proposed rules exceed their standard as it relates to allowing remote video hearings. This proposed rule is necessary to accommodate disabled parties or their representatives/counsel, facilitate COVID-19 related concerns, and reduce the expense on the department and parties from having to attend in-person hearing. The cost associated with this is de minimus as the technology is currently in use by the department, and state in general.

Electronic Service: Compared to other Great Lakes States, the proposed rules exceed their standard as it relates to electronic service/filings. While some states offer limited electronic service/filings, the proposed rules have no such limitations and allow for all filing to be made electronically. Allowing for electronic service/filing provides a more efficient method receive, store, manage and manipulate essential documents. Moreover, it reduces the environmental, storage and document retrieval costs associated with paper filings. The department currently has in place a system that allows for electronic service/filing and has implemented the necessary internal training. Any cost to implement and maintain this system is de minimus and future upgrades and maintenance costs will be accounted for in the department's annual budget.

**3. Identify any laws, rules, and other legal requirements that may duplicate, overlap, or conflict with the proposed rules.**

The proposed MDCR rules are the substantial equivalent of the Federal civil rights laws here:
- Age Discrimination in Employment Act of 1967 (ADEA)
- Americans with Disabilities Act
- Fair Housing Act
- Individuals with Disabilities Education Act
- Rehabilitation Act of 1973
- Title II of the Civil Rights Act of 1964 (public accommodations)
- Title IV of the Civil Rights Act of 1964 (education)
- Title VI, Civil Rights Act of 1964
- Title IX of the Education Amendments Act of 1972
- Title VII of the Civil Rights Act of 1964 (employment)

**A. Explain how the rules have been coordinated, to the extent practicable, with other federal, state, and local laws applicable to the same activity or subject matter. This section should include a discussion of the efforts undertaken by the agency to avoid or minimize duplication.**

The Michigan Civil Rights laws are "substantially equivalent" to the federal civil rights laws. • MDCR is recognized by the EEOC as the Fair Employment Practice Agency (FEPA) for Michigan • MDCR is a HUD-designated Fair Housing Assistance Program agency (FHAP) • The EEOC and HUD provide funds to MDCR to investigate complaints of unlawful discrimination which are jurisdictional for both MDCR and the federal agencies. Thus, we follow federal guidelines in the execution of our contractual agreement with the federal government to investigate these federal matters, which result in the avoidance and minimize duplication.

**4. If MCL 24.232(8) applies and the proposed rules are more stringent than the applicable federally mandated standard, provide a statement of specific facts that establish the clear and convincing need to adopt the more stringent rules.**

The rules are not more stringent than EEOC or HUD standards.

**5. If MCL 24.232(9) applies and the proposed rules are more stringent than the applicable federal standard, provide either the Michigan statute that specifically authorizes the more stringent rules OR a statement of the specific facts that establish the clear and convincing need to adopt the more stringent rules.**

The rules are not more stringent than EEOC or HUD standards.

## Purpose and Objectives of the Rule(s)

**6. Identify the behavior and frequency of behavior that the proposed rules are designed to alter.**

Rule 37.2 Definitions.

The behavior and frequency of behavior occurs with every contact or "complaint" initiated with the department which averages 5,000+ times each year. Several new definitions are being added. They primarily address the need for more

MCL 24.245(3)

clarity in the complaint investigation process. Key in this regard is that the existing rules use the term "complaint" to apply to the legal document the department prepares and serves on respondents. However, when people come to us with their concerns, especially if they put them in writing, they believe they are filing a complaint. The result is not only confusion, but a perception that the department is denying someone the ability to even complain. We thus propose to call the allegations initially filed a complaint. If it is jurisdictional, we will "certify" it by creating the document now identified as a complaint and asking the claimant to sign. A certified complaint is one that is ready to be served on respondent to initiate an investigation.

Also being changed are the definitions describing how to file documents with us, and the counting of days for determining whether the documents are timely. These definitions are modeled after the ones in the Michigan Court Rules and ensure that when the date something is due falls on a day the office is not open, the document is not due until the next day when we are open. We also modernize the way documents can be filed with us to permit electronic service.

We added a definition for signature in order to notify parties that by signing they are attesting to the truthfulness of the document. This allows us to eliminate the present requirement for claimants to have their complaints notarized and the cost to MDCR to have a large number of notaries on staff. This process may have worked well when all complaints were filed in person, but it currently creates an unnecessary barrier for many claimants who must find, and often pay, a notary.

Finally, we add a definition for summary of complaint. This document is provided to claimants when their complaint is not within the department's jurisdiction. It is presently called a "statement of concern" which sounds like an affirmative action when it is really a denial of a request to certify a complaint.

Rule 37.5 Conciliation conference.

This rule is being revised to provide a clearer understanding of a conciliation conference, which is a last attempt to settle a matter to the satisfaction of the parties who otherwise face the commitment of time and resources necessary if it goes to hearing. It also explains what happens if a conciliation conference fails (the Department may conduct additional investigation, dismiss the Certified Complaint based on the investigation, or refer the Certified Complaint for legal review with a recommendation for a Charge and an administrative hearing).

Rule 37.6 Charge; issuance; refusal to issue.

This rule was minimally revised to include the new definitions of "mail and "electronic service".

Rule 37.7 Reconsideration of refusal to issue charge; request; hearing.

Reconsideration is an independent internal review process. This rule has been significantly changed to more clearly explain the reconsideration process and to inform parties of the criteria used. It is also an opportunity for the department to make certain we can support a decision to close a complaint which a party may then appeal to Circuit Court.

Rule 37.10 Charge; service.

Language updated to reflect the opportunity to serve documents electronically.

Rule 37.11 Answer to a charge.

Rule 11 describes the mandatory requirement that a respondent answer the allegation(s) when an investigation results in the department bringing a charge of discrimination, what the department must do upon receipt of the answer to a charge, and to permit the use of electronic service of the documents.

RIS-Page 6

Rule 37.12 Hearing on a charge.

The changes here are minor. They intend to make the rule read more clearly, and to count time in multiples of seven days for consistency.

Rule 37.25 Exemption from particular section of act; bona fide occupational qualification (BFOQ).
While the need to use a BFOQ may change over time, the present rules provide that the exception be unending. Whether the changes are societal, legal, or even technological, the department believes a decision to let an employer do what otherwise would be illegal discrimination should be reviewed periodically, or even withdrawn if it is being abused.

An example of when it may be appropriate might be if the Commission permits otherwise illegal weight and size restrictions for who may be employed to work with patients being transported by medical helicopter based on its determination that the restrictions were necessary to leave room for needed medical equipment. However, if the helicopters get larger or the equipment gets smaller it would be appropriate to reexamine whether the need for BFOQ remains the same. Likewise, if the commission learns a BFOQ is being used inappropriately, it should have the ability to revoke it.

Rule 37.28  Method for Calculation of Days.

This is a new section.  This section clarifies how various days referenced in the rules are to be calculated.

Rule 37.29. Mail and Electronic Service.

This is a new rule.  This rule provide guidance and clarity by defining the manner of mailing documents, the required format for electronically mailed documents, when emailed documents are deemed received, and proof of service requirements.

Rule 37.30.  Signatures.

This is a new section.  This section sets forth the rules regarding providing signatures on documents provided by claimants.

Rule 37.31.  Manner of Hearings.

This is a new section.  This section allows for remote hearing and sets for the rules around remote hearings.  It also sets forth the rules regarding request for in-person hearings.

**A. Estimate the change in the frequency of the targeted behavior expected from the proposed rules.**
As of September 13, 2021:
5,289 new complaint issue cases
o3,610 were closed with Summary of Complaint (i.e., lack of jurisdiction, untimely, etc.)
o906 are under evaluation
o773 were moved to investigation
1,125 investigations were completed by Civil Rights Investigators, reviewed/approved by Civil Rights Managers, and mailed out by Administrative Support.
2,509 investigations open in our current inventory.
The proposed rules will substantially reduce the time required to process complaints.

**B. Describe the difference between current behavior/practice and desired behavior/practice.**
Rule 37.4 Complaints.

These changes again relate to distinguishing between the "complaint" that is filed with the department and the "certified complaint" that is prepared and served by the department. It also clarifies that the department will assist

MCL 24.245(3)

someone wishing to file a complaint, but it is the department that will prepare the certified complaint for a claimant's signature.

They also provide for the use of electronic means for serving documents.

Rule 37.5 Conciliation conference.

This rule is being revised to provide a clearer understanding of a conciliation conference, which is a last attempt to settle a matter to the satisfaction of the parties who otherwise face the commitment of time and resources necessary if it goes to hearing. It also explains what happens if a conciliation conference fails (the Department may conduct additional investigation, dismiss the Certified Complaint based on the investigation, or refer the Certified Complaint for legal review with a recommendation for a Charge and an administrative hearing).

Rule 37.6 Charge; issuance; refusal to issue.

This rule was minimally revised to include the new definitions of "mail and "electronic service".

Rule 37.7 Reconsideration of refusal to issue charge; request; hearing.

This section has been significantly changed to describe the reconsideration process more clearly, and to inform parties of the criteria being used. Reconsideration is a process much like an appeal, though it stays within the department as the actual appeal would be filed in circuit court. It is an opportunity for the department to make certain we can support a decision to close a case if an appeal is filed.

Rule 37.10 Charge; service.

Language updated to reflect the opportunity to serve documents electronically.

Rule 37.11 Answer to a charge.

Rule 11 describes the mandatory requirement that a respondent answer the allegation(s) when an investigation results in the department bringing a charge of discrimination, what the department must do upon receipt of the answer to a charge, and to permit the use of electronic service of the documents.

Rule 37.12 Hearing on a charge.

The changes here are minor. They intend to make the rule read more clearly, and to count time in multiples of seven days for consistency.

Rule 37.25 Exemption from particular section of act; bona fide occupational qualification (BFOQ).
While the need to use a BFOQ may change over time, the present rules provide that the exception be unending. Whether the changes are societal, legal, or even technological, the department believes a decision to let an employer do what otherwise would be illegal discrimination should be reviewed periodically, or even withdrawn if it is being abused.

An example of when it may be appropriate might be if the Commission permits otherwise illegal weight and size restrictions for who may be employed to work with patients being transported by medical helicopter based on its determination that the restrictions were necessary to leave room for needed medical equipment. However, if the helicopters get larger or the equipment gets smaller it would be appropriate to reexamine whether the need for BFOQ remains the same. Likewise, if the commission learns a BFOQ is being used inappropriately, it should have the ability to revoke it.

**C. What is the desired outcome?**

MCL 24.245(3)

RIS-Page 8

The desired outcome is to streamline and expedite the MDCR complaint process with clearer definitions and the use of electronic means for serving documents.

**7. Identify the harm resulting from the behavior that the proposed rules are designed to alter and the likelihood that the harm will occur in the absence of the rule.**

Key in this regard is that the existing rules use the term "complaint" to apply to the legal document the department prepares and serves on respondents. However, when people come to us with their concerns, especially if they put them in writing, they believe they are filing a complaint. The result is not only confusion, but a perception that the department is denying someone the ability to even complain.

**A. What is the rationale for changing the rules instead of leaving them as currently written?**

If it is jurisdictional, we will "certify" it by creating the document now identified as a complaint and asking the claimant to sign. A certified complaint is one that is ready to be served on respondent to initiate an investigation. Electronic filing of complaints and service on respondents will expedite complaint resolution.

**8. Describe how the proposed rules protect the health, safety, and welfare of Michigan citizens while promoting a regulatory environment in Michigan that is the least burdensome alternative for those required to comply.**

MDCR investigates complaints to determine whether unlawful discrimination occurred. While investigating a complaint, MDCR is impartial and does not act as an advocate or representative for either party. MDCR is an administrative agency with investigative and enforcement authority. The Enforcement Process includes all of the tasks performed when a customer interacts with MDCR about a civil rights-related need or concern, including investigation and resolution of complaints of discrimination, outreach and education, and community relations. State and/or federal laws prohibit housing discrimination on the basis of: Race or Color, Religion, Familial status, National origin, Sex, Disability, Age, Marital status. MDCR investigates housing discrimination against the listed protected classes. MDCR provides training for Disability, Diversity, Diversity for Schools, Sexual Harassment for Employees, Sexual Harassment for Managers, Housing, Hate Crime, Discriminatory Harassment, Building Cultural Competence, and General Civil Rights Law. MDCR researches and advises on key bills introduced in the House and Senate potentially impacting civil rights in Michigan.

**9. Describe any rules in the affected rule set that are obsolete or unnecessary and can be rescinded.**

Amendment of existing rules is sought not rescission.

Rule 3.2 Definitions. The existing rules use the term "complaint" to apply to the legal document the department prepares and serves on respondents. Also being changed are the definitions describing how to file documents with us, and the counting of days for determining whether the documents are timely. We also modernize the way documents can be filed with us to permit electronic service. We add a definition for signature in order to notify parties that by signing they are attesting to the truthfulness of the document.

Rule 37.4 Complaints. These changes again relate to distinguishing between the "complaint" that is filed with the department and the "certified complaint" that is prepared and served by the department.

Rule 37.5 Conciliation conference. This rule is being revised to provide a clearer understanding of a conciliation conference, which is a last attempt to settle a matter to the satisfaction of the parties who otherwise face the commitment of time and resources necessary if it goes to hearing. It also explains what happens if a conciliation conference fails (the Department may conduct additional investigation, dismiss the Certified Complaint based on the investigation or refer the Certified Complaint for legal review with a recommendation for a Charge and an administrative hearing.

Rule 37.6 Charge; issuance; refusal to issue. This rule was minimally revised to include the new definitions of "mail and "electronic service".

Rule 37.7 Reconsideration of refusal to issue charge; request; hearing. This section has been significantly changed to describe the reconsideration process more clearly, and to inform parties of the criteria being used.

Rule 37.10 Charge; service. Language updated to reflect the opportunity to serve documents electronically.

Rule 37.11 Answer to a charge. Rule 11 describes the mandatory requirement that a respondent answer the allegation(s) when an investigation results in the department bringing a charge of discrimination, what the department must do upon receipt of the answer to a charge, and to permit the use of electronic service of the documents.

Rule 37.12 Hearing on a charge. They intend to make the rule read more clearly, and to count time in multiples of seven days for consistency.

Rule 37.25 Exemption from particular section of act; bona fide occupational qualification (BFOQ). While the need to use a BFOQ may change over time, the present rules provide that the exception be unending. Whether the changes are societal, legal, or even technological, the department believes a decision to let an employer do what otherwise would be illegal discrimination should be reviewed periodically, or even withdrawn if it is being abused.

## Fiscal Impact on the Agency

Fiscal impact is an increase or decrease in expenditures from the current level of expenditures, i.e. hiring additional staff, higher contract costs, programming costs, changes in reimbursements rates, etc. over and above what is currently expended for that function. It does not include more intangible costs for benefits, such as opportunity costs, the value of time saved or lost, etc., unless those issues result in a measurable impact on expenditures.

**10. Please provide the fiscal impact on the agency (an estimate of the cost of rule imposition or potential savings for the agency promulgating the rule).**
The value of time saved is an intangible cost with no measurable impact available yet.

**11. Describe whether or not an agency appropriation has been made or a funding source provided for any expenditures associated with the proposed rules.**
No MDCR appropriation has been made as there is only the intangible cost of value of time saved.

RIS-Page 10

**12. Describe how the proposed rules are necessary and suitable to accomplish their purpose, in relationship to the burden(s) the rules place on individuals. Burdens may include fiscal or administrative burdens, or duplicative acts.**

Redefining allegations as complaints once signed, permitting electronic service of documents, clarifying conciliation conferences and charges, allowing electronic service, requiring an answer to a MDCR charge of discrimination, counting time in multiples of seven days, periodic review of BFOQ decisions and allowing for remote hearings are rational ways to achieve MDRC goals. There are no fiscal or administrative burdens.

**A. Despite the identified burden(s), identify how the requirements in the rules are still needed and reasonable compared to the burdens.**

There are no fiscal or administrative burdens or duplicative acts.

## Impact on Other State or Local Governmental Units

**13. Estimate any increase or decrease in revenues to other state or local governmental units (i.e. cities, counties, school districts) as a result of the rule. Estimate the cost increases or reductions for other state or local governmental units (i.e. cities, counties, school districts) as a result of the rule. Include the cost of equipment, supplies, labor, and increased administrative costs in both the initial imposition of the rule and any ongoing monitoring.**

There will be a neutral revenue impact on state governmental units and municipalities.

**14. Discuss any program, service, duty, or responsibility imposed upon any city, county, town, village, or school district by the rules.**

The proposed rules do not impose any service, duty, or responsibility on municipalities except periodic review by MDCR of BFOQs.

**A. Describe any actions that governmental units must take to be in compliance with the rules. This section should include items such as record keeping and reporting requirements or changing operational practices.**

Rule 37.25 Exemption from particular section of act; bona fide occupational qualification (BFOQ). While the need to use a BFOQ may change over time, the present rules provide that the exception be unending. Whether the changes are societal, legal, or even technological, the department believes a decision to let an employer do what otherwise would be illegal discrimination should be reviewed periodically, or even withdrawn if it is being abused.

An example of when it may be appropriate might be if the Commission permits otherwise illegal weight and size restrictions for who may be employed to work with patients being transported by medical helicopter based on its determination that the restrictions were necessary to leave room for needed medical equipment. However, if the helicopters get larger or the equipment gets smaller it would be appropriate to reexamine whether the need for BFOQ remains the same. Likewise, if the commission learns a BFOQ is being used inappropriately, it should have the ability to revoke it.

**15. Describe whether or not an appropriation to state or local governmental units has been made or a funding source provided for any additional expenditures associated with the proposed rules.**

There will be a neutral revenue impact on state governmental units and municipalities. Any additional expenditure associated with the proposed rules are de minimus and have been provided for in the the department's budget.

## Rural Impact

**16. In general, what impact will the rules have on rural areas?**

Electronic service will facilitate the ability for rural residents to file and respond to civil rights complaints. Moreover, allowing for remote hearings will ostensibly make it easier for complainants from rural areas without having to travel to locations that may be a great distance from their home.

**A. Describe the types of public or private interests in rural areas that will be affected by the rules.**

The Department of Civil Rights investigates and resolves discrimination complaints and works to prevent discrimination through educational programs that promote voluntary compliance with civil rights laws. The proposed rules will facilitate public and private enjoyment of civil rights in rural areas.

MCL 24.245(3)

## Environmental Impact

**17. Do the proposed rules have any impact on the environment? If yes, please explain.**
Electronic service is carbon neutral and will reduce fuel consumption for in person service.

## Small Business Impact Statement

**18. Describe whether and how the agency considered exempting small businesses from the proposed rules.**
The Michigan Civil Rights laws prohibit discriminatory practices, policies, and customs in the exercise of those rights based upon religion, race, color, national origin, age, sex, height, weight, familial status, or marital status . . . and are applied equally to all business regardless of size. The law does not permit exempting a small business from these protections.

**19. If small businesses are not exempt, describe (a) the manner in which the agency reduced the economic impact of the proposed rules on small businesses, including a detailed recitation of the efforts of the agency to comply with the mandate to reduce the disproportionate impact of the rules upon small businesses as described below (in accordance with MCL 24.240(1)(a-d)), or (b) the reasons such a reduction was not lawful or feasible.**
State and Federal civil rights laws do not permit exempting a small business from the protections afforded by these laws. Also, there is no evidence that these proposed rules disproportionately impact small businesses.

**A. Identify and estimate the number of small businesses affected by the proposed rules and the probable effect on small businesses.**
Every business positively benefits from an environment free from discriminatory practices, policies, and customs. It is a shared benefit for employees, customers, visitors, etc. Michigan has 765,487 small businesses, according to the most current federal data available. Of those 765,487 small businesses in Michigan, 209,751 have employees.
https://www.gaebler.com/Number-of-Small-Businesss-in-Michigan.htm

**B. Describe how the agency established differing compliance or reporting requirements or timetables for small businesses under the rules after projecting the required reporting, record-keeping, and other administrative costs.**
The law and court decisions prohibit different requirements for small businesses. Also, the rules themselves do not innately have compliance, reporting requirements or timetables. The rules are activated upon an alleged violation of the law when a certified complaint has been filed. The proposed rules are more convenient and save time and money compared to in person notarized filing of complaints.

**C. Describe how the agency consolidated or simplified the compliance and reporting requirements for small businesses and identify the skills necessary to comply with the reporting requirements.**
No compliance and/or reporting requirements exist.

**D. Describe how the agency established performance standards to replace design or operation standards required by the proposed rules.**
Performance standards are set by court decision, or industry legal standards and are not changed or replaced by the proposed rules.

**20. Identify any disproportionate impact the proposed rules may have on small businesses because of their size or geographic location.**
No disproportionate impact has been identified.

**21. Identify the nature of any report and the estimated cost of its preparation by small businesses required to comply with the proposed rules.**
If a certified complaint is filed and an investigation of discrimination occurs, costs to a business for interrogatories are estimated at less than $250.

**22. Analyze the costs of compliance for all small businesses affected by the proposed rules, including costs of equipment, supplies, labor, and increased administrative costs.**
If a certified complaint is filed and an investigation of discrimination occurs, costs to a business for interrogatories are estimated at less than $250.

**23. Identify the nature and estimated cost of any legal, consulting, or accounting services that small businesses would incur in complying with the proposed rules.**

RIS-Page 12

If a certified complaint is filed and an investigation of discrimination begins, a small business may decide to represent themselves, be represented by Human Resources, or hire a lawyer. As such the estimated additional cost may range from $0 or higher depending on the option chosen.

**24. Estimate the ability of small businesses to absorb the costs without suffering economic harm and without adversely affecting competition in the marketplace.**

Compliance with the Michigan Constitution and the Elliot-Larsen Civil Rights Act (ELCRA) is appropriate and necessary to conduct business in Michigan.

**25. Estimate the cost, if any, to the agency of administering or enforcing a rule that exempts or sets lesser standards for compliance by small businesses.**

The Michigan Constitution, Article V, Section 29, ELCRA, and the Persons with Disabilities Civil Rights Act precludes exemptions or lesser standards for small businesses. It is a violation of law.

**26. Identify the impact on the public interest of exempting or setting lesser standards of compliance for small businesses.**

Violation of Michigan Constitution, Article V, Section 29 would be unconstitutional. It also would violate state and federal civil rights laws.

**27. Describe whether and how the agency has involved small businesses in the development of the proposed rules.**

The current version of the rules had business input during public hearings. Businesses will have the same opportunity to participate in public hearings regarding these proposed rules.

**A. If small businesses were involved in the development of the rules, please identify the business(es).**

At the 5-24-2024 Michigan Civil Rights Commission Meeting, presentations on Economic Equity for Minority & Women Owned Businesses were made by Michigan Minority Supplier and Development Council (MMSDC), West Michigan Hispanic Chamber of Commerce, National Business League, Inc., Walker-Miller Energy Services. The focus was economic equity for minority and women-owed businesses. Every business positively benefits from an environment free from discriminatory practices, policies, and customs. It is a shared benefit for employees, customers, visitors, etc.

## Cost-Benefit Analysis of Rules (independent of statutory impact)

**28. Estimate the actual statewide compliance costs of the rule amendments on businesses or groups.**

The estimated statewide compliance costs on businesses and groups are $0.

**A. Identify the businesses or groups who will be directly affected by, bear the cost of, or directly benefit from the proposed rules.**

There are no businesses or groups financially affected by the proposed rules.

**B. What additional costs will be imposed on businesses and other groups as a result of these proposed rules (i.e. new equipment, supplies, labor, accounting, or recordkeeping)? Please identify the types and number of businesses and groups. Be sure to quantify how each entity will be affected.**

There are no estimated additional costs on businesses or groups as a result of the proposed rules.

**29. Estimate the actual statewide compliance costs of the proposed rules on individuals (regulated individuals or the public). Include the costs of education, training, application fees, examination fees, license fees, new equipment, supplies, labor, accounting, or recordkeeping.**

There are no estimated additional costs on regulated individuals or the public as a result of the proposed rules.

**A. How many and what category of individuals will be affected by the rules?**

The public is affected by the rules. Since January 01, 2018, 10,525 case investigations have been filed with MDCR.

**B. What qualitative and quantitative impact do the proposed changes in rules have on these individuals?**

Proposed changes in rules will expedite processing complaints; reduce claimant costs to file.

**30. Quantify any cost reductions to businesses, individuals, groups of individuals, or governmental units as a result of the proposed rules.**

The cost of notarizing complaints will be eliminated. On average Claimants pay $10 for a notarial act. Based on three-year total this could average $35,083 per year.

**31. Estimate the primary and direct benefits and any secondary or indirect benefits of the proposed rules. Please provide both quantitative and qualitative information, as well as your assumptions.**

Expedited complaint processing and resolution are primary benefits of the proposed rules. Electronic service expedites filing complaints for approximately 10,525 Claimants and # 10,525 respondents.

**32. Explain how the proposed rules will impact business growth and job creation (or elimination) in Michigan.**

Increased enjoyment of civil rights will enhance Michigan's business growth and job creation in Michigan.

**33. Identify any individuals or businesses who will be disproportionately affected by the rules as a result of their industrial sector, segment of the public, business size, or geographic location.**

Notaries who charge for services may be disproportionally affected as notarized complaints will not be required.

**34. Identify the sources the agency relied upon in compiling the regulatory impact statement, including the methodology utilized in determining the existence and extent of the impact of the proposed rules and a cost-benefit analysis of the proposed rules.**

Using the Civil Rights Information System (CRIS) a caseload report was created to list the known Complaint Investigations filed on or after January 01, 2018 to present. This counts both claimants and respondents.

**A. How were estimates made, and what were your assumptions? Include internal and external sources, published reports, information provided by associations or organizations, etc., that demonstrate a need for the proposed rules.**

The proposed rule is for clarity; external sources and financial reports were not relevant. Customer information is entered into the Civil Rights Information System (CRIS), concern is provided a MDCR contact number and assigned to a Civil Rights Claims Examiner. Intake Civil Rights Examiner (CRE) discusses concerns with customer to determine jurisdiction (basis, area, adverse action, timeliness-State 180 days, EEOC 300 days, HUD 365 days). Telephone or virtual appointments are scheduled upon request. Per policy, the standard timeframe for completion of evaluation is two business days of contact.

If non jurisdictional, customer will receive a Statement of Concern (SOC) informing why a formal complaint cannot be processed.

a. Customer has 30 days from the SOC date to appeal the decision.

If jurisdictional, an intake interview will be completed, formal complaint drafted and sent to the customer for their notarized signature. Per policy, the standard timeframe for completion of complainant initiation is 21 days.

b. If customer fails to return the signed/notarized complaint, customer will receive a Statement of Concern (SOC) informing the contact is closed for failure to return the formal complaint.

c. Customer has 30 days from the SOC date to appeal the decision.

Upon receipt of the signed notarized compliant, the Intake Supervision reassigns the formal complaint to an Enforcement Team and the Civil Rights Manager (CRM) assigns the case to a Civil Rights Investigator (CRI). Our goal is to complete investigations in 180 days. Please note that many variables impact this, including some of which are out of our control as investigation are heavily reliable on claimants and respondents.

Resolution/ settlement can be attempted at any stage of the investigation process and the case can be withdrawn at any stage of the process.

Claimant and respondent are sent the Notice of Formal Complaint and relevant forms.

Respondent is sent an Order and is requested to provide a detailed position statement with supporting documentation within 14 days. Once received, this information is reviewed with Claimant for their rebuttal.

a. If Respondent fails to respond, another Order and comprehensive set of interrogatories are sent to the Respondent with a due date of 28 days.

b. If Respondent does not comply after numerous attempts, the matter is referred to Assistant Attorney General for enforcement.

CRI requests additional necessary documentation conducts interviews (Respondent decision maker, Claimant and Respondent witnesses), requests information on comparatives and analyzes all information to determine finding. Element guides/models of proof determine if there is sufficient evidence of discrimination; this is the same as jury instructions.

Investigative Report is written (if case is not closed for other reason, i.e., i.e., settled or withdrawn, or closed for any other administrative reason such as in court).

a. If insufficient evidence, an Exit Interview is conducted with claimant to inform of the reason for the finding.

b. Case is closed, Notices of Disposition mailed to Claimant and Respondent, and Claimant has 30 days to appeal finding.

If sufficient evidence, case is referred to Staff Attorney for Conciliation.

MCL 24.245(3)

RIS-Page 14

## Alternative to Regulation

**35. Identify any reasonable alternatives to the proposed rules that would achieve the same or similar goals.**
There are no reasonable, cost or time effective alternatives to the proposed rules.

**A. Please include any statutory amendments that may be necessary to achieve such alternatives.**
There are no statutory amendments for alternatives necessary as there are no practical, cost or time effective alternatives to the proposed rules.

**36. Discuss the feasibility of establishing a regulatory program similar to that proposed in the rules that would operate through private market-based mechanisms. Please include a discussion of private market-based systems utilized by other states.**
There are no feasible, cost or time effective private market-based systems utilized by other states.

**37. Discuss all significant alternatives the agency considered during rule development and why they were not incorporated into the rules. This section should include ideas considered both during internal discussions and discussions with stakeholders, affected parties, or advisory groups.**
There are no practical, cost or time effective alternatives to the proposed rules.

## Additional Information

**38. As required by MCL 24.245b(1)(c), please describe any instructions regarding the method of complying with the rules, if applicable.**
Administrative Procedures Act of 1969, Act 306 of 1969, 24.245b. Proposed rules information to be posted on the LARA website.

MCL 24.245(3)