IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Christian Healthcare Centers, Inc.** <br><br> Plaintiff, <br><br> v. <br><br> **Dana Nessel,** in her official capacity as Attorney General of Michigan; **John E. Johnson, Jr.,** in his official capacity as Executive Director of the Michigan Department of Civil Rights; **Portia L. Roberson, Zenna Faraj Elhason, Gloria E. Lara, Regina Gasco-Bentley, Anupama Kosaraju, Richard Corriveau,** and **David Worthams,** in their official capacities as members of the Michigan Civil Rights Commission. <br><br> Defendants. | **Case No. 1:22-cv-000787-JMB-PTG** <br><br> **Plaintiff's Motion for Reconsideration** |

## Introduction

In prior briefing, Michigan argued against Christian Healthcare's standing because the ministry *might* receive some exemption after violating the law, suffering through a burdensome investigatory process, and defending itself in an exhausting administrative hearing. Michigan also suggested that exemptions or bona fide occupational qualifications ("BFOQ") *could*—perhaps—apply to Christian Healthcare after the ministry goes through a similarly burdensome administrative application process. But new evidence shows that these post-violation, someday exemptions conflict with current law and Michigan's historical practice.

Michigan's legislature just added sexual orientation and gender identity or expression to the Elliot-Larsen Civil Rights Act. During the amendment process, the legislature rejected all proposed religious exemptions and castigated those with the ministry's beliefs as "bigots" and "discriminators." Michigan also recently produced hundreds of pages of BFOQ documents in response to a Freedom of Information Act ("FOIA") request. Not once has Michigan granted a religious BFOQ of the type that would protect the ministry's employment decisions.

This information was not previously available to Christian Healthcare or this Court. But this new evidence confirms the credible threat to Christian Healthcare. For that reason, Christian Healthcare respectfully requests this Court to reconsider its order granting Michigan's motion to dismiss and then to vacate that order and judgment, deny Michigan's motion to dismiss, and grant the ministry's requested injunction.

## New Evidence

Two categories of new evidence support Christian Healthcare's standing: documents associated with recent amendments to the ELCRA and BFOQ documents produced by Michigan in response to a FOIA request.

1

**ELCRA Amendments.** In March 2023, Michigan's legislature amended ELCRA by including "sexual orientation" and "gender identity or expression" as protected classes. Pl.'s App. in Supp. of Mot. for Reconsideration ("App.") 304–19. The amendments codified the holding in *Rouch World, LLC v. Dep't of C.R.*, No. 162482, 2022 WL 3007805 (Mich. July 28, 2022). The law defines "gender identity or expression" as "having or being perceived as having a gender-related self-identity or expression whether or not associated with an individual's assigned sex at birth." MCL 37.2103(f), *available at* https://bit.ly/3K0O11h. Governor Whitmer signed the bill into law on March 16, 2023.

Michigan's House and Senate rejected all proposed religious exemptions. These proposals would have protected individuals from being forced to "violate [their] sincerely held religious beliefs," exempted religious employers, and codified the ministerial exception. App. 255–59, 276–79, 286–290. Michigan's legislature also did not add "sexual orientation" or "gender identity or expression" as a basis for a BFOQ. App. 311 (not amending MCL 37.2208). Several Michigan legislators explained why they voted against these protections:

- "I don't think it is appropriate to allow the government to let religion discriminate against someone because of their sexual orientation or gender identity. Why would we allow government only to deny LGBTQ rights in the name of religion?" Senate Comm. Test. 1:23:20–1:23:36 (Feb. 9, 2023), https://bit.ly/40q57MP;
- "I think keeping religious orientation, identity, and expression out of Elliott-Larsen as a weapon against the LGBTQ community is very appropriate." *Id.* at 1:23:55–1:24:07;
- "This whole concept of adding religious identity and expression is clouding the issue. … and my real concern with it is that it represents a license to discriminate. That is what we've seen time and time again from folks

2

who've tried to say that they should have this religious exemption from laws that protect people from discrimination." *Id*. at 1:24:38-1:25:05;

- "[T]his state in the past has allowed religion to discriminate against LGBTQ people outside the walls of a religious institution." App. 260;

- "Should your religious views trump all laws and give you a license to discriminate? I say, No. … It's been too long that we've allowed bigotry and discrimination to rule." App. 267;

- "[N]o no one's religious beliefs no matter how sincerely they hold them or how righteous and god-blessed they think they are an excuse for the oppression of others." App. 268; and

- "To those making the argument for religious liberty: Bigotry under a veneer of religion is still bigotry." App. 323.

During his supporting testimony, Commissioner Luke Londo advocated for the position that "it should be illegal to discriminate against someone on the basis of sexual orientation, gender identity or expression *even if it conflicts with their own religious beliefs*." Senate Comm. Test. 25:00-25:10 (Feb. 2, 2023) (emphasis added), https://bit.ly/3KdEkh8. Commissioner Londo also endorsed a Tweet that criticized proposed religious exemptions as "allow[ing] #LGBTQ discrimination in the name of religion" and "permit[ting] a person to deny anyone goods or services, to fire or evict them, as long as religion is the reason." App. 273.

Attorney General Nessel and the Commission wholeheartedly celebrated these amendments that squashed religious accommodations. Attorney General Nessel said the amendments "provide immediate enhanced dignity for thousands of Michiganders" who should all "be free from discrimination in employment, public accommodations, … and educational facilities." App. 322. She also claimed the amendments were necessary to protect against "future legal attacks." *Id*. The Commission echoed this support. Commissioner Robertson proclaimed that now "all

3

Michiganders will reap the benefits of our state becoming a more welcoming place for everyone to live, work and play." App. 320. And Director Johnson praised the amendments and stated that "we will defend our freedom." App. 321.

**BFOQ Documents.** Also in March 2023, Michigan produced over eight hundred pages of documents in response to a FOIA request. Hoff Decl. in Supp. of Pl.'s Mot. for Reconsideration ("Hoff Decl."), ¶ 8. Those documents included four granted religious BFOQ exemptions (two for religious schools, one for a church, and one for a counseling ministry) and a list of previously granted and denied BFOQs from 1977 through 1996. App. 324–61.

## Argument

Christian Healthcare moves for reconsideration under Local Rule 7.4(a) and Federal Rules of Civil Procedure 59(e) and 60(b)(2).

Local Rule 7.4(a) authorizes reconsideration when the moving party shows "a palpable defect by which the court … ha[s] been misled" and that correcting the defect would lead to "a different disposition." New evidence that alters a previous conclusion counts as a "palpable defect." *See DirecTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 921 (E.D. Mich. 2003) (granting motion for reconsideration based on new evidence that affected summary judgment disposition). Rules 59(e) and 60(b)(2) apply the "same standard." § 2808 Grounds for New Trial—Newly Discovered Evidence, 11 Fed. Prac. & Proc. Civ. § 2808 (3d ed.). Under that standard, relief from judgment is appropriate based on previously unavailable new evidence that would produce a different result if presented before the original judgment. *E.g.*, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012).

To summarize these rules: a moving party must show that (I) newly discovered—but previously unavailable—evidence, (II) would have produced a

4

different result if considered prior to judgment. The amendment, surrounding evidence, and BFOQs meet both requirements.[1]

## I. Michigan's amendment history and the BFOQ documents are new evidence.

Christian Healthcare could not have included Michigan's amendment history or the BFOQ documents in its response to Michigan's motion to dismiss. Christian Healthcare's response to Michigan's motion was due on December 23, 2022. Order, PageID.485. Michigan didn't amend its law or make the public comments described above until February 2023 or later. And not even Michigan knew about its own BFOQ records until recently. Michigan identified some BFOQ documents in January 2023. Trevino Decl. ¶ 5, PageID.770 (describing this "newfound information"). Then, in March 2023, Michigan produced over eight hundred pages of BFOQ documents dating back decades. Hoff Decl. ¶ 8. Under any definition, evidence created or produced two months after a filing deadline is new evidence that was previously unavailable.

## II. The new evidence should alter the judgment because it refutes Michigan's arguments about possible exemptions.

The ELCRA amendments and Michigan's BFOQ documents should also alter the judgment granting Michigan's motion to dismiss and denying the ministry's

---

[1] This new evidence confirms that the ELCRA harms Christian Healthcare in the ways already alleged in the complaint and in no way alters the requested relief in the complaint. Moreover, this information can be considered now. Michigan raised and this Court considered evidence outside of the complaint. *E.g.*, Order, PageID.858 (citing Trevino affidavit). For those factual attacks on jurisdiction, courts may consider external evidence. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). And the new evidence is admissible because it is judicially noticeable as public records, as government records, and as files created by the Commission. *See U.S. ex rel. Dingle v. BioPort Corp.*, 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (noticing congressional hearings and undisputed newspaper article); *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862–63 (N.D. Ohio 2013) (noticing EEOC and Ohio Civil Rights Commission files).

5

preliminary-injunction motion because this evidence refutes Michigan's claims about *possible* exemptions.

**ELCRA Amendments.** The ELCRA amendments—and Michigan's statements surrounding those amendments—support the ministry's standing and ripeness in three ways.

*First*, the addition of "gender identity or expression" confirms that the ministry's current pronoun, cross-sex hormone, and employment policies and practices and statements explaining those policies at least arguably violate the Accommodation, Employment, Publication, and Notice Clauses. As the ministry explained in prior briefing, jurisdictions with similar language have already applied their laws in ways that the ministry fears here in Michigan. Pl.'s Opp'n to Defs.' Mot. to Dismiss ("MTD Resp.") PageID.614–20.

*Second*, the recent change bolsters the presumption of a credible enforcement threat. *Id.* at PageID.629–630 (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988)). When legislatures pass laws, courts assume they'll be enforced.

*Third*, this information and Michigan's own comments undercut its veiled suggestion that it may grant atextual and heretofore unrecognized religious exemptions, affirmative defenses, or BFOQs to Christian Healthcare. Michigan's legislature considered those exemptions and rejected them. And Attorney General Nessel and the Commission praised the amendments without the religious accommodations as necessary to protect "all Michiganders" and to ensure the law could withstand "future legal attacks." App. 320, 322. Michigan's assertions that it *might* someday provide future exemptions is not believable and does not negate the credible threat created by Michigan law now. *See* MTD Resp., PageID.630–38.

6

**BFOQ Documents.** The BFOQ documents undermine Michigan's argument that Christian Healthcare lacks standing because it *could* receive a religious BFOQ exemption.

In the almost fifty-year history of the law, Michigan has granted only four religious BFOQ exemptions. App. 324–41. None of the exemptions applied to a medical ministry like Christian Healthcare. And none relieve the current threats to Christian Healthcare's ministry. Michigan has no examples of it ever granting any employer a religious BFOQ based on sex, sexual orientation, or gender identity. Indeed, sexual orientation and gender identity and expression aren't even listed as potential bases for a BFOQ. App. 311 (not amending MCL 37.2208).

The previously granted exemptions were also narrow. Two applied only to faculty members who taught religion or who were responsible for "the implementation of the teaching." App. 333, 338. Of those two, one excluded "support staff, clerical or maintenance personnel" and the other excluded "janitorial staff, physical education teacher[s] and office personnel." App. 333–34. A third exemption described itself as "narrowly focused" to apply to enumerated pastorate or ministry director positions at a church. App. 327. And the final exemption—from 1980—applied to a ministry's counselors. App. 339–41.

Christian Healthcare meanwhile requires *all staff*—including member services coordinators, member services/receptionist, nurses, office managers, custodians, and medical assistants—to agree with and abide by the ministry's religious beliefs. Compl. ¶¶ 155–71, 198, PageID.24–26. Michigan's previous BFOQs offer no reason to believe that Michigan would grant a BFOQ for all of Christian Healthcare's staff, including these positions. Just the opposite. Even previously granted religious BFOQs explicitly refused to cover support staff and janitors. App. 333–34.

So Michigan's past practice and current stance demonstrate the futility of Christian Healthcare requesting BFOQs for all of its staff. MTD Resp., PageID.641–642.

## Conclusion

This new evidence rebuts Michigan argument that Christian Healthcare lacks standing because of unsubstantiated claims of exemptions and defenses built into the law. The law has no such exemptions. Michigan's legislature explicitly rejected them. And Michigan has never granted a religious BFOQ for all employees of an entity like Christian Healthcare. For these reasons, Christian Healthcare respectfully requests this Court to reconsider its order granting Michigan's motion to dismiss and vacate that order and judgment, deny Michigan's motion to dismiss, and grant the ministry's requested injunction.

Respectfully submitted this 4th day of April, 2023.

|  |  |
|---|---|
|  | By: s/ John J. Bursch |
| Jonathan A. Scruggs | John J. Bursch |
| Arizona Bar No. 030505 | Michigan Bar No. P57679 |
| Ryan J. Tucker | **Alliance Defending Freedom** |
| Arizona Bar No. 034382 | 440 First Street NW, Suite 600 |
| Henry W. Frampton, IV | Washington, DC 20001 |
| South Carolina Bar No. 75314 | (202) 393-8690 |
| Bryan D. Neihart | (202) 347-3622 Fax |
| Arizona Bar No. 035937 | jbursch@ADFlegal.org |
| **Alliance Defending Freedom** |  |
| 15100 N. 90th Street |  |
| Scottsdale, Arizona 85260 |  |
| (480) 444-0020 |  |
| (480) 444-0028 Fax |  |
| jscruggs@ADFlegal.org |  |
| rtucker@ADFlegal.org |  |
| hframpton@ADFlegal.org |  |
| bneihart@ADFlegal.org |  |

*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that on April 4, 2023, I electronically filed the foregoing document with the Clerk of Court and that the foregoing document will be served via the CM/ECF system on all counsel of record.

By: s/ John J. Bursch

John J. Bursch
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001

*Attorney for Plaintiff*