IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Christian Healthcare Centers, Inc.** <br><br> Plaintiff, <br><br> v. <br><br> **Dana Nessel,** in her official capacity as Attorney General of Michigan; **John E. Johnson, Jr.,** in his official capacity as Executive Director of the Michigan Department of Civil Rights; **Portia L. Roberson, Zenna Faraj Elhason, Gloria E. Lara, Richard Corriveau, David Worthams,** and **Luke Londo** in their official capacities as members of the Michigan Civil Rights Commission. <br><br> Defendants. | Case No. 1:22-cv-000787-JMB-PTG <br><br> **Plaintiff's Supplemental Brief and Evidence in Support of its Motion for Reconsideration** |

## Introduction

In prior briefing, Michigan tried to defeat Christian Healthcare Center Inc.'s standing by claiming that "[n]either the Attorney General nor the Department of Civil Rights have initiated any investigation or action against any religious entity based upon sexual orientation or gender identity since those categories garnered protection …." Defs.' Br. in Opp'n to Pl.'s Mot. for Prelim. Inj. (Defs.' MPI Resp.), PageID.502–503. New evidence shows that is now demonstrably false. Michigan just initiated an investigation into Catholic Charities of Shiawassee & Genesee Counties (Catholic Charities) based on a gender-identity complaint. Michigan's invasive investigation of Catholic Charities demands that the Catholic entity disclose information about "all employees" "all other properties," and policies and trainings. And Michigan imposes that burden all before even issuing a formal charge or before finding the complaint has sufficient evidence. *See* Ex. A.

This information was not previously available to Christian Healthcare. And this new investigation reaffirms that Christian Healthcare faces a credible threat of prosecution under Michigan's law and buttresses the evidence Christian Healthcare put forth in its Motion for Reconsideration. Pls.' Mot. for Reconsideration, PageID.879–887. For these reasons, Christian Healthcare respectfully asks this Court to consider this new evidence, reconsider its order granting Michigan's motion to dismiss and then to vacate that order and judgment, deny Michigan's motion to dismiss, and grant the ministry's requested injunction.

## New Evidence

Catholic Charities' mission "is the work of the Catholic Church, to share the love of Christ by performing corporal and spiritual works of mercy." *Mission, Vision, Values*, Catholic Charities, https://bit.ly/3pfb8OX (last visited May 5, 2023). To fulfill this mission, Catholic Charities feeds the hungry, houses the homeless, clothes the naked, and provides countless other services to community members in

1

need. Catholic Charities, https://bit.ly/3LxHXhs (last visited May 8, 2023). And the charity serves everyone. On the front page of its website, Catholic Charities says "Not Catholic? No Problem. We Serve All People." *Id.*

But on April 13, 2023, someone filed a gender-identity discrimination complaint against Catholic Charities. *See* Ex. A at 4. On May 3, 2023, Michigan's Department of Civil Rights served the complaint. The Order outlined the investigation procedure, advised Catholic Charities of its right to have an attorney, and ordered Catholic Charities to produce numerous documents. *Id.* at 3, 7–8. The Order warned that "failure to comply with this order may subject you to enforcement proceedings in the Circuit Court of the State of Michigan." *Id.* at 5.

The Order requires Catholic Charities to produce a huge number of documents and information, including a response to the complaint and information about "all employees," "all other properties," and trainings and policies. *Id.* at 7–8. But that's just the beginning. The Order also warns that Catholic Charities may be required to respond to "a comprehensive set of interrogatories," sit for interviews, and produce "documents, videos, audio, etc." *Id.* at 2–3. And all of that is due even before Michigan determines whether the complaint has any basis in fact *or law*, i.e., whether there is an appropriate religious defense to the investigation. *Id.* (noting options "[o]nce an investigation is complete").[1]

---

[1] The Catholic Charities case file is admissible as self-authenticating documents because it contains papers purportedly signed by state officials with Michigan's seal and a notarized complaint. *See* Fed. R. Evid. 902(1); *Alexander v. CareSource*, 576 F.3d 551, 561 (6th Cir. 2009) (materials from Ohio Civil Rights Commission were self-authenticating). In any event, at this preliminary-injunction stage, the "procedures … are less formal" than at other stages. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

### Argument

The State's investigation of the complaint against Catholic Charities adds to the new evidence supporting Christian Healthcare's standing outlined in its Motion for Reconsideration. So this evidence should be included as part of that motion. The Catholic Charities case reinforces Christian Healthcare's standing in at least three ways.

*First*, the Catholic Charities investigation refutes Michigan's prior statement that it is not currently investigating faith-based organizations for sexual orientation or gender identity complaints. *Contra* Defs.' MPI Resp., PageID.502–503. In reality, Michigan actively enforces its law against religious entities (like Catholic Charities) and against religious business owners (like those in *Rouch World*). Christian Healthcare fits the bill of those targeted entities, and Michigan's aggressive enforcement confirms the ministry faces a real and imminent threat of prosecution. *See* Pls.' Br. in Opp. to Defendants' Mot. to Dismiss (Pls.' MTD Resp.), PageID.622–624 (explaining how active enforcement supports standing).

*Second*, this active enforcement triggers the enforcement presumption (*id.* at PageID.620–622) because Michigan "has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). Michigan asks this Court to trust that it will respect religious freedom. But Michigan's actions show that the Court *at least arguably* should not adopt such a blind faith. "Arguably" is all that's need for standing at this stage.

*Third*, Michigan's investigation against Catholic Charities shows that Michigan's investigation process alone causes harm even if Michigan eventually dismisses a complaint. The Order against Catholic Charities advises it of its right to an attorney, threatens enforcement actions if Catholic Charities doesn't comply with the order, and demands information about 12 subjects areas. Ex. A at 3,5, 7–8.

3

And that's the baseline; the Order mentions other invasive burdens if the investigation proceeds. *Id.* at 3. The Supreme Court has held that similar "administrative action … may give rise to harm sufficient to justify pre-enforcement review." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014); Pls.' MTD Resp., PageID.632. So has the Sixth Circuit. In *Speech First, Inc. v. Schlissel*, that Court held that a university team's "ability to make referrals" for investigations "is a real consequence that objectively chills speech." 939 F.3d 756, 765 (6th Cir. 2019). Although the "referral itself [did] not punish a student … the referral subjects students to processes which could lead to those punishments. The referral initiates the formal investigative process, which itself is chilling even if it does not result in a finding of responsibility or criminality." *Id.*

The same is true of Michigan's invasive investigatory process. And that chills Christian Healthcare's speech and bolsters its standing regardless of any eventual hearing outcome. Moreover, Michigan launched this invasive process without first evaluating Catholic Charities' constitutional or statutory free-exercise protections. The complaint makes clear that Michigan treats religious organizations like Christian Healthcare the same as any secular organization.

## Conclusion

For these reasons and those stated in its Motion for Reconsideration, Christian Healthcare respectfully requests this Court to consider the Catholic Charities case file, reconsider its order granting Michigan's motion to dismiss and vacate that order and judgment, deny Michigan's motion to dismiss, and grant the ministry's requested injunction.

Respectfully submitted this 8th day of May, 2023.

|  |  |
|---|---|
| Jonathan A. Scruggs<br>Arizona Bar No. 030505<br>Ryan J. Tucker<br>Arizona Bar No. 034382<br>Henry W. Frampton, IV<br>South Carolina Bar No. 75314<br>Bryan D. Neihart<br>Arizona Bar No. 035937<br>**Alliance Defending Freedom**<br>15100 N. 90th Street<br>Scottsdale, Arizona 85260<br>(480) 444-0020<br>(480) 444-0028 Fax<br>jscruggs@ADFlegal.org<br>rtucker@ADFlegal.org<br>hframpton@ADFlegal.org<br>bneihart@ADFlegal.org | By: s/ John J. Bursch<br>John J. Bursch<br>Michigan Bar No. P57679<br>**Alliance Defending Freedom**<br>440 First Street NW, Suite 600<br>Washington, DC 20001<br>(202) 393-8690<br>(202) 347-3622 Fax<br>jbursch@ADFlegal.org |

*Attorneys for Plaintiff*

5

## Certificate of Service

I hereby certify that on May 8, 2023, I electronically filed the foregoing document with the Clerk of Court and that the foregoing document will be served via the CM/ECF system on all counsel of record.

By: s/ John J. Bursch

John J. Bursch
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001

*Attorney for Plaintiff*