UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN HEALTHCARE CENTERS,
INC.,

    Plaintiff,

v.

DANA NESSEL, et al.,

    Defendants.
_____/

Case No. 1:22-cv-787

HON. JANE M. BECKERING

**MEMORANDUM OPINION AND ORDER**

In this closed § 1983 case, Plaintiff Christian Healthcare Centers, Inc. ("Plaintiff" or "Christian Healthcare") filed a Motion for Reconsideration (ECF No. 30) of this Court's March 29, 2023 Opinion and Order and corresponding Judgment (ECF Nos. 28–29). Plaintiff has also moved for leave to supplement its brief (ECF No. 35) and filed three notices of supplemental authorities (ECF Nos. 39, 41, & 43). Defendants oppose Christian Healthcare's submissions (ECF Nos. 33, 37, 40, 42, & 44). For the reasons that follow, the motions for leave to supplement and for reconsideration are both properly denied.

**I. BACKGROUND**

As set forth more fully in this Court's March 29, 2023 Opinion and Order, Christian Healthcare is a non-profit corporation with clinics in Plainfield Charter Township and Newaygo, Michigan. Christian Healthcare's stated purpose is to be a "Christian medical-service ministry that serves the community by providing direct medical services to its patients consistent with the tenets of its faith and to communicate those beliefs to its patients and the public" (Verified Compl. [ECF No. 1] ¶ 17). In August 2022, pursuant to 42 U.S.C. § 1983, Christian Healthcare filed a

pre-enforcement civil rights action for declaratory and injunctive relief against Defendants Dana Nessel, Michigan's Attorney General; John E. Johnson, Jr., the Executive Director of Michigan's Department of Civil Rights ("the Department" or MDCR); and individual members of Michigan's Civil Rights Commission ("the Commission") (collectively, "Defendants").[1] Christian Healthcare alleged that the enforcement of certain provisions in Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2101 *et seq.*, and Equal Accommodations Act (EAA), MICH. COMP. LAWS § 750.146, would infringe on its religious mission and thereby violate the First and Fourteenth Amendments to the United States Constitution. According to Christian Healthcare, Michigan's civil rights and public-accommodations laws threaten its religious mission in two primary areas: (1) its employment decisions and (2) "how it serves the public" (*id.* ¶ 199). Christian Healthcare did not identify any pending complaint, investigation, or prosecution against it; rather, Christian Healthcare alleged that it faced "a credible threat and substantial risk that it will be investigated and prosecuted under these laws for engaging in activities and speaking in accordance with its religious beliefs" (*id.* ¶ 196).

Christian Healthcare moved for a preliminary injunction, which Defendants opposed, and Defendants filed a Motion to Dismiss, arguing, in pertinent part, that no case or controversy existed for federal jurisdiction. On March 29, 2023, this Court issued an Opinion and Order granting the motion to dismiss, dismissing as moot the motion for a preliminary injunction, and issuing a corresponding Judgment to close this case (ECF Nos. 28–29). This Court determined that Christian Healthcare had not plausibly alleged facts demonstrating that (1) its intended conduct

---

[1] Plaintiff's counsel filed another pre-enforcement civil rights lawsuit in December 2022 against these same Defendants, alleging similar claims. *See Sacred Heart of Jesus Parish, Grand Rapids et al. v. Nessel, et al.*, 1:22-cv-1214. *Sacred Heart* was deemed related to a third pre-enforcement civil rights lawsuit also filed in December 2022: *St. Joseph Parish St. Johns v. Nessel, et al.*, 1:22-cv-1154. *See* Administrative Order 23-CA-008 (ECF No. 9).

was proscribed by either the ELCRA or the EAA, or (2) there existed a credible threat of prosecution under either state law. Consequently, this Court concluded that any decision from this Court regarding how the statutes might apply to Christian Healthcare would be advisory because Christian Healthcare had not demonstrated Article III standing sufficient to invoke federal-court jurisdiction. These post-Judgment filings followed.

## II. ANALYSIS

### A. Motion Standard

This Court's local rules require a movant seeking reconsideration to "not only demonstrate a palpable defect by which the court and the parties have been misled, but also show that a different disposition of the case must result from a correction thereof." W.D. Mich. LCivR 7.4(a). The relevant local rule further instructs that "motions for reconsideration that merely present the same issues ruled upon by the court shall not be granted." *Id.*

In its motion for reconsideration, Christian Healthcare cites both Federal Rules of Civil Procedure 59(e) (Motion to Alter or Amend a Judgment) and 60(b)(2) (Relief from a Final Judgment) and relies upon allegations of "new evidence" as grounds for its motion. Both Rules 59(e) and 60(b) allow a court to reconsider a judgment based on newly discovered evidence. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) ("Under Rule 59, a court may alter the judgment based on ... newly discovered evidence ...."); FED. R. CIV. P. 60(b)(2) ("The court may relieve a party … from a final judgment … for … newly discovered evidence[.]"). Under either rule, "newly discovered evidence" is evidence that was not previously available or discoverable. *CGH Transport, Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 823 (6th Cir. 2008) (describing what "new" evidence means under both rules). Evidence is considered unavailable only if it could not, in the exercise of reasonable diligence, have been submitted earlier.

3

*Maxum Indem. Co. v. Robbins Co.*, 784 F. App'x 366, 373 (6th Cir. 2019) (affirming denial of Rule 59(e) motion where the evidence was available to the defendant more than one month before judgment entered and was in "no sense" "newly discovered"); *James v. City of Detroit, Michigan*, No. 20-1805, 2021 WL 5463778, at *7 (6th Cir. Nov. 23, 2021) (affirming denial of Rule 60(b)(2) motion where the evidence was available to the plaintiff, who offered "no explanation as to why she could not have submitted this evidence to the district court earlier if she had exercised due diligence").

Neither Rule 59(e) nor Rule 60(b) is intended to relieve counsel of the consequences of decisions deliberately made. *Maxum*, 784 F. App'x at 373 ("Rule 59(e) does not exist to correct a misguided legal strategy or litigate matters that could have been litigated previously."); *Tareco Properties, Inc. v. Morriss*, 321 F.3d 545, 549 (6th Cir. 2003) ("Rule 60 does not relieve parties from strategic mistakes."). Relief under Rule 60(b) is further circumscribed by public policy favoring "finality" and the termination of litigation. *Salem Pointe Cap., LLC v. BEP Rarity Bay, LLC*, 854 F. App'x 688, 703 (6th Cir. 2021); *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007); *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001). The decision to grant or deny a motion for reconsideration is within the district court's discretion. *See Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 691 (6th Cir. 2012).

### B. Discussion

In its post-Judgment submissions, Christian Healthcare proffers four grounds for this Court to reconsider its decision. The Court determines that the grounds do not demonstrate any palpable defect by which the Court and the parties were misled and that no different disposition of the case must result.

**1. *ELCRA Amendment.*** In its motion for reconsideration, Christian Healthcare argues that an amendment to the ELCRA—and comments made and media reports issued during the passage of the legislation—refutes Defendants' successful argument that Christian Healthcare lacks standing (ECF No. 30 at PageID.880–883). Specifically, according to Christian Healthcare, the fact that the Michigan Legislature added "gender identity or expression" as a class protected by the ELCRA (a) confirms that Christian Healthcare's current pronoun, cross-sex hormone, and employment policies and practices and statements explaining those policies at least arguably violate the ELCRA; (b) bolsters the "presumption" of a credible enforcement threat; and (c) "undercuts" Defendants' "veiled suggestion that it may grant atextual and heretofore unrecognized religious exemptions, affirmative defenses, or BFOQs" to Christian Healthcare (*id.* at PageID.885).

In response, Defendants argue that this Court should deny reconsideration where the ELCRA amendment is not "new" but was available before this Court's March 29, 2023 decision and therefore could have been raised in a supplemental brief (ECF No. 33 at PageID.1019–1020). Additionally, Defendants argue that neither the ELCRA amendment nor the comments made during its passage casts doubt on this Court's decision that the ELCRA is interpreted in conjunction with religious exemption laws (*id.* at PageID.1022). According to Defendants, Christian Healthcare's "new" evidence is simply "more of the same types of allegations" Christian Healthcare previously presented, which failed to demonstrate any credible threat of enforcement (*id.* at PageID.1022).

On March 16, 2023, the ELCRA was amended to add "sexual orientation" and "gender identity or expression" as one of the delineated classes protected from discrimination. *See* 2023 Mich. Legis. Serv. P.A. 6 (S.B. 4). The amendment takes effect on the 91st day after final

adjournment of the 2023 regular session of the Michigan Legislature, i.e., presumably at some time in March 2024.  On March 29, 2023, this Court determined that Michigan's anti-discrimination laws "provide that they will be interpreted in accordance with other applicable laws" (ECF No. 28 at PageID.866).

The statutory language this Court relied upon in finding that the ELCRA accommodates religious freedoms has not been removed or altered in the recent amendment.  The construction provision of the amended ELCRA, which applies to both employment and public accommodations, continues to expressly provide that the Act "shall not be construed as preventing the commission from securing civil rights guaranteed by law other than the civil rights set forth in this act." MICH. COMP. LAWS § 37.2705(1).  The public accommodations section of the ELCRA continues to provide, in pertinent part, that "*[e]xcept where permitted by law*, a person shall not [d]eny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." MICH. COMP. LAWS § 37.2302(a) (emphasis added).  And Michigan courts have determined that the ministerial exception, a "nonstatutory, constitutionally compelled exception to the application of employment-discrimination and civil rights statutes to religious institutions and their 'ministerial' employees," "generally bars inquiry into a religious institution's underlying motivation for a contested employment decision." *Weishuhn v. Cath. Diocese of Lansing*, 756 N.W.2d 483, 486 (Mich. Ct. App. 2008).

As a result, even assuming arguendo that the amendment constitutes new evidence properly considered by this Court, the amendment does not "bolster" the purported "presumption" of a credible threat of enforcement against Christian Healthcare where Christian Healthcare is engaged

6

in activity protected by the First Amendment. Rather, the ELCRA, even as amended, continues to provide for consideration of religious freedom. Christian Healthcare's first ground for reconsideration is therefore properly denied.

    **2.** *Additional BFOQs.* The ELCRA provides for religious exemptions related to employment—bona fide occupational qualifications ("BFOQs")—where "reasonably necessary to the normal operation of the business or enterprise." MICH. COMP. LAWS § 37.2208. Defendants supplied some BFOQs in their response in support of their Motion to Dismiss filed on March 4, 2023, including two BFOQs for religious schools that discussed exemptions applicable to employees involved in teaching the religious tenets of those faiths. *See* ECF No. 23-1 at PageID.788–796. On February 7, 2023, after the parties completed briefing the Motion to Dismiss, an attorney acting on Christian Healthcare's behalf submitted a new Freedom of Information Act request to the MDCR for "BFOQ decisions from all time periods." *See* Hoff Decl. ¶ 7, ECF No. 30-2 at PageID.895; Defs. Ex. A, ECF No. 33-2; Defs. Ex. B, ECF No. 33-3 at PageID.1034. The requesting attorney confirmed receipt of the additional materials on March 9, 2023. *See* Hoff Decl. ¶ 7, ECF No. 30-2 at PageID.895; Defs. Ex. B, ECF No. 33-3 at PageID.1032. As Christian Healthcare concedes (ECF No. 30 at PageID.883), the March 9, 2023 production included the same two granted religious BFOQ exemptions for the religious schools that Christian Healthcare previously received as well as two granted BFOQ exemptions for a church and a counseling ministry. *See* ECF No. 30-4 at PageID.967–984.

    In support of its motion for reconsideration, Christian Healthcare argues that Defendants' March 9, 2023 production of the additional BFOQ documents is new evidence that refutes Defendants' standing argument (ECF No. 30 at PageID.880–887). In response, Defendants argue that this Court should deny reconsideration where the additional BFOQ production is not "new"

7

but was available before this Court's March 29, 2023 decision and therefore could have been raised in a supplemental brief (ECF No. 33 at PageID.1021). Defendants also argue that the additional BFOQs produced "add nothing to Christian Healthcare's position" (*id.* at PageID.1025). The Court agrees that even assuming arguendo that the additional BFOQ production constitutes "new" evidence properly considered by this Court, the additional BFOQs do not cast doubt on, but merely reinforce, this Court's prior determination that the ELCRA expressly provides a form of redress for Christian Healthcare's concerns about its hiring practices. Christian Healthcare's second ground for reconsideration is therefore denied.

  **3.** ***Catholic Charities Complaint.*** The third ground for reconsideration proposed by Christian Healthcare concerns an April 13, 2023 complaint filed with the MDCR by an individual against the Catholic Charities of Shiawassee and Genesee Counties ("the charity"), alleging gender identity discrimination in housing (ECF No. 35-2 at PageID.1055). On May 3, 2023, the MDCR provided the complaint to the charity and ordered the charity to provide a response to the complaint with supporting documentation by May 17, 2023 (*id.* at PageID.1052, 1056–1059). On May 8, 2023, Christian Healthcare moved for leave to supplement its brief in support of reconsideration (ECF No. 35), proposing to argue that the MDCR's investigation of the complaint reinforces Christian Healthcare's standing to sue in the case at bar because the MDCR investigation (1) refutes Defendants' prior statement that the MDCR is not currently investigating faith-based organizations for sexual orientation or gender identity complaints; (2) "triggers the enforcement presumption"; and (3) shows the harm that results from the investigation process alone (ECF No. 35-1 at PageID.1047–1048).

  Defendants oppose supplemental briefing, pointing out that the charity is involved, in relevant part, in providing financial assistance and other services necessary for members of the

public to obtain housing and is therefore not similarly situated to Christian Healthcare, a medical care provider that operates clinics for its members (ECF No. 37 at PageID.1069, 1072). Defendants also point out that the Catholic Charities complaint involves violations of Article 5 of the ELCRA and the federal Fair Housing Act, neither of which are at issue in this case (*id.* at PageID.1072). Defendants conclude that because both the facts and laws are dissimilar to the instant case, the Catholic Charities complaint fails to support any present or imminent threat of enforcement of the ELCRA or the EAA against Christian Healthcare, and supplemental briefing is not in the interests of justice (*id.* at PageID.1073–1074).

This Court may permit further briefing in support of a motion, *see* W.D. Mich. LCivR 7.2(c) & 7.3(c), but Christian Healthcare's proposed supplemental brief is unnecessary to this Court's resolution of its motion for reconsideration. The mere fact that an individual filed a complaint against the charity and the Department ordered a response does not serve to reveal any palpable defect in this Court's prior decision. The Department is statutorily required to not only "receive" but also "investigate, conciliate, adjust, dispose of, issue charges, and hold hearings on complaints alleging a violation of [the ELCRA.]" MICH. COMP. LAWS § 37.2602(c). The scope of an investigation, any determination that actionable discrimination occurred, and any determination regarding grounds to issue a charge, *see* Mich. Admin. Code R. 37.6, is dictated by the facts and applicable laws, including constitutional law which, again, the ELCRA incorporates. Last, as Defendants point out, the complaint against the charity involves entities, facts, and laws different from those at issue here. The Court, in its discretion, denies the request for leave to file a supplemental brief.

**4.** *Recent Cases.* Last, Christian Healthcare has filed notices of three cases as supplemental authorities for this Court's attention, cases that were issued after this Court dismissed Christian Healthcare's case on March 29, 2023.

Christian Healthcare first points this Court's attention to the Fifth Circuit's June 20, 2023 decision in *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023) (ECF No. 39-1). There, the Fifth Circuit held that the plaintiff-employer faced a credible threat of enforcement where the employer knew "what the EEOC says violates its guidance and the law; [knew] what Braidwood's exact policies are; and [the employer had] admissions from the EEOC that Braidwood's current practices violate Title VII. Per Harris, [the employer also had] evidence that the EEOC has brought an enforcement action against a similar violator." *Id.* at 929. Decisions from the Fifth Circuit do not bind this Court. Additionally, *Braidwood* is factually distinguishable from this case inasmuch as Defendants have not issued similar guidance, admitted that Christian Healthcare's policies violate the ELCRA, or pursued an enforcement action against a similar violator.

Next, Christian Healthcare points this Court's attention to the Supreme Court's June 30, 2023 decision in *303 Creative LLC v. Elenis*, ___ U.S. ___; 143 S. Ct. 2298 (2023) (ECF No. 41). However, the Supreme Court's decision in *303 Creative* contains no discussion of standing, let alone any modification of the standing doctrine described in its prior cases. *See, e.g., Whole Woman's Health v. Jackson*, ___ U.S. ___, 142 S. Ct. 522, 538 (2021) (holding that the "chilling effect" associated with a potentially unconstitutional law being "'on the books'" is insufficient to "justify federal intervention" in a pre-enforcement suit). The Supreme Court merely indicated that "no party" in *303 Creative* challenged the holding of the Tenth Circuit that Lorie Smith, the owner of 303 Creative LLC, had standing to sue. 143 S. Ct. at 2310. Christian Healthcare opines that the Supreme Court's effective "adoption" of the Tenth Circuit's standing analysis supports the

conclusion that Christian Healthcare likewise established its standing in this case (*id.* at PageID.1125–1129). Such a conclusion is not merited, however, where the Supreme Court quoted the Tenth Circuit's finding that Colorado had "a history of past enforcement against nearly identical conduct," 143 S. Ct. at 2310, an allegation that this Court previously determined Plaintiffs had not plausibly made in this case. *See* Op. & Order, ECF No. 28 at PageID.874–875.

Last, Christian Healthcare points this Court's attention to the Sixth Circuit's July 14, 2023 decision in *Block v. Canepa*, 74 F.4th 400 (6th Cir. 2023) (ECF No. 43). In *Block,* two plaintiffs, an "active wine consumer" and an out-of-state wine retailer, filed a pre-enforcement constitutional challenge to Ohio's Transportation Limit statute, which prohibits individuals from transporting various types of alcohol, including wine, in excess of the prescribed statutory limits from another state. *Id.* at 404–05. The district court held that while the retailer had standing to sue, the wine consumer—Kenneth Miller—did not plausibly allege facts to support a credible threat of prosecution. *Id.* at 409–10. The Sixth Circuit held that the district court erred in determining that Miller had not plausibly alleged the injury-in-fact component of standing. *Id.* at 410–11 (declining to address the remaining components needed to establish Article III standing). The Sixth Circuit found that Miller met his burden where (1) Miller provided evidence that "Ohio does prosecute violations of the Transportation Limit"; (2) "neither [the defendants] nor the district court cite any authority supporting an argument that Miller was obligated to show that Ohio prosecuted people for transporting wine, rather than liquor"; (3) an interrogatory response from Ohio's attorney general provided examples where Ohio could, and potentially would, prosecute a wine consumer for violating the Transportation Limit; and (4) the defendants had not indicated that they, as a matter of policy, choose not to prosecute people engaging in Miller's desired conduct. *Id.* at 410.

11

Christian Healthcare extrapolates from the *Block* decision that it likewise established its standing in this case because (1) Christian Healthcare has "shown evidence that Michigan does prosecute ELCRA violations generally," and (2) Christian Healthcare is not obligated to show that Michigan has previously prosecuted "the exact same conduct" (ECF No. 43 at PageID.1173–1174).

Christian Healthcare's analogy between Michigan's anti-discrimination statute and Ohio's Transportation Limit statute is not a good fit. Ohio's statute proscribed the very conduct in which Miller wished to engage, whereas, as Defendants point out, Christian Healthcare argues that "any enforcement of the ELCRA based on any protected category" would properly provide it with standing (ECF No. 44 at PageID.1191). Additionally, Ohio had a history of enforcement of that statute for the same, specific conduct, whereas Christian Healthcare identified no evidence of past enforcement against a religious entity for the conduct in which they wish to engage. Last, and perhaps most importantly, there is no indication in *Block* that Ohio's statute requires consideration of other laws, whereas the ELCRA, on its face and under caselaw, is construed in conjunction with other legal rights. In sum, Christian Healthcare's reliance on the holding in *Block* is misplaced.

Again, Supreme Court precedent instructs that pre-enforcement review is permitted only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). *Cf. Whole Woman's Health*, 142 S.Ct. at 539 (Thomas, J., concurring in part and dissenting in part) ("[T]here is no freestanding constitutional right to pre-enforcement review in federal court[.]"). As the Fifth Circuit acknowledged, courts "have treated the threat of future enforcement as case-and-fact-specific," weighing "[d]ifferent factors" according to "the case-specific facts" before them. *Braidwood, supra* at *10 (citing *SBA List, supra*). Indeed, the Supreme Court has observed that the difference between an abstract

12

question and a "case or controversy" is "one of degree." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 297 (1979). This Court previously concluded that Christian Healthcare had not plausibly alleged facts demonstrating standing, and Christian Healthcare's post-Judgment submissions do not support the conclusion that the Court and the parties were misled by a palpable defect or that a different disposition of this case must result. "Article III's case-or-controversy requirement provides a critical separation-of-powers check on the judiciary that we may not disregard simply because we think a legal question—'First Amendment or otherwise'—is important." *Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 173 (6th Cir. 2022).

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File a Supplemental Brief (ECF No. 35) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration (ECF No. 30) is DENIED.

Dated: August 22, 2023         /s/ Jane M. Beckering
                               JANE M. BECKERING
                               United States District Judge